Attachment A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                              Case No. 1:20-cr-20365
                                            Hon. Thomas L. Ludington
                                            Magistrate Patricia T. Morris

DALE VERNON THRUSH,

    Defendant.
_____/

SUMMARY OF EXPERT REPORT OF

GHASSAN (AKA JASON) ALKAMANO, CPA DISCLOSED PURSUANT TO

F.R.CRIM. P. 26(B)(1)(c)

1

# WITNESS QUALIFICATIONS

Ghassan (aka Jason) Alkamano has been licensed as a CPA since 1997. He has a degree from the University of Michigan – Dearborn. He worked for Garmo & Company from 1993 to 1998 as an accountant and was the office manager by the time he left the company in 1998 to open his own accounting practice.

He opened Alkamano & Associates in August of 1998 to Present

Mr. Alkamano currently has 10 Employees and prepares over 1,400 business and personal tax returns annually. The focus of his business is small business clients and the related personal tax returns for the clients. He handles a variety of business, but his focus is on retail stores, restaurants and the hospitality industries.

Software that he uses in hisfirm consists of QuickBooks, Accounting CS, Ultra Tax, MS office and many other that our clients use. His business address is Alkamano & Associates, 29870 Middlebelt Road, Farmington Hills, MI 48334.

### Assignment

1. Mr. Alkamano has been retained by the attorneys for Dale Thrush in the case pending in the U.S. District Court for the Eastern District of Michigan, Case No. 1:20-cr-20365, to evaluate the QuickBooks accounting records of Mr. Thrush's business, and comparing the QuickBooks accounting records in the state they were in as of mid-2016 (as prepared by Donna Henke prior to leaving Mr. Thrush's employ) with the QuickBooks accounting records after they were redone and completed as of November 2019 by Susan Hastings. He has been asked to give his expert opinion as an accountant and tax return preparer on whether the QuickBooks accounting records as they existed in Mid-2016, were sufficient to prepare Mr. Thrush's 1040 tax returns for the period of 2013 through 2016.

## Summary of Opinion

2. Mr. Alkamano's overall opinion in this matter is that the QuickBooks accounting records in the state they were in as of Mid-2016 (when Donna Henke left Mr. Thrush's employ), were insufficient to prepare Mr. Thrush's 1040 tax returns for the periods of 2013 through 2016. It is his opinion that, in comparing the Henke QuickBooks accounting records with the QuickBooks accounting records that were completed in November 2016 and the tax returns prepared in December 2016 by CPA Frank Ross, that additional information and explanation would have been needed in addition to the Henke QuickBooks accounting records to prepare Mr. Thrush's 1040 tax returns for the periods 2013 through 2016. In addition, it is his opinion that it is reasonable to expect that re-entering from original documents all the transactions contained in the Henke QuickBooks accounting records for all the returns necessary for Mr. Thrush's 1040 returns 2013 through 2016, would have taken three years if the work was done part-time. Further, it is reasonable to decide to re-enter all the transactions once it was decided that the QuickBooks accounting records prepared by Donna Henke were not accurate.

## Documents reviewed and Bases and reasons for opinion

As part of his basis for his opinion, he reviewed the QuickBooks files prepared by both Henke and Hastings for the for the years 2013 through 2016 for 402 N. Mission Street, LLC. He also reviewed the QuickBooks files prepared by both Henke and Hastings for the years 2013 through 2016 for Verno All Tune. He also reviewed the tax returns for those companies and Mr. and Mrs. Thrush's 1040 returns prepared by Frank Ross for those years.

Mr. Alkamano was informed that Donna Henke left the employ of Mr. Thrush in mid-2016 and did not answer phone calls when Susan Hastings and Mr. Thrush tried to contact her when they had questions about the records. As a result, it is my understanding that Susan Hastings and Mr. Thrush did not have the ability to gain an understanding of how decisions were made during the input of the information by Donna Henke and decided that it would be best to re-input all of the information into new sets of Quickbooks.

### Opinion

### The Henke QuickBooks Records were insufficient to prepare the 1040 returns for 2013 through 2016.

After reviewing the Henke QuickBooks accounting records and comparing them to the 1040 tax returns for Mr. Thrush for 2013 through 2016, it is clear that a tax returns could not have been prepared just using the Henket QuickBooks accounting records. For example, attached to this report as Exhibit A, are copies of the profit and loss statements from the Henke QuickBooks accounting records. Attached as Exhibit B are the profit and loss statements from the Hastings QuickBooks accounting records. There are substantial differences. For example:

The 1040 tax returns for Mr. Thrush for 2013 through 2016 prepared by Frank Ross used the Hastings QuickBooks accounting records. It is my opinion that if the Henke QuickBooks accounting records were used, the numbers on the 1040 returns would have been different. It is my understanding that the IRS is not presently claiming that the 2013 through 2016 1040 tax returns prepared by Frank Ross are incorrect.

While the Henke QuickBooks Accounting records appear to have had most of the transactions input into the system, without Ms. Henke being available to explain the reasoning for her decisions on categorizing the various transactions, a tax return preparer would not have been able to prepare correct tax returns from the Henke QuickBooks Accounting records alone. This is clearly shown in the difference between the profit and loss statements of the Henke QuickBooks records and the Hastings QuickBooks records. Perhaps a return could have been prepared, but there would be no assurance that such a return would have been correct, and a tax return preparer could not have signed such a return given such inconsistencies.

The reader is referred to the AICPA Statement on Standards for Tax Services No. 3, Certain Procedural Aspects of Preparing Returns, that states that a return preparer must determine that the books of a taxpayer have been maintained in a correct manner and there be no inconsistencies. The preparer must determine that the books are accurate and complete. See also, Treasury Regulation 1.6694-1(e)(1) and Circular 230, Regulations Governing the Practice of Attorneys, Certified Public Accountants, Enrolled Agents, Enrolled Actuaries, Enrolled Retirement Plan Agents and Appraisers before the Internal Revenue Service. 31 CFR, Part 10). Because Donna Henke was not available to question regarding the accuracy of the QuickBooks Accounting she prepared, a return preparer would not have been able to determine if the Henke QuickBooks records were accurate. According to Circular 230, a return preparer must exerciser due diligence in preparing a return. The tax return preparer may not ignore the implications of information furnished to the tax return preparer and must make reasonable inquiries if the information furnished appears to be incorrect or incomplete. See Treasury Regulation 1.6694(e)(1).

If someone was to re-enter all of the transactions from the source documents for Mr. Thrush's company while keeping up with current work, the fact that it took over three years to do that would not be unreasonable. There were

thousands of transactions and intercompany transactions involved that had to be verified.

Under the circumstances, in order to ensure that the records were complete and correct, and because Donna Henke would not respond to requests for information and clarification with regard to the QuickBooks records she created, it was reasonable to re- enter all of the transactions and that would take hundreds if not thousands of hours based on Mr. Alkamano's experience.