UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.

DALE VERNON THRUSH,

          Defendant.

_____/

Case No. 1:20-cr-20365
Honorable Thomas L. Ludington
Magistrate Judge Patricia T. Morris

**ORDER DENYING PLAINTIFF'S MOTION IN LIMINE**

This matter is before the Court pursuant to Plaintiff's Motion in Limine. ECF No. 20. In August 2020, Defendant Dale Vernon Thrush was indicted on multiple counts of willfully failing to pay over payroll taxes and to file tax returns. Plaintiff, the United States of America (the "Government"), seeks to exclude evidence of certain delinquent tax payments and returns from being introduced at trial. For the reasons set forth below, the Government's Motion in Limine will be denied.

**I.**

**A.**

According to the Indictment, Defendant Dale Thrush owns several businesses in Mount Pleasant and Lansing, Michigan, including 402 N. Mission St. LLC ("Mission"), Xtreme Enterprises, Inc. ("Xtreme"), Verno All Tune, Inc. ("Verno"), and USAuto Repair, Inc. ECF No. 1 at PageID.1–2.

Defendant, as sole owner of the businesses, was the "responsible party" for collecting and paying over payroll taxes and was required to file a Form 1040 each year reporting his net profits and distributions from the businesses. The Indictment alleges that Defendant failed to pay over

some $238,223 in payroll taxes collected at Mission between the second quarter of 2014 and the fourth quarter of 2016 and failed to file a personal income tax Form 1040 for calendar years 2013 through 2016. *Id.* at PageID.6–9. But more than just failing to pay over the taxes, the Indictment also alleges that Defendant directed nearly $500,000 from Mission's payroll account to be spent on ordinary business expenses and certain construction costs incurred by his wife between April 2014 and October 2016. *Id.* at PageID.6.

In his defense, Defendant claims that from 2014 until late 2016, he delegated the bookkeeping at Mission, including all tax filings and payroll matters, to an employee named Donna Henke. ECF No. 23 at PageID.104–05. He also erroneously believed that Henke was acting as his personal tax preparer. *Id.* During this time, Defendant allegedly worked "off-site" and was rarely in the business office. *Id.* Defendant claims that he frequently inquired with Henke about the status of his business and personal taxes and was "always informed that everything was being taken care of," *id.* at PageID.105, notwithstanding the fact that, apparently, tax returns were never presented to or signed by him.

In July 2016, Defendant hired a new bookkeeper, Sue Hastings. *Id.* at PageID.106. In a personal declaration, Hastings states that she assumed her duties as bookkeeper in August 2016 and soon discovered that Mission's bookkeeping, organized through the accounting software QuickBooks, was "very incomplete" and "could not be relied upon." ECF No. 23-2 at PageID.117. She learned that Mission had not made tax payments to the IRS in several quarters. *Id.* Hastings apparently tried to contact Henke but was unable to do so. *Id.* In the end, Hastings claims that she and others spent "thousands of hours" between October 2016 and November 2019 reconstructing Mission's finances. *Id.* at 118.

On June 22, 2017, Defendant was interviewed by an IRS Revenue Officer ("RO") attempting to collect unpaid taxes. ECF No. 20 at PageID.69. The RO informed Defendant that he would have to file his Form 1040's for 2013, 2014, and 2015 within the next six weeks but that the RO would "work with him to piece together his individual income taxes." *Id*. In response, Defendant allegedly told the RO that he could not file the Form 1040's until his business filings were completed because all of the entities were pass through entities. ECF No. 20-1 at PageID.79.

Defendant's taxes were not paid during those six weeks. On March 2, 2018, some nine months after his interview with the RO, Defendant was interviewed by IRS Special Agents who informed him that they were "investigating potential criminal violations" resulting from his unpaid taxes. ECF No. 20 at PageID.69.

