UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                  Plaintiff,                        Case No. 1:20-cr-20365

v.                                        Honorable Thomas L. Ludington
                                               United States District Judge

DALE VERNON THRUSH,

                  Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND
MOTION TO DISQUALIFY GOVERNMENT COUNSEL**

Defendant Dale Vernon Thrush's long-awaited trial was derailed when both the Government's most material witness and the undersigned's spouse tested positive for COVID-19. Because the trial could not be adjourned, a mistrial was declared. Defendant has since filed motions (1) to dismiss the indictment on double-jeopardy grounds and (2) to disqualify Government counsel. For the reasons stated hereafter, both motions will be denied.

**I.**

**A.**

Defendant Dale Vernon Thrush owns multiple businesses in Mount Pleasant, Michigan. In November 2019, he was indicted on 10 counts of willful failure to pay over payroll taxes, 26 U.S.C. § 7202, and four counts of willful failure to file a tax return, 26 U.S.C. § 7203. ECF No. 1. After a year of extensions and a last-minute bid to adjourn trial,[1] the parties appeared for jury selection

---

[1] Trial was repeatedly adjourned due to the COVID-19 pandemic and counsels' need to review discovery. *See, e.g.*, ECF Nos. 16; 22; 35. On October 7, 2021—less than a month before trial—Defendant filed a motion to proceed without COVID-19 procedures or to adjourn the trial until it could be conducted without COVID-19 procedures. *See* ECF No. 39. His primary argument was that forcing him to wear a facemask would interfere with his Sixth Amendment right to confront witnesses face-to-face. *See id.* at PageID.304–06. His motion was denied because "the witnesses

on November 4, 2021. Even with the various COVID-19 procedures in place, a jury was selected with little difficulty. And by the end of Friday, the following day, trial appeared to be progressing smoothly. The Government had already called multiple witnesses and, on Monday, intended to call its most material witness: Defendant's former bookkeeper, Donna Henke.

Unfortunately, trial never resumed. A few hours after the parties rested for the day—and a few minutes before the courthouse closed—the Government informed this Court and defense counsel by email that Henke had tested positive for COVID-19 and therefore could not enter the courthouse to testify on Monday. ECF No. 73-3 at PageID.1174. The Government suggested allowing Henke to testify remotely, but Defendant would not waive "having Ms. Henke on the witness stand." *Id.* at PageID.1173.

The next morning, the Government filed a motion to permit Henke to testify either by videoconference or from the courthouse parking lot "in a covered canopy tent area" that the Government had acquired. ECF No. 55 at PageID.477. Within the hour, Defendant filed a motion to bar the Government's proposal. ECF No. 56. His "whole defense," he explained, "[was] that [Henke] [was] lying," and he wanted to prove it by "forc[ing] [her] to come to court and lie to [his] face." *Id.* at PageID.488. As for the Government's outdoor excursion, Defendant derided the tent-and-table arrangement as a "travesty" and likened it to a "drive-in theater." *Id.* at PageID.491. Defendant also argued that the cold outdoor weather would be unsafe for one of his attorneys due to an underlying illness. *Id.*

Unfortunately, Henke's illness was not the only weekend surprise. On Sunday afternoon, the undersigned's spouse tested positive for COVID-19 and was mildly symptomatic. The

---

would [still] be able to perceive [Defendant's] presence and see his full person," and his mask "would not obstruct either his or the jury's view of the witness." ECF No. 41 at PageID.315.

undersigned tested negative but was still awaiting the results of his polymerase chain-reaction (PCR) test on Monday. On Monday morning, one of the jurors called the Court and stated that she could not report for duty because her minor son was also ill with flu-like symptoms.

Given these developments, this Court convened a telephonic hearing on Monday morning and proposed adjourning the trial to November 30, 2021—the earliest available date given this Court's calendar and the need to await test results from Henke and the undersigned. ECF No. 60 at PageID.510. The Government agreed, but Defendant objected. *Id.* at PageID.513. He argued that the delay would prejudice him because it would provide an opportunity for outside voices to influence the jury. *Id.* at PageID.513–14. In response, this Court explained that the only alternative to an adjournment, given the circumstances, was a mistrial. *Id.* at PageID.514.

