

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

DALE VERNON THRUSH,

        Defendant.

Case No. 1:20-cr-20365

Hon. Thomas L. Ludington

Offenses:
Cts. 1-10: 26 U.S.C. § 7202-
Failure to Pay Over Payroll Taxes

Cts. 11-14: 26 U.S.C. § 7203-
Failure to File a Tax Return

Cts. 15-17: 18 U.S.C. §§ 1343,
3147(1) - Wire Fraud

---

## SUPERSEDING INDICTMENT

---

The Grand Jury in and for the Eastern District of Michigan, sitting in Bay

City, charges:

## INTRODUCTION

At all times relevant to this Indictment:

### The Defendant and Relevant Entities

At all times relevant to this Indictment:

1.  402 N Mission St, LLC ("402 N Mission") was a limited liability company operating in Mount Pleasant, Michigan using the business names Ninety-One, LLC and Oakridge DVD Rental. 402 N Mission provided employer-related services, such as managing payroll and payroll-related taxes, and other employer-related administrative functions necessary to operate a business.

2.  Xtreme Enterprises, Inc. ("Xtreme") was a corporation operating in Mount Pleasant, Michigan and Lansing, Michigan that provided automotive repair services to customers at two different locations using the business names Auto-Lab Lansing, Adam's Auto Repair Mt. Pleasant, and Four O Two N Mission.

3.  Verno All Tune, Inc. ("Verno"), was a corporation operating in Mount Pleasant, Michigan using the business names Xtreme Race Cars, Racer's Speed Shop ("Racer's") and All Tune and Lube ("All Tune"). Verno sold motorsport vehicles repair parts and equipment to customers.

4.  USAuto Repair, Inc. ("USAuto") was a corporation operating in Mount Pleasant, Michigan using the business name Mount Pleasant Auto-Lab. USAuto provided automotive repair services to customers.

5.  Bank A was a financial institution based in Pittsburgh, Pennsylvania, that was insured by the FDIC. It has branches throughout the United States, including in the Eastern District of Michigan.

2

6.      The defendant DALE VERNON THRUSH ("Defendant") was the sole owner and operator of 402 N Mission, Xtreme, Verno, and USAuto. Defendant exercised control over 402 N Mission's finances, possessed signatory authority over its operating account, and controlled its expenditure of funds to pay expenses.

7.      The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury, responsible for administering and enforcing the tax laws of the United States.

**Individual Income Taxes**

8.      Pursuant to Title 26 of the United States Code, every citizen and resident of the United States who received gross income in excess of the minimum filing amount established by law for a particular calendar year was required to make and file annually an individual income tax return with the IRS, such as an U.S. Individual Income Tax Return, Form 1040 ("Form 1040").

9.      402 N Mission, Xtreme, and Verno were organized as S Corporations. S Corporations were required to file U.S. Income Tax Returns for an S-Corporation, Form 1120S ("Forms 1120S"), with the IRS each calendar year, specifically reporting the entity's gross income, deductions, and distributions. Defendant as the sole owner and shareholder of 402 N Mission, Xtreme, and Verno

was required to file a Form 1040 reporting the net profits and the distributions he
received from 402 N. Mission, Xtreme, and Verno each year.

10.    Defendant timely filed his Form 1040 with the IRS for tax years 2011
and 2012, as required by law.

**Payroll Taxes**

11.    Pursuant to Title 26 of the United States Code, employers, including
402 N. Mission, were required to collect, truthfully account for, and pay over to the
IRS a variety of taxes withheld from employee wages, collectively referred to as
"Payroll Taxes." These taxes were: Federal Income Tax Withholding
("Withholding Taxes") and Federal Insurance Contribution Act taxes ("FICA
Taxes"), as more particularly described below:

(a)    Withholding Taxes: In general, an employer was required to
deduct and withhold income tax on the amount of wages that actually or
constructively were paid to its employees, and pay over those withholding taxes to
the IRS; and

(b)    FICA Taxes: The FICA tax was comprised of two elements:
old-age, survivor and disability insurance, commonly referred to as "Social
Security," and health insurance, commonly referred to as "Medicare." Social
Security taxes were used to fund retirement and disability benefits, while Medicare

4

taxes were used to provide health and medical benefits for the aged and disabled. An employer had to deduct FICA taxes on the amount of wages that were actually or constructively paid to its employees, and pay over those FICA taxes to the IRS.

