UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                        Case No. 1:20-cr-20365

v.                                        Honorable Thomas L. Ludington
                                             United States District Judge

DALE VERNON THRUSH,

        Defendant.
_____/

**OPINION AND ORDER GRANTING GOVERNMENT'S MOTION *IN LIMINE*, DENYING DEFENDANT'S MOTION *IN LIMINE*, AND DENYING DEFENDANT'S RENEWED MOTION TO DISMISS**

In August 2020, Defendant Dale Vernon Thrush was indicted on ten counts of willful failure to pay payroll taxes, 26 U.S.C. § 7202, and four counts of willful failure to file a personal tax return, 26 U.S.C. § 7203. The case proceeded to trial but was declared a mistrial in November 2021. Defendant filed a motion to dismiss on double-jeopardy grounds, which this Court denied. Defendant appealed, but the Sixth Circuit Court of Appeals affirmed this Court's decision and, in July 2023, remanded the case for retrial.

After remand, the Government filed a Superseding Indictment adding one wire-fraud charge,[1] alleging Defendant falsely represented that he was *not* subject to an indictment in an application for pandemic-relief loans he made in February 2021 to maintain his business's employees. The new wire-fraud charge was severed from the original tax charges, and is set for a jury trial on April 23, 2024. In advance of trial, both Parties filed motions *in limine* seeking to exclude certain evidence. Defendant also filed a Renewed Motion to Dismiss the wire-fraud

---

[1] The Superseding Indictment also included two additional counts of wire fraud, *see* ECF No. 118 at PageID.2138–42, which have since been voluntarily dismissed by the Government. ECF Nos. 142; 146.

charge, alleging the Grand Jury was prejudiced against him because it heard evidence unrelated to the one remaining wire-fraud charge and because the misrepresentation was not material to his receipt of the loan.

As explained below, the Government's Motion *in Limine* will be granted, Defendant's Motion in *Limine* will be denied, and Defendant's Motion to Dismiss will be denied.

## I.

In August 2020, Defendant Dale Vernon Thrush was indicted on ten counts of willful failure to pay payroll taxes, 26 U.S.C. § 7202, and four counts of willful failure to file his personal income tax returns, 26 U.S.C. § 7203. ECF No. 1. The case proceeded to trial in November 2021, but was declared a mistrial after four days because the Government's most material witness and the undersigned's spouse both tested positive for COVID-19,[2] and the jury could not accommodate a two-week adjournment. ECF Nos. 60; 61.

Defendant filed a motion to dismiss on double-jeopardy grounds, ECF No. 64, which was denied, *see United States v. Thrush*, No. 1:20-CR-20365, 2022 WL 2373351, at *4 (E.D. Mich. June 30, 2022). He appealed, ECF No. 97, and the case was stayed pending the appeal, ECF Nos. 99; 100. On July 17, 2023, the Sixth Circuit affirmed, holding that, under the circumstances, "an adjournment was proper and not an abuse of discretion," though the panel was not unanimous. *United States v. Thrush*, No. 22-1588, 2023 WL 4564769, at *6 (6th Cir. July 17, 2023) (per curium).

Nine days after the Sixth Circuit's decision, the Government filed a superseding indictment adding three counts of wire fraud, 18 U.S.C. § 1343. ECF No. 118. The first part of the Superseding

---

[2] Administrative Orders in effect at that time prohibited court staff who had close contact with people who tested positive for COVID-19 from returning to the Court without waiting ten days and presenting a negative COVID-19 test to the court administrator. Administrative Order, 21-AO-009 (E.D. Mich. May 3, 2021).

Indictment recited the same 14 counts charged in the 2020 Indictment that were the focus of the November 2021 trial. *Compare* ECF No. 1 *with* ECF No. 118. But the Superseding Indictment added three new wire-fraud charges related to Defendant's applications for pandemic-relief loans and subsequent loan forgiveness. *See* ECF No. 118 at PageID.2138–42.

In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), which—among other things—authorized the "single largest element of U.S. Pandemic relief[:]" The Paycheck Protection Program (PPP). Susan C. Morse, *Emergency Money: Lessons from the Paycheck Protection Program*, 55 U. MICH. J.L. REFORM 175, 176 (2021); *see also* Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 1102(a), 134 Stat. 281, 286-93 (2020) (codified at 15 U.S.C. § 636(a)(36)) (establishing the PPP).