According to IRS account transcripts, Defendant began making payments on his tax liability in October 2018. *Id*. Records also show that the IRS received Defendant's Form 1040's for 2013, 2014, and 2015 on January 9, 2020. *Id*. at PageID.70. Defendant claims that business finances were not corrected until November 2019. ECF No. 23 at PageID.106–07. He also claims to have sent a Form 1040 for 2016 but states that it must have been lost or unprocessed. *Id.* at PageID.104.

**B.**

On August 19, 2020, Defendant was indicted on ten counts of willfully failing to pay over payroll taxes and four counts of willfully failing to file a tax return. ECF No. 1 at PageID.7-9. On April 2, 2021, the Government filed a motion in limine, seeking to exclude evidence of Defendant's delinquent tax payments and returns. *Id.* The Government argues that this evidence is irrelevant to Defendant's mental state during the time period when the payroll taxes and personal returns were due and that its introduction would mislead the jury. ECF No. 20 at PageID.70–72.

In his response brief, Defendant maintains that the delinquent filings are relevant to whether he willfully failed to account for and pay over his taxes. Simply stated, Defendant claims that he did not know his taxes were delinquent until Henke's departure and that once he learned, he worked diligently to reconstruct his finances and pay his taxes. ECF No. 23 at PageID.103.

## II.

The Government seeks to exclude evidence of Defendant's delinquent tax returns under Federal Rule of Evidence 403. That rule permits a court to exclude evidence where "the probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. In other words, "Rule 403 provides a balancing test for excluding relevant evidence" that is "strongly weighted toward admission." *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018).

The Government argues that evidence of Defendant's delinquent filings would only mislead the jury because they are irrelevant to Defendant's mental state during the tax period in question.[1] ECF No. 20 at PageID.70–72. The Government relies primarily on *United States v. Pang*, 362 F.3d 1187 (9th Cir. 2004), and *Sansone v. United States*, 380 U.S. 343 (1965).

In *Sansone*, the Supreme Court held that "[n]o defense to [an attempted evasion charge under 26 U.S.C. § 7201] is made out by showing that the defendant willfully and fraudulently

---

[1] To convict a defendant under 26 U.S.C. § 7202, the government must prove that (1) the defendant was responsible for paying over the payroll taxes and (2) willfully failed to do so. *See* 26 U.S.C. § 7202; *Harold v. United States*, 195 F. App'x 358, 361 (6th Cir. 2006) (discussing liability under the civil counterpart to § 7202). The issue of willfulness turns on whether the defendant "had knowledge of the tax delinquency and knowingly failed to rectify it." *Gephart v. United States*, 818 F.2d 469, 475 (6th Cir. 1987). The test for whether the defendant was "responsible," however, is "essentially a functional one, focusing upon" the ownership of the business and additional parties who may have had some "degree of influence and control . . . over the financial affairs of the corporation and, specifically, disbursements of funds and the priority of payments to creditors." *Id.* at 473. Thus far, the parties have only discussed the delinquent filings insofar as they relate to the willfulness requirement.

understated his tax liability for the year involved but intended to report the income and pay the tax at some later time." *Sansone*, 380 U.S. at 354. The defendant in *Sansone* admitted to investigators that he knowingly understated his income but intended to report that income in a subsequent year, when he would be better situated to pay the resulting taxes. *Id.* at 344–45. The Court explained that even if the defendant had intended to pay his obligations in some subsequent year, such an intention "would not detract from the criminality of his willful act." *Id.* at 354.