With that in mind, this Court called the jury into the courtroom to poll their availability for the week of November 30, 2021.[2] *Id.* at PageID.515. Several jurors reported that they would be unavailable, some for medical procedures that were scheduled before the trial began. *Id.* at PageID.517–19. Given the impossibility of the proposed adjournment and a confluence of factors preventing the trial from resuming, this Court declared a mistrial. *Id.* at PageID.520–21.

## B.

Defendant has filed a motion to dismiss the indictment on double-jeopardy grounds. ECF No. 64. He claims that the Government first learned of Henke's positive test on the day before jury selection, and that it only raised the issue after it "realized [its] case was going very poorly." *Id.* at PageID.538. He also claims that there was no manifest necessity for a mistrial because the trial could have proceeded with a magistrate judge presiding or with the undersigned appearing remotely. ECF No. 76 at PageID.1215. Defendant has also filed a motion to disqualify Government

---

[2] The undersigned conducted the hearing remotely through a large display in the courtroom.

counsel for "dishonest and overzealous" behavior, including failing to disclose Henke's positive test.[3] *See* ECF No. 65 at PageID.548.

The Government opposes both motions. It explains that though Henke tested positive the day before jury selection with a rapid test, she was asymptomatic, vaccinated, and still awaiting the results of a PCR test. In short, she and the Government "hope[d] that the rapid test result was a false positive." ECF No. 74 at PageID.1177. When that turned out to be untrue, the Government immediately informed this Court and the parties by email. *See* ECF No. 74-3 at PageID.1200 (noting that Government counsel learned of positive PCR result at 4:47 PM and sent email at 4:55 PM). As for the mistrial, the Government maintains that this Court properly declared a mistrial given the confluence of factors cited during the hearing. *See id.* at PageID.1185–86.

Having reviewed the parties' briefing, this Court finds that a hearing is unnecessary and will proceed to decide Defendant's motions on the papers. *See* E.D. Mich. LR 7.1(f)(2).

## II.

### A.

The first issue is whether the Government may retry Defendant without violating the Double Jeopardy Clause. "The Fifth Amendment's Double Jeopardy Clause commands that no criminal defendant shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" *United States v. Foster*, 945 F.3d 470, 474 (6th Cir. 2019) (quoting U.S. CONST. amend. V). Typically, this means that a criminal defendant may not "be[] retried by the same sovereign for the same offense." *Id.*

---

[3] Defendant later filed an identical motion to disqualify Government counsel to correct a procedural deficiency in the earlier filing. *See* ECF No. 70.

But not all retrials offend the Double Jeopardy Clause. *Id.* Generally, a defendant may be retried if (1) she consents to or requests a mistrial or (2) the trial court declares a mistrial based on "manifest necessity." *Id.* Stated another way, "once jeopardy attaches, prosecution of a defendant other than before the original jury is barred unless '(1) there is a "manifest necessity" for a mistrial or (2) the defendant either requests or consents to a mistrial.' *Colvin v. Sheets*, 598 F.3d 242, 252 (6th Cir. 2010) (quoting *Johnson v. Karnes*, 198 F.3d 589, 594 (6th Cir.1999)).

Here, it is undisputed that jeopardy attached when "[the] jury [was] impaneled and sworn." *Klein v. Leis*, 548 F.3d 425, 431 (6th Cir. 2008) (citing *Fulton v. Moore*, 520 F.3d 522, 528 (6th Cir. 2008)). And Defendant did not request or consent to the mistrial. *See* ECF No. 60 at PageID.511 ("It is our position that if we mistry this case, then we cannot bring it back without violating the Double Jeopardy Clause"); *id.* at PageID.520 (conceding that adjournment was unworkable but preserving "position . . . with respect to the jeopardy"). So the question in this case is whether the mistrial was supported by "manifest necessity." *Foster*, 945 F.3d at 474.