12.    To account for Payroll Taxes that had to be paid to the IRS, the Internal Revenue Code required employers to prepare tax forms, including Forms W-2 and W-3, and to file them with the proper government agency. The Internal Revenue Code required employers to accurately report to the IRS amounts of employee wages paid, as well as the payroll tax withheld based on those wages.

13.    Section 7501 of the Internal Revenue Code provided that whenever any person was required to withhold or collect any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so withheld or collected was required to be held in trust on behalf of the United States.

14.    Employers were required to report Payroll Taxes on an Employer's Quarterly Federal Tax Return, Form 941 ("Form 941"). The Form 941 was filed quarterly, and was due one month after the conclusion of each quarter.

**The Paycheck Protection Program**

15.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide

5

emergency financial assistance to the millions of Americans who were suffering the economic effects of the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

16.     To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. Specifically, the applicant had to state whether "...the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant ...[is] for any felony, presently subject to an indictment..."

17.     In the PPP loan application, the small business (through its authorized representative) had to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In

addition, businesses applying for a PPP loan had to provide documentation of their payroll expenses.

18.    A PPP loan application had to be processed by a participating lender. PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located in Virginia or Oregon.  If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were fully guaranteed by Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

19.    The business was required to use the PPP loan proceeds only on certain permissible expenses—qualifying payroll costs, interest on mortgages, rent, and utilities.  The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expenses within a designated period after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

20.    To obtain PPP loan forgiveness, an authorized representative of the business must submit a PPP loan forgiveness application to the lending institution certifying, among other things, that the business complied with all requirements of

7

the PPP Rules, including rules related to eligible uses of PPP loan proceeds and the amount of PPP loan proceeds that must be used for payroll costs. PPP loan forgiveness involves the flow of reimbursement funds from the SBA to the lending institution.

## COUNTS ONE to TEN

26 U.S.C. § 7202
Failure to Pay over Payroll Tax

21.     The allegations in Paragraphs 1 through 14 of this Indictment are re-alleged as if set forth in full herein.

## Payment of Payroll Taxes

22.     As the sole owner of 402 N Mission and as a person who exercised control over 402 N Mission's finances, possessed signatory authority over its operating account, and controlled its expenditure of funds to pay expenses, Defendant was a "responsible person," that is, he had the corporate responsibility to collect, truthfully account for, and pay over 402 N Mission's Payroll Taxes.

23.     From in or about April 2014 to in or about December 2016, 402 N Mission withheld taxes from its employees' paychecks. However, beginning in or about June 2014, Defendant, on behalf of 402 N Mission, failed to timely file Forms 941 and make payments of the full amount of the 402 N Mission payroll taxes due to the IRS.

8

24. From in or about June 2014 through December 2016, Defendant on behalf of 402 N Mission failed to pay over approximately $238,223 in 402 N Mission payroll taxes due and owing.

25.    From in or about April 2014 to in or about December 2016, Defendant directed over $100,000 from the 402 N Mission payroll bank account to other entity bank accounts for, among other things, the payment of ordinary business expenses, while at the same time failing to pay over to the IRS Payroll Taxes withheld from 402 N Mission employee's paychecks.

26.    From in or about April 2014 to in or about December 2016, Defendant directed over $396,516 from the 402 N Mission payroll account for, among other things, the payment of remodeling expenses and construction costs for a business operated by his wife, while at the same time failing to pay over to the IRS Payroll Taxes withheld from 402 N Mission employee's paychecks.