The PPP was administered by the U.S. Small Business Administration (SBA) and entailed the following: an eligible small business could apply for a PPP loan through a bank authorized to process PPP loan applications. PPP loans were backed by the SBA and required no collateral or guarantee, *see* 15 U.S.C. § 636(a)(36)(J). If approved, PPP loan-borrowers were authorized to use PPP funds for employee compensation, payroll costs, continuing group healthcare benefits, interest payments on any mortgage obligation, rent, utilities, and interest on any debt obligations incurred before the covered period. *See* 15 U.S.C. 636(a)(36)(F)(i). "Payroll costs" is defined as:

> (aa) the sum of payments of any compensation with respect to employees that is a[]
>     (AA) salary, wage, commission, or similar compensation;
>     (BB) payment of cash tip or equivalent;
>     (CC) payment for vacation, parental, family, medical, or sick leave;
>     (DD) allowance for dismissal or separation;
>     (EE) payment required for the provision of group health care benefits, including insurance premiums;
>     (FF) payment of any retirement benefit; or
>     (GG) payment of State or local tax assessed on the compensation of employees; *and*
> (bb) The sum of payments of any compensation to or income of a sole proprietor or independent contractor that is a wage, commission, income, net earnings from

self-employment, or similar compensation and that is an amount that is not more than $100,000 in 1 year, as prorated for the covered period."

15 U.S.C. 636(a)(36)(A)(viii)(I) (emphasis added)

PPP loan-borrowers were eligible for forgiveness if, during the covered period corresponding with their loan,[3] the borrower met three conditions: (1) employee and compensation levels were maintained; (2) the loan proceeds were spent on payroll costs and other eligible expenses; and (3) at least 60% of the loan proceeds were spent on payroll costs. *See PPP Loan Forgiveness*, U.S. SMALL BUS. ADMIN., https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/ppp-loan-forgiveness (last updated May 24, 2023) [https://perma.cc/NNH6-KTFS]. Once a borrower applies for loan forgiveness, the SBA "may request information and documents to review" the calculation of the borrower's loan-forgiveness amount, including payroll tax filings, such as Form 941s. *Id.* Notably, as of October 2020, so long as the borrower submitted a loan-forgiveness application within 10 months of the completion of the covered period, the borrower was not required to make any payments on the loan "until the forgiveness amount is remitted to the lender by SBA." *Paycheck Protection Program: Frequently Asked Questions (FAQs) on PPP Loan Forgiveness*, U.S. SMALL BUS. ADMIN. (Aug. 11, 2020), https://www.sba.gov/sites/sbagov/files/2020-10/PPP%20-%20Loan%20Forgiveness%20FAQs%20%28October%2013%2C%202020%29.pdf [https://perma.cc/CJK4-6QLN].

The Superseding Indictment alleged Defendant "knowingly devised a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and material omissions" transmitted by wire communication. ECF No.

---

[3] Under the first iteration of the CARES Act, the "covered period" for PPP loans was only eight weeks, but it was later extended to 24 weeks. *See* Business Loan Program Temporary Changes; Paycheck Protection Program—Revisions to Loan Forgiveness and Loan Review Procedures Interim Final Rules, 85 FR 38304-01 (June 26, 2020) (citing § 1106 of the Cares Act).

118 at PageID.2138. Specifically, it alleged Defendant filed a Paycheck Protection Program (PPP) loan application in February 2021 "with materially false and fraudulent representations" that he was not subject to a criminal indictment at the time of the application, and that in July 2021 and September 2021 he filed "PPP loan forgiveness applications with materially false and fraudulent representations about the use of the PPP loan funds and . . . Mission's entitlement to PPP loan forgiveness." *Id.* at PageID.2139. Further, the Indictment alleged Defendant engaged in a "scheme to defraud" and "unjustly enrich himself," by using "PPP loan proceeds and subsequent loan forgiveness" impermissibly for "personal investment account expenses, capital expansion projects, and payment of part of [his] delinquent payroll tax liability underlying Counts [1–10]." *Id.*

On September 5, 2023, Defendant filed a motion to dismiss the new wire-fraud counts, ECF No. 123, and a motion to sever the wire-fraud counts from the original tax charges, ECF No. 122. Defendant's Motion to Dismiss was denied and the Government was directed to file a Bill of Particulars regarding Counts 15 and 17. ECF No. 134. On November 30, 2023, the Government filed its Bill of Particulars, ECF No. 135, and this Court directed the Parties "to file supplemental briefing regarding Defendant's pending Motion to Sever, ECF No. 122, in light of the Government's Bill of Particulars." ECF No. 139 at PageID.2439.