Similarly, in *Pang*, the Ninth Circuit upheld a district court's decision to exclude evidence of the defendant's delinquent tax payments as irrelevant. The defendant, who had been charged with tax evasion, paid the amount of taxes due while awaiting trial. *Pang*, 362 F.3d at 1194. He tried offering evidence of his payments at trial to demonstrate a lack of willfulness, but the evidence was excluded. *Id.* The Ninth Circuit affirmed and explained that such "belated tax payments" were "irrelevant." *Id.* The court opined that a contrary rule might allow tax evaders to "avoid criminal prosecution simply by paying up after being caught." *Id.*

The Sixth Circuit, however, has expressed a more liberal approach to the admission of delinquent tax filings. In *Heindel v. United States*, 150 F.2d 493 (6th Cir. 1945), the government introduced evidence that the defendants in a tax evasion case had filed an amended return showing substantially greater income than previously reported. *Id.* at 495. The defendants tried to introduce evidence that the additional taxes were promptly paid but the district court excluded the evidence as irrelevant. *Id.* In remanding the case on other grounds, the Sixth Circuit noted that defendants' additional tax payments should have been admitted into evidence because they were relevant to their good faith defense:

> The issue framed was in respect to the good faith of the defendants in the payment of taxes. There were circumstances which bore both on their honest purpose and upon their lack of it. Final determination rested with the jury and the defendants were entitled to whatever inference might reasonably be drawn from the fact that

> as soon as the error was discovered and confirmed they paid their taxes. This is not
> a case where, by payment, it is sought to vitiate a crime.

*Heindel*, 150 F.2d at 497. With similar reasoning, other courts have allowed evidence of delinquent filings where the defendant claims that his taxes were mismanaged by an accountant. In *United States v. Klotz*, 792 F. Supp. 28 (M.D. Pa. 1992), the defendant was charged with willfully failing to file tax returns and pay over payroll taxes for a business he owned. Before trial, the government sought to exclude evidence of delinquent tax filings that the defendant made shortly after learning that criminal charges might be forthcoming. *Id.* at 29. The government's motion was denied.

The court held that evidence of the defendant's delinquent filings, though "generally inadmissible," was probative of whether he acted willfully. *Id.* at 30. Specifically, the court relied on the defendant's assertion that his taxes were prepared by his accountant and that once he learned of his tax responsibilities, he satisfied his obligations with "reasonable promptness." *Id.* at 30–31. The court also noted that evidence disputing the defendant's characterization of the delinquent filings would be relevant to their weight, not their admissibility. *Id.* at 31.

The case at bar is somewhat similar to *Klotz*. Like the defendant in *Klotz*, Defendant claims that his taxes were managed exclusively by his former bookkeeper, Donna Henke, and that he only learned of his tax deficiencies—and Henke's mismanagement—when his new bookkeeper, Sue Hastings, took over in August 2016. ECF No. 23 at PageID.103–04. Once Defendant's tax problems came to light, Hastings and other employees allegedly spent "thousands of hours" reconstructing Mission's finances.[2] ECF No. 23-2 at PageID.118. A little more than two years after

---

[2] In his response brief, Defendant states that he intends to introduce the expert testimony of a certified public accountant to substantiate his claim that the accounting at Mission was in such a state of disarray that a significant amount of time was necessary to organize and understand the financial information. ECF No. 23 at PageID.108.

Hastings became bookkeeper, Defendant began making payments on his tax balance and filed the delinquent Form 1040's. ECF No. 20 at PageID.69–70.

Defendant's version of events, if believed, would allow a reasonable jury to infer that his failure to pay taxes and file tax returns was the result of ignorance, rather than willfulness. Accordingly, Defendant's delinquent filings, if offered in conjunction with the assertions discussed above, would be probative of his mental state during the period in question.

In comparison, evidence of the delinquent filings poses only a modest risk of misleading the jury. The evidence will not, and cannot, be offered to show that Defendant's prior crimes, if any, were somehow vitiated, *see Sansone* 380 U.S. at 354, and the jury will be clearly instructed as to the elements of the charged offenses and the meaning of willfulness.

Based on the foregoing, the Government has not demonstrated that the probative value of Defendant's delinquent filings is substantially outweighed by the risk of misleading the jury.

## III.

Accordingly, it is **ORDERED** that the Government's Motion in Limine, ECF No. 20, is **DENIED**.

Dated: June 25, 2021                        s/Thomas L. Ludington
                                                 THOMAS L. LUDINGTON
                                                 United States District Judge