In the double-jeopardy context, the term "manifest necessity" "mean[s] not absolute necessity, but rather a 'high degree' of necessity.'" *United States v. Gantley*, 172 F.3d 422, 429 (6th Cir. 1999) (quoting *Glover v. McMackin*, 950 F.2d 1236, 1240 (6th Cir. 1991)). In *Arizona v. Washington*, 434 U.S. 497 (1978), the Supreme Court "established a 'sliding scale of scrutiny' for determining whether manifest necessity existed." *Colvin*, 598 F.3d at 253 (quoting *Ross v. Petro*, 515 F.3d 653, 661 (6th Cir. 2008)). "The strictest scrutiny applies when the mistrial is based on prosecutorial or judicial misconduct. At the other end, 'great deference' or 'special respect' is due when the mistrial is based on a deadlocked jury." *Id.* (quoting *Washington*, 434 U.S. at 509–10) (internal citation omitted). In general, courts should declare a mistrial "with the greatest caution,

under urgent circumstances, and for very plain and obvious causes." *Id.* at 252 (quoting *United States v. Perez*, 22 U.S. 579, 580 (1824)).

**B.**

Defendant argues that the Government may not retry him because it knew that Henke would be unavailable to testify before the jury was impaneled. *See* ECF No. 64 at PageID.540–41. He cites *Downum v. United States*, 372 U.S. 734 (1963), for the proposition that a court may not declare a mistrial merely because the Government "showed up with insufficient evidence [to convict]." *Id.* at PageID.541.

In *Downum*, the Government learned the day before jury selection that "one of its key witnesses" had not been located or served with a summons. *Downum*, 372 U.S. at 735. Rather than seek a continuance, the Government proceeded to trial and, when its witness failed to appear, sought and received a mistrial. *Id.* The Supreme Court held that the Government could not retry the defendant because it knowingly "took a chance" that its witness would not appear and, therefore, that its evidence would be insufficient to convict. *Id.* at 737 (quoting *Cornero v. United States*, 48 F.2d 69, 71 (9th Cir. 1931)).

*Downum* is distinguishable from this case in at least three respects. First, the Government appears to have believed in good faith that Henke would be available to testify given that she was vaccinated, asymptomatic, and awaiting the results of a PCR test. To be sure, the Government *should have* notified this Court of Henke's positive rapid test, as such tests rarely return a false positive. *See* Joshua S. Gans et al., *False-Positive Results in Rapid Antigen Tests for SARS-CoV-2*, JAMA Network (Jan. 7, 2022), https://jamanetwork.com/journals/jama/fullarticle/2788067 [https://perma.cc/Q6AQ-W9RC] (noting in study of over 900,000 rapid tests that "[t]he overall rate of false-positive results . . . was very low"). But there is little reason to think that the

Government *knew* that Henke would be unavailable in the same way that it knew in *Downum* that its witness would not show up for trial.[4] *See Downum*, 372 U.S. at 735. Rather, this case is more analogous to *United States ex rel. Gibson v. Ziegele*, in which the Third Circuit affirmed a finding of manifest necessity for a mistrial after the prosecution's key witness "had become ill *during* the trial and could not testify."[5] 479 F.2d 773, 777 (3d Cir. 1973) (emphasis added).

Second, the Government did not seek a mistrial. Instead, it sought to permit Henke to testify via videoconference or from an alternative location outside the courthouse. *See* ECF No. 55. When Defendant objected to both proposals, the Government agreed to continue the case for two weeks—another proposal that Defendant opposed. *See* ECF No. 60 at PageID.513–14. This is not to say that Defendant's objections lacked merit or that he should be faulted for opposing the Government. But it does undermine Defendant's assertion that the Government intentionally withheld Henke's positive test to provoke a mistrial. *See* ECF No. 64 at PageID.538 (claiming that the Government opted to disclose Henke's illness only after "[it] realized [its] case was going very poorly"); *United States v. Foster*, 945 F.3d 470, 474 (6th Cir. 2019) (noting that the Double Jeopardy Clause protects defendants from government attempts to provoke a mistrial).

---

[4] Defendant argues that Henke would not have been allowed to enter the courtroom even if she later tested negative, because the administrative order in effect at the time prohibited "[p]ersons who have tested positive for COVID-19 within the last 10 days" from entering. *See* ECF No. 76 at PageID.1210 (quoting Administrative Order, 21-AO-009 (E.D. Mich. May 3, 2021)). Yet, as Defendant later acknowledges, the administrative order did not address the effect of a later negative test. *Id.* at PageID.1211. And, even if Defendant's interpretation is correct, it would not mean that the Government *knew* that Henke would be denied entry.