27.    On or about the dates set forth below, in the Eastern District of Michigan and elsewhere,

DALE VERNON THRUSH,

the Defendant herein, did willfully fail to truthfully account for and pay over to the IRS all of the Payroll Taxes due and owing to the United States on behalf of 402 N

9

Mission and their employees, as set forth below, with each of the calendar quarters

constituting a separate count of this Indictment:

| Count | Form 941 for Calendar Year and Quarter | Quarterly Due Date |
|-------|----------------------------------------|--------------------|
| ONE | 2014 2nd Quarter | July 31, 2014 |
| TWO | 2014 3rd Quarter | October 31, 2014 |
| THREE | 2014 4th Quarter | January 31, 2015 |
| FOUR | 2015 1st Quarter | April 30, 2015 |
| FIVE | 2015 2nd Quarter | July 31, 2015 |
| SIX | 2015 3rd Quarter | October 31, 2015 |
| SEVEN | 2015 4th Quarter | January 31, 2015 |
| EIGHT | 2016 1st Quarter | April 30, 2016 |
| NINE | 2016 3rd Quarter | October 31, 2016 |
| TEN | 2016 4th Quarter | January 31, 2017 |

**All in violation of Title 26, United States Code, Section 7202 and Title 18, United States Code, Section 2.**

## COUNTS ELEVEN to FOURTEEN

26 U.S.C. § 7203
Failure to File a Tax Return

10

28.    The allegations in Paragraphs 1 through 14 of this Indictment are re-alleged as if set forth in full herein.

29.    Defendant filed Applications for Automatic Extension of Time to File U.S. Individual Income Tax Return, Forms 4868, for calendar years 2013, 2015, and 2016.

30.    During the calendar years set forth below, in the Eastern District of Michigan and elsewhere,

DALE VERNON THRUSH

the Defendant herein, who was a resident of Farwell, Michigan, had and received gross income through 402 N Mission, Xtreme, and Verno in excess of $21,000 in each of the calendar years shown in the chart below. By reason of such gross income, he was required by law, following the close of the calendar year shown in the chart below, on or before the filing deadline shown in the chart below, to make an individual income tax return to the IRS, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Well knowing and believing all of the foregoing, Defendant did willfully fail, by on or about the filing deadline shown in the chart below, in the Eastern District of Michigan and elsewhere, to make an individual income tax return for the calendar years shown in the chart below:

11

| Count | Calendar Year | Filing Deadline |
|---|---|---|
| ELEVEN | 2013 | October 15, 2014 |
| TWELVE | 2014 | April 15, 2015 |
| THIRTEEN | 2015 | October 15, 2016 |
| FOURTEEN | 2016 | October 15, 2017 |

**All in violation of Title 26, United States Code, Section 7203, and Title 18, United States Code, Section 2.**

## COUNTS FIFTEEN to SEVENTEEN

18 U.S.C. § 1343
Wire Fraud

31.    The allegations in Paragraphs 1 through 20 of this Indictment are re-alleged as if set forth in full herein.

32.    On or about the dates specified as to each count below in the chart below, in the Eastern District of Michigan, and elsewhere, Defendant DALE VERNON THRUSH, having knowingly devised a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and material omissions, caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, and sounds, for the purpose of executing such scheme and artifice to defraud.

12

**Purpose of the Scheme to Defraud**

33.     The purpose of the scheme to defraud was for DALE VERNON

THRUSH to unjustly enrich himself by fraudulently obtaining PPP loan proceeds

and subsequent loan forgiveness despite diverting those loan proceeds for

impermissible uses. These impermissible uses included personal investment

account expenses, capital expansion projects, and payment of part of the delinquent

payroll tax liability underlying Counts One through Ten alleged above.

**The Scheme to Defraud**

34.     Beginning in or about April 2020 and continuing until at least in or

about September 2021, Defendant DALE VERNON THRUSH devised a scheme

and artifice to defraud, and to obtain money and property, by filing (1) a PPP loan

application with materially false and fraudulent representations; and (2) two PPP

loan forgiveness applications with materially false and fraudulent representations

about the use of the PPP loan funds and 402 N Mission's entitlement to PPP loan

forgiveness. Defendant DALE VERNON THRUSH and 402 N Mission received

PPP loan assistance funds issued because of the materially false and fraudulent

representations and used those funds for impermissible purposes.