Twelve days later, the Government filed a motion to dismiss counts 15 and 17, ECF No. 142, which this Court granted, ECF No. 146. Then, in February 2024, Count 16—the wire-fraud count—was severed from the original tax charges, and scheduled for a jury trial beginning April 23, 2024. ECF No. 148. The original tax charges are scheduled for a jury trial in July 2024. *Id.*

In advance of trial, both Parties filed motions *in Limine*, ECF Nos. 149; 151, and Defendant filed a renewed motion to dismiss Count 16, ECF No. 150. This Court will first address the Parties' motions *in limine* and then Defendant's renewed motion to dismiss.

II.

A motion *in limine* is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). A motion *in limine* "narrow[s] the issues remaining for trial and . . . minimize[s] disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999). In disposing a motion *in limine*, the guiding principle is to "ensure evenhanded and expeditious management of trials." *Ind. Ins. Co. v. GE*, 326 F. Supp. 2d 844, 846 (N.D. Ohio, 2004).

Motions *in limine* should be granted only when the challenged evidence is determined to be clearly inadmissible on all potential grounds. *Id.* When a court is unable to determine whether certain evidence is clearly inadmissible, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice can be resolved in the proper context. *Id.* A court's ruling on a pretrial motion *in limine* may be changed "at any point prior to or during the trial, as 'facts may . . . come to the district court's attention which it did not anticipate at the time of its initial ruling.'" *United States v. Householder*, No. 1:20-CR-77, 2022 WL 17600159, at *1 (S.D. Ohio Dec. 13, 2022) (quoting *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994)). Whether to grant a motion *in limine* falls within the sound discretion of the trial court. *Branham v. Thomas Cooley Law School*, 689 F.3d 558, 560 (6th Cir. 2012).

The Government's Motion *in Limine* seeks to exclude any arguments or evidence that the Government was "negligent" in failing to investigate Defendant's criminal history. ECF No. 149. And Defendant's Motion *in Limine* seeks to exclude any evidence relating to *how* he spent the loan proceeds. ECF No. 151. Each will be discussed below.

A.

The Government's Motion *in Limine* seeks to prohibit Defendant "from introducing

- 6 -

evidence or making argument of the Government's alleged failure to identify the defendant's felony indictment." ECF No. 149 at PageID.2597. Defendant responds that he does "not object" to the Government's Motion *in Limine* but notes "he may attempt to introduce evidence that *he believed* the Government would identify incorrect publicly available information in a PPP loan application." ECF No. 153 at PageID.2661 (emphasis added). The Government did not reply.

Because the Parties agree that "evidence and argument concerning what the Government should have done to prohibit", Defendant's alleged fraud should be excluded at trial, ECF No. 149 at PageID.2598; *see also* ECF No. 153, the Government's Motion *in Limine* will be granted.

**B.**

Defendant's Motion *in Limine* seeks to exclude any "evidence regarding how Defendant used the funds obtained from the PPP loan." ECF No. 151 at PageID.2628. The Government opposes Defendant's Motion and argues that evidence regarding the use of the loan proceeds is relevant to the elements of wire fraud. ECF No. 152 at PageID.2634–36.

In order to find a defendant guilty of wire fraud, a jury "must find that the government has proved each and every one" of four elements "beyond a reasonable doubt." 6th Cir. Pattern Jury Instructions, 10.2(1). Those four elements are:

> (A) First, that the defendant [knowingly participated in] [devised] [intended to devise] a scheme to defraud in order to deprive another of money or property, that is [*describe scheme from indictment*];
>
> (B) Second, that the scheme included a material misrepresentation or concealment of a material fact;
>
> (C) Third, that the defendant had the intent to defraud; and
>
> (D) Fourth, that the defendant [used wire, radio or television communications] [caused another to use wire, radio or television communications] in interstate [foreign] commerce in furtherance of the scheme.

*Id.*

The Government argues that evidence regarding Defendant's use of PPP loan funds is relevant to show that Defendant "devised or willfully participated in a scheme to defraud, the scheme's materiality, and that he intended to deprive the United States of money or property." ECF No. 152 at PageID.2640. Specifically, the Government asserts it intends to introduce evidence at trial showing that the PPP loan funds were used to pay for the construction costs of Plaintiff's businesses, instead of eligible approved expenses, thus tending to show Defendant devised a "scheme" to wrongfully obtain and use the loan proceeds. *Id.* Indeed, it appears evidence of *how* Defendant spent the relevant PPP loan proceeds is relevant to establishing at least the first and third elements of wire fraud: that the defendant devised a *scheme* to defraud the Government and that he had the *intent* to defraud the Government to obtain loan proceeds to use them for a particular purpose. Accordingly, Defendant's Motion *in Limine*, ECF No. 151, will be denied.