[5] In *United States v. Stevens*, the Sixth Circuit stated in dicta that "if the prosecutor [in *Ziegele*] had known before empaneling the jury that the key witness was ill, the *Downum* rule would apply because [he] would knowingly have taken a chance by proceeding." *United States v. Stevens*, 177 F.3d 579, 587 (6th Cir. 1999). As explained above, however, there is little reason to believe that the Government knew that Henke would be unavailable. And *Stevens* itself is distinguishable, as the Government in that case asked for a mistrial after its key witness *refused* to testify. *See id.* at 582. Nothing in the record suggests that Henke refused to testify.

Third, Henke's unavailability was one of several reasons for the mistrial. As explained during the hearing, this Court declared a mistrial due to a "confluence of factors," including the positive COVID-19 test received by the undersigned's spouse. *See* ECF No. 60 at PageID.520–21. Defendant suggests that the trial could have proceeded with a magistrate judge presiding or with the undersigned appearing remotely. ECF No. 64 at PageID.542. But the courtroom technology was ill-suited for remote appearances, as evidenced by the undersigned's reliance on courtroom staff to help conduct the hearing. *See* ECF No. 60 at PageID.515–19. Further, magistrate judges may not preside over felony trials.[6] *See Gomez v. United States*, 490 U.S. 858, 872 (1989) ("[T]he carefully defined grant of authority to conduct trials of civil matters and of minor criminal cases should be construed as an implicit withholding of the authority to preside at a felony trial.").

Granted, this case *is* analogous to *Downum* in some respects, notably the Government's foreknowledge of a problem with one of its key witnesses. And, as in *Downum*, the Government deserves some criticism here for its inaction.

Still, there is no evidence that the Government *knew* that Henke would be unavailable. Further, as explained above, Henke's unavailability was not the only reason for the mistrial. In other words, granting Defendant's motion would mean that the Government may not retry a defendant when its good-faith mistake, combined with subsequent, unforeseen circumstances, renders trial impracticable. The right conferred by the Double Jeopardy Clause is strong, but it "is not absolute." *Phillips v. Ct. of Common Pleas, Hamilton Cnty., Ohio*, 668 F.3d 804, 811 (6th Cir.

---

[6] At the end of the hearing, the undersigned briefly remarked that the trial might have been able to proceed with a magistrate judge or the undersigned appearing remotely. ECF No. 60 at PageID.520–21. But those remarks were meant to help explain the confluence of factors producing the necessity for a mistrial, not to propose an alternative path forward. *See id.* Moreover, neither party raised the possibility of proceeding remotely or with a magistrate judge presiding.

2012). And in cases like this, that right must be "subordinated to the public's interest in fair trials designed to end in just judgments." *Wade v. Hunter*, 336 U.S. 684, 689 (1949).

For these reasons, "manifest necessity" existed for the mistrial, and Defendant's motion to dismiss will be denied.

### III.

The next issue is whether Government counsel should be disqualified. "The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process." *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 241 (2d Cir. 2016) (quoting *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)). "The disqualification of Government counsel is a drastic measure and a court should hesitate to impose it except where necessary." *United States v. Bolden*, 353 F.3d 870, 878 (10th Cir. 2003) (quoting *Bullock v. Carver*, 910 F. Supp. 551, 559 (D. Utah 1995)).

A state's ethical rules equally apply to federal prosecutors and other attorneys who practice in the state. *See* 28 U.S.C. § 530B(a); *see also United States v. Ford*, 176 F.3d 376, 381 (6th Cir. 1999) (considering whether federal prosecutor practicing in Kentucky should have been disqualified under Kentucky law). In Michigan, there are two primary grounds for disqualifying a prosecutor: (1) "a conflict of interest arising out of some professional, attorney-client relationship, as when the defendant is a former client of the prosecuting attorney," and (2) "a personal interest (financial or emotional) in the litigation, or . . . some personal relationship (kinship, friendship or animosity) with the accused." *People v. Doyle*, 406 N.W.2d 893, 897–98 (Mich. Ct. App. 1987).