13

35.     In each of the applications for the PPP Loans, Defendant DALE

VERNON THRUSH falsely represented to Bank A the purpose for which he

intended to use the funds provided through the PPP loan.

36.     In each of the loan forgiveness applications for the PPP Loans,

Defendant DALE VERNON THRUSH falsely represented to BANK A that he

complied with all requirements of the Paycheck Protection Program, including

using loan proceeds solely towards eligible payroll, mortgage interest, rent, or

utilities expenses.

37.     On the PPP loan application dated, on or about February 3, 2021,

Defendant DALE VERNON THRUSH made the materially false representation to

BANK A that he, as the owner of 402 N Mission, was not presently subject to an

indictment.

**Execution of the Scheme and Artifice**

38.     On or about the dates specified as to each count below in the chart

below, in the Eastern District of Michigan, and elsewhere, Defendant DALE

VERNON THRUSH caused the execution of the aforesaid scheme and artifice to

obtain moneys and funds by means of materially false and fraudulent pretenses,

representations, promises, and omissions, transmit and cause to be transmitted, by

means of wire communication in interstate and foreign commerce, writings, signs,

pictures, and sounds for the purpose of executing the scheme and artifice to defraud, as set forth below:

| Count No. | Approximate Date | Description of Wire |
|---|---|---|
| Fifteen | July 12, 2021 | Interstate wire transmission of data from loan forgiveness application, falsely claiming that proceeds of loan number ending with 7703 were used in compliance with the PPP program requirements, caused by DALE VERNON THRUSH, in Michigan, to the SBA, outside of Michigan. |
| Count No. | Approximate Date | Description of Wire |
| Sixteen | February 3, 2021 | Interstate wire transmission of data from loan application, caused by DALE VERNON THRUSH, in Michigan, to the SBA, outside of Michigan, falsely representing that he, as the applicant or individual owning 20% or more of the equity of the applicant, was not presently subject to an indictment. |
| Seventeen | September 21, 2021 | Interstate wire transmission of data from loan forgiveness application, falsely claiming that proceeds of loan number ending with 8407 were used in compliance with the PPP program requirements, caused by DALE VERNON THRUSH, in Michigan, to the SBA, outside of Michigan. |

**All in violation of Title 18, United States Code, Section 1343.**

15

The offenses alleged in Counts 15-17 are subject to the enhanced penalty provisions of Title 18, United States Code, Section 3147(1) in that he engaged in this conduct while he was on pretrial release in the Eastern District of Michigan in Criminal Case 1:20-CR-20365.


A TRUE BILL


Dated: <u>July 26, 2023</u>                    <u>/s/ GRAND JURY FOREPERSON</u>


<u>/s/ David A. Hubbert</u>                    <u>/s/ Mark McDonald</u>
DAVID A. HUBBERT                    MARK MCDONALD
Deputy Assistant Attorney General        GEORGE MEGGALI
U.S. Department of Justice, Tax          DOJ Tax Division Trial Attorneys
Division                                Northern Criminal Enforcement
                                        Section
                                        150 M Street, NE
                                        Washington, DC 20005

16

| United States District Court Eastern District of Michigan | Criminal Case Cover Sheet | Case Number: 20-cr-20365 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based on LCrR 57.10(b)(4)[1]: | |
| ☐Yes ☑No | AUSA's Initials: MM |

**Case Title:** USA v. Dale Vernon Thrush

**County where offense occurred:** Isabella

**Offense Type:** Felony

Indictment -- based upon LCrR 57.10 (d) *[Complete Superseding section below].*

## Superseding Case Information

**Superseding to Case No:** 20-cr-20365          **Judge:** Thomas L. Ludington

**Reason:**
Embraces same subject matter but adds the additional defendants or charges below:

| Defendant Name | Charges | Prior Complaint (if applicable) |
|---|---|---|
| Dale Vernon Thrush | 18 U.S.C. §§ 1343, 3147(1) | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case**

July 26, 2023
Date

s/Mark McDonald

Mark McDonald
Assistant United States Attorney
600 Church Street
Flint, MI 48502
mark.s.mcdonald@usdoj.gov
(810) 766-5177

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.