### III.

Defendant also filed a renewed motion to dismiss Count 16, arguing Count 16 should be dismissed for two specific reasons. *See generally* ECF No. 150. First, because he alleges the Grand Jury was prejudiced against him because it heard evidence regarding Counts 15 and 17, which have since been dismissed. *Id.* at PageID.2607. And second, because the misrepresentation was not material, as he would have been eligible to receive the PPP loan even if he had disclosed that he was subject to an indictment. *Id.* Each argument will be addressed below.

### A.

Defendant first asserts the Grand Jury was "prejudiced" against him when hearing evidence about Count 16 because it also heard evidence about the since-dismissed Counts 15 and 17 at the same time. ECF No. 150 at PageID.2610. Accordingly, he argues Count 16 should be dismissed and the Government should be "force[d]" to "reindict solely on Count 16." *Id.* at PageID.2605.

Alternatively, he requests an *in camera* review of the Grand Jury transcripts by this Court "to determine to what extent, if any, the facts surrounding Count 15 and County 17 were misrepresented or omitted to the Grand Jury," thus resulting in the Grand Jury's decision to indict on Count 16. *Id.* Defendant argues that if neither of these things occur, his Fifth Amendment rights will be violated. *Id.* The Government responds that the evidence Defendant alleges was prejudicial—the details of how the PPP loan funds were used—directly supports necessary elements of wire fraud for Count 16. ECF No. 156 at PageID.2698.

1.

The Supreme Court has "consistently . . . recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979). Accordingly, the "indispensable secrecy of grand jury proceedings must not be broken except where there is a compelling necessity," that is, a "particularized need." *U.S. v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958) (internal quotations and citation omitted). Criminal Rule 6 authorizes disclosure of grand jury materials to a defendant "who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." FED. R. CRIM. P. 6(e)(3)(E)(ii). But "[i]t is well settled that a defendant seeking disclosure of grand jury minutes has the burden of showing a 'particularized need' that outweighs the default 'need for secrecy' in grand jury deliberations." *Douglas Oil*, 441 U.S. at 228; *see also United States v. Forde*, 740 F.Supp.2d 406, 413 (S.D.N.Y. 2010).

"[A]s a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988). Prejudice means that the errors "substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from

the substantial influence of such violations." *Id.* at 256. Because of the established principle that grand jury indictments are presumed valid, a court "must exercise" "extreme caution in dismissing an indictment for alleged grand jury misconduct." *United States v. Overmyer*, 899 F.2d 457, 465 (6th Cir. 1990), citing *United States v. Jones*, 766 F.2d 994, 1001 (6th Cir.), *cert. denied*, 474 U.S. 1006 (1985).

**2.**

Defendant's first argument to dismiss Count 16 is similar to his argument to exclude evidence of how the PPP loan proceeds were used. *Compare* ECF No. 151 at PageID.2630–32 *with* ECF No. 150 at PageID.2610–16. Essentially, he argues that because the Grand Jury heard evidence about *how* the PPP loan proceeds were used in connection with the now-dismissed Counts 15 and 17, the Grand Jury was prejudiced against him. But, as discussed, evidence regarding *how* Defendant used PPP loan proceeds goes to elements of wire fraud specific to Count 16. *See supra* Section II.B.2. Indeed, the Government alleges that, on his PPP loan application, Defendant misrepresented that he was not subject to an indictment as part of an intentional scheme to obtain the PPP loan, use the proceeds to improve his businesses, and then have the loans forgiven. The details of *how* and *when* he used the funds are relevant to establish intent and overall scheme, both necessary elements of wire fraud. And to the extent Defendant argues that he *did* use equivalent funds to pay for covered expenses during the relevant time period, Defendant may present evidence at trial of *how* and *when* he used the PPP-loan funds in relation to covered expenses and other contractual obligations.