Defendant argues that Government counsel should be disqualified because of their "dishonest and overzealous" behavior, as outlined in an ethical complaint that he submitted to the Department of Justice. *See* ECF Nos. 65 at PageID.548; 70-2. Defendant also suggests that

Government counsel should be disqualified because of the ethical complaint itself, reasoning that it "will add 'fire to the flame' and create a personal stake (financial and emotional) for Counsel for Plaintiff to convict the Defendant." ECF No. 65 at PageID.546.

Defendant's arguments are unpersuasive. First, the "dishonest and overzealous" behavior described in Defendant's ethical complaint does not justify disqualification. The cited behavior includes Government counsel's (1) failure to disclose Henke's positive rapid test; (2) pretrial contact with Defendant's current bookkeeper, whom they apparently suspected of perjury; (3) trial presentation of Defendant's after-indictment payroll-tax payments, which Defendant argues were deliberately misconstrued; (4) grand-jury examination of Defendant's current bookkeeper, which Defendant claims was misleading; and (5) decision not to print Defendant's trial exhibits for him, which Defendant claims Government counsel had falsely promised to do "to embarrass defense counseal [sic] and make them look like bad [sic]." ECF No. 70-2 at PageID.843–49.

Even if Defendant's allegations are true,[7] this Court rejects his conclusion that Government counsel violated its ethical duties. Consider, for example, Defendant's allegation that Government counsel violated their duty of candor. *See id.* at PageID.845. Under Michigan Rule of Professional Conduct 3.3, counsel may not knowingly "make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal." Mich. R. Prof'l Conduct 3.3(a)(1). Defendant's ethical complaint does not, however, recite any material statement of fact or law that Government counsel falsely made. Instead, it relies on certain nondisclosures that it characterizes as fraudulent or malicious. *See, e.g.*, ECF No. 70-2 at

---

[7] Many of the allegations in Defendant's ethical complaint are devoid of supporting evidence, like a personal declaration or affidavit. *See, e.g.*, ECF No. 70-2 at PageID.847 (alleging Government counsel "tried to force" Defendant's current bookkeeper to make untrue statements during their investigation).

PageID.845 ("Everyday that [Government counsel] entered the courthouse and did not move for continuance . . . , they in effect, made a false statement to the court."). To be sure, Government counsel should have disclosed Henke's positive rapid test, if for no other reason than good trial practice. But the failure to do so does not appear to have been unethical.

Consider, as another example, Defendant's allegation that Government counsel manipulated the grand jury. *See id.* at PageID.848. Under Michigan Rule of Professional Conduct 3.3, counsel in an *ex parte* proceeding must "inform the tribunal of all material facts that are known to the lawyer and that will enable the tribunal to make an informed decision." Mich. R. Prof'l Conduct 3.3(d). But instead of citing material exculpatory facts that Government counsel shielded from the grand jury, Defendant points to a single instance in which Government counsel appeared to gloss over an inconsistency in witness testimony. *See* ECF No. 70-2 at PageID.848.

Accordingly, Defendant's ethical complaint raises, at best, debatable ethical questions that do not suggest an impermissible "personal interest" on the part of Government counsel. *See People v. Doyle*, 406 N.W.2d 893, 897–98 (Mich. Ct. App. 1987). The Department of Justice is free to reach its own conclusions, of course, but for purposes of these proceedings, Defendant has not demonstrated conduct warranting the "drastic measure" of disqualification. *See United States v. Bolden*, 353 F.3d 870, 878 (10th Cir. 2003).

For similar reasons, the mere existence of Defendant's ethical complaint does not justify disqualification. If the conduct itself does not justify disqualification, then, *a fortiori*, neither should a document complaining of it. Further, as the Government explains, a contrary rule would allow criminal defendants "to pick their prosecutors by selectively filing lawsuits or ethical complaints." ECF No. 73 at PageID.1159.

Because Defendant has not shown a conflict of interest, impermissible emotional stake, or some other ground for questioning Government counsel's integrity, his motion to disqualify will be denied.

## IV.

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss, ECF No. 64, Motion to Disqualify Government Counsel, ECF No. 65, and duplicate Motion to Disqualify Government Counsel, ECF No. 70, are **DENIED**.


Dated: June 30, 2022                                       s/Thomas L. Ludington
                                                          THOMAS L. LUDINGTON
                                                          United States District Judge