Defendant also briefly argues that the dismissal of Counts 15 and 17 "constructively amended or prejudicially varied the indictment by eliminating those counts." ECT No. 157 at PageID.2741. But a constructive amendment occurs where the "terms of an indictment" are so

altered "by the presentation of evidence and jury instructions" that "there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment." *United States v. Mize*, 814 F.3d 401, 409 (6th Cir. 2016) (citing *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005)). And a "variance"—which is "not per se prejudicial," *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007)—"occurs when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *United States v. Kuehne*, 547 F.3d 667, 683 (6th Cir. 2008). Such a variance only requires reversal when a defendant proves that the variance "affected a substantial right of the defendant." *Id.* Here, the superseding indictment was not amended to the point that Defendant may be convicted of an offense other than Count 16 as charged in the superseding indictment. Nor is the evidence at trial expected to prove facts "materially different from those alleged in the indictment." *Id.* Accordingly, the indictment has not been constructively amended or prejudicially varied such that dismissal is warranted.

In sum, there "is no objective basis to believe that the grand jury was improperly instructed regarding the Government's burden of proof in this case" regarding Count 16. *United States v. Rattini*, No. 1:19-CR-81, 2021 WL 1105360, at *4 (S.D. Ohio Mar. 23, 2021). So, this Court will not conduct *in camera* review of the Grand Jury proceeding and will not dismiss Count 16.

B.

Defendant next argues that Count 16 should be dismissed because "he was still entitled to an SBA guaranteed PPP loan under the CARES Act," regardless of whether he disclosed he was subject to an indictment. ECF No. 150 at PageID.2623. At its core, this argument asserts the misrepresentation was not material to his receipt of the loan. *See id.* at PageID.2626 ("[T]he answer to the question was immaterial as it ultimately could not influence the decisionmaking body.");

*see also* 6th Cir. Pattern Jury Instructions, 10.02(2)(D) ("a misrepresentation or concealment is 'material' if it has a natural tendency to influence or is capable of influencing the decision of a person of ordinary prudence and comprehension."). On the one hand, Defendant argues his misrepresentation was not *material* because he would have received the loan regardless of how he answered the question, citing *DV Diamond Club of Flit, LLC v. United States Small Business Association*.[4] ECF No. 150 at PageID.2624. But, on the other hand, the indictment alleges that the misrepresentation was material. *See* ECF No. 118 at PageID.2140. And, in response to Defendant's Motion, the Government cites the July 2021 SBA website, which represented that PPP loans would be denied to applicant businesses if someone who owned 20% or more of the business was indicted for a felony, which suggests that the misrepresentation *was* material, as it *was* something the SBA considered in reviewing loan applications. ECF No. 156 at PageID.2704.

In sum, the Government has alleged materiality, but it is the Government's burden at trial to *prove* materiality. And it may attempt to do so through evidence at trial, just as Defendant may attempt to prove the *absence* of materiality through evidence at trial. A difference of opinion as to whether the proofs satisfy a required element of a crime is not grounds for dismissal where the indictment, ECF No. 118, *and* Bill of Particulars, ECF No. 154, sufficiently allege the misrepresentation was material. *See United States v. Coss*, 677 F.3d 278, 287 (6th Cir. 2012) (noting an indictment is sufficient if it (1) "contains the elements of the offense charged and fairly

---

[4] Importantly, *DV Diamond Club* challenged the SBA's determination that *particular types of businesses* were ineligible for PPP loans, contrary to the language of the CARES Act. *See DV Diamond Club of Flint, LLC v. Small Bus. Admin.*, 960 F.3d 743, 745 (6th Cir. 2020). And, as the Government points out, *see* ECF No. 156 at PageID.2705–06, regardless of what *types of business* were eligible for PPP loans, all loans by the SBA were still subject to a sound-value requirement "to assure repayment." 15 U.S.C. § 636(a)(6). And the "SBA considers bankruptcy and criminal history status for small business loans because loan applicant 'must be creditworthy.'" *Bros. Petroleum, LLC v. United States*, 569 F. Supp. 3d 405, 411 (E.D. La. 2021) (quoting 13 C.F.R. § 120.150).

- 13 -

informs the defendant of the charge against which he must defend," and (2) "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."). Therefore, Count 16 will not be dismissed on these grounds.

## IV.

Accordingly, it is **ORDERED** that the Government's Motion in Limine, ECF No. 149, is **GRANTED**.

Further, it is **ORDERED** that Defendant's Motion in Limine, ECF No. 151, is **DENIED**.

Further, it is **ORDERED** that Defendant's Renewed Motion to Dismiss, ECF No. 150, is **DENIED**.

Dated: April 2, 2024                    s/Thomas L. Ludington
                                        THOMAS L. LUDINGTON
                                        United States District Judge