UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

v.

DALE VERNON THRUSH,

               Defendant.

_____/

Case No. 1:20-cr-20365

Honorable Thomas L. Ludington
United States District Judge

**OPINION AND ORDER (1) DENYING WITHOUT PREJUDICE GOVERNMENT'S
MOTION IN LIMINE TO EXCLUDE DEFENDANT HEARSAY STATEMENTS; (2)
DENYING WITHOUT PREJUDICE GOVERNMENT'S SECOND MOTION IN LIMINE
TO EXCLUDE TESTIMONY OF FRANK DANDRON; (3) DENYING
GOVERNMENT'S MOTION IN LIMINE TO ADMIT CERTIFIED BUSINESS
RECORDS AND DOMESTIC PUBLIC RECORDS UNDER SEAL; AND (4) GRANTING
DEFENDANT'S MOTION IN LIMINE REGARDING PPP LOANS**

In August 2020, Defendant Dale Vernon Thrush was indicted on 10 counts of willful failure

to pay over payroll taxes, 26 U.S.C. § 7202, and four counts of willful failure to file a personal tax

return, 26 U.S.C. § 7203. ECF No. 1. Now—almost four years later—the case is nearing trial. The

Parties have filed numerous pretrial evidentiary motions. But, as explained below, many of these

motions will be denied without prejudice because, absent the context of trial, the admissibility of

certain categories of evidence is unclear.

**I.**

**A.**

According to the August 2020 Indictment, Defendant Dale Thrush owns several businesses

in Mount Pleasant and Lansing, Michigan, including 402 N. Mission St. LLC ("Mission"), Xtreme

Enterprises, Inc. ("Xtreme"), Verno All Tune, Inc. ("Verno"), and USAuto Repair, Inc. ("U.S.

Auto"). ECF No. 1 at PageID.1–2.

Defendant, as sole owner of the businesses, was the "responsible person" for collecting and paying over payroll taxes and was required to file a Form 1040 each year reporting his net profits and distributions from the businesses. *Id.* at PageID.6. But, according to the Indictment, Defendant failed to pay over $238,223 in payroll taxes collected at Mission between the second quarter of 2014 and the fourth quarter of 2016 and failed to file a personal income tax Form 1040 for calendar years 2013 through 2016. *Id.* at PageID.6–9. The Indictment further alleges that Defendant directed nearly $500,000 from Mission's payroll account to be spent on ordinary business expenses and certain construction costs incurred by his wife between April 2014 and October 2016. *Id.* at PageID.6.

In his defense, Defendant claims that from 2014 until late 2016, he delegated the bookkeeping at Mission, including all tax filings and payroll matters, to Donna Henke—a Mission employee. ECF No. 23 at PageID.104–05. Defendant also erroneously believed that Henke was acting as his personal tax preparer. *Id.* During this time, Defendant allegedly worked "off-site" and was rarely in Mission's office. *Id.* Defendant claims that he frequently asked Henke about the status of his business and personal taxes, and that Henke "always" told him "everything was being taken care of," *id.* at PageID.105, notwithstanding the fact that, apparently, tax returns were never presented to or signed by him.

In July 2016, Defendant hired a new bookkeeper, Sue Hastings. *Id.* at PageID.106. In a personal declaration, Hastings states that she assumed her duties as bookkeeper in August 2016 and soon discovered that Mission's bookkeeping, organized through the accounting software QuickBooks, was "very" incomplete and unreliable. ECF No. 23-2 at PageID.117. She learned that Mission had not made tax payments to the IRS in several quarters. *Id.* Hastings apparently tried to contact Henke about Mission's bookkeeping, but was unable to do so. *Id.* Ultimately,

Hastings claims that she and others spent "thousands of hours" between October 2016 and November 2019 reconstructing Mission's finances. *Id.* at PageID.118. Notably, it is not clear when Hastings informed Defendant about the status of the business's accounting records or the status of his tax affairs.

On June 22, 2017, Defendant was interviewed by an IRS Revenue Officer ("RO") attempting to collect unpaid taxes. ECF No. 20 at PageID.69. The RO told Defendant to file Form 1040s for 2013, 2014, and 2015 within six weeks, and offered to "work with [Defendant] to piece together his individual income taxes." *Id.* Defendant's taxes went unpaid during those six weeks and Defendant allegedly told the RO that he could not file the Form 1040s until his business filings were completed because all of his businesses were pass-through entities. ECF No. 20-1 at PageID.79.

On March 2, 2018, some nine months after his interview with the RO, Defendant was interviewed by IRS Special Agents who informed him that they were "investigating potential criminal violations" stemming from his unpaid taxes. ECF No. 20 at PageID.69.

According to IRS account transcripts, Defendant began making payments on his tax liability in October 2018. *Id.* Records also show that the IRS received Defendant's Form 1040s for 2013, 2014, and 2015 on January 9, 2020. *Id.* at PageID.70. Defendant claims that business finances were not corrected until November 2019. ECF No. 23 at PageID.106–07. He also claims to have sent a Form 1040 for 2016 but states that it must have been lost or unprocessed. *Id.* at PageID.104.

## B.

A jury trial began in November 2021. At trial, the Government asserted that "the evidence [would] show that for 10 quarters between April 2014 to December 2016, [Defendant], through

his company 402 North Mission Street, took out six figures worth of payroll taxes from his employees' paychecks but failed to pay them over to the IRS." ECF No. 102 at PageID.1533. The Government further asserted the evidence at trial would show that "[Defendant] invested large sums of money into [a development project] right around the time that he refused to pay over payroll taxes." *Id.* at PageID.1534. Defendant, on the other hand, asserted he "doesn't know anything about bookkeeping or taxes, and [] never did his own taxes," but hired "a good family friend" to be his bookkeeper. *Id.* at PageID.1537–38. And that bookkeeper, according to Defendant had "control" over the financial part of his business and was responsible for paying the business's payroll taxes and Defendant's personal income tax returns. *Id.*

This court declared mistrial four days into trial because the Government's most material witness and the undersigned's spouse both tested positive for COVID-19,[1] and the jury could not accommodate a two-week adjournment. ECF Nos. 60; 61.

Defendant filed a motion to dismiss on double-jeopardy grounds, ECF No. 64, which was denied, *see United States v. Thrush*, No. 1:20-CR-20365, 2022 WL 2373351, at *4 (E.D. Mich. June 30, 2022). He appealed, ECF No. 97, and the case was stayed pending that decision, ECF No. 100. On July 17, 2023, the Sixth Circuit affirmed this Court's decision, holding that, under the circumstances, "an adjournment was proper and not an abuse of discretion," though the panel was not unanimous. *United States v. Thrush*, No. 22-1588, 2023 WL 4564769, at *6 (6th Cir. July 17, 2023) (per curium).

A superseding indictment was filed on July 26, 2023, which alleged the same tax counts as the first indictment, *compare* ECF No. 1 *with* ECF No. 118. It also added three wire-fraud counts

---

[1] Administrative Orders in effect at that time prohibited court staff who had close contact with people who tested positive for COVID-19 from returning to the Court without waiting 10 days and presenting a negative COVID-19 test to the court administrator.

against Defendant, two of which the Government voluntarily dismissed in December 2023, *see* ECF No. 142; 146, and the last of which was severed from these tax counts in February 2024, ECF No. 148.

The retrial for the tax charges against Defendant is scheduled to begin on August 8, 2024. *See* ECF No. 168. Several motions *in limine* must be addressed before trial. *See* ECF Nos. 53; 80; 198; 202 (sealed); 204.

## II.

"A 'motion *in limine*' is any motion 'to exclude anticipated prejudicial evidence before the evidence is actually offered.'" *Good v. BioLife Plasma Servs., L.P.*, No. 1:18-CV-11260, 2022 WL 1837071, at *2 (E.D. Mich. June 3, 2022) (quoting *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013)). Motions in *limine* are designed "to narrow the issues remaining" and "minimize disruptions," *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir.1999), and help ensure "evenhanded and expeditious management of trials." *United States v. Phillips*, 146 F. Supp. 3d 837, 841 (E.D. Mich. 2015), *aff'd in part*, 677 F. App'x 294 (6th Cir. 2017) (internal citations omitted). Indeed, "the Supreme Court has authorized district courts to rule on motions *in limine* 'pursuant to the district court's inherent authority to manage the course of trials.'" *Id.* (citing *Luce*, 469 U.S. at 41 n. 4).

A district court should grant a motion *in limine* to exclude evidence "only when [that] evidence is clearly inadmissible on all potential grounds." *Id.* (quoting *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844 (N.D. Ohio 2004)). "In cases where that high standard is not met, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Id.* (internal citations omitted); *see also Good v. BioLife Plasma Servs.*, L.P., 605 F. Supp. 3d 947, 955 (E.D. Mich.), *reconsideration*

*denied*, 647 F. Supp. 3d 555 (E.D. Mich. 2022); *Figgins v. Advance Am. Cash Advance Centers of Michigan, Inc.*, 482 F. Supp. 3d 861, 865 (E.D. Mich. 2007) ("It may be desirable in many cases to defer ruling . . . until trial[.]").

Importantly, the denial of a motion *in limine* seeking to exclude evidence "does not necessarily mean that the court will admit the evidence at trial." *United States v. Phillips*, 146 F. Supp. 3d 837, 841 (E.D. Mich. 2015), *aff'd in part*, 677 F. App'x 294 (6th Cir. 2017). Instead, "[d]enial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

### III.

The Parties, collectively, filed five motions *in limine* related to Counts 1–14. *See* ECF Nos. 53; 80; 198; 202 (sealed); 204. Four of these motions will be addressed below.[2]

### A. The Government's Motion *in Limine* to Exclude Certain Hearsay Statements

On November 4, 2021—the first day of trial—the Government filed a motion *in limine* broadly seeking to "prohibit[] defense counsel from eliciting testimony from witnesses recounting inadmissible, and potentially exculpatory, hearsay statements made by Defendant." ECF No. 53 at PageID.465. The Motion is less than two pages in length and argues that a party statement is only admissible as nonhearsay if it is offered *against* the party who made the statement. *Id.* at PageID.466. It appears the Government filed this Motion to exclude Defense Counsel from eliciting testimony from IRS agents about what Defendant said to them.

The Government is correct that an out-of-court statement by a party—here, Defendant—is usually hearsay, unless it is offered *against* that party. *See* Fed. R. Evid. 801(d)(2). "When offered

---

[2] The Governments July 25, 2024 sealed motion *in limine*, ECF No. 202 (sealed), will be addressed in a separate, sealed, Opinion and Order.

by the Defendant, [however], such statements are classic, self-serving inadmissible hearsay." *United States v. Bravata*, No. 11-CR-20314, 2013 WL 692955, at *1 (E.D. Mich. Feb. 26, 2013); *see also Stalbosky v. Belew*, 205 F.3d 890, 894 (6th Cir. 2000) ("Under Rule 801(d)(2)(A), a party's statement is admissible as non-herasay only if it is offered against that party."); *United States v. Georges*, No. 2:20-CR-157 (2), 2021 WL 4191223, at *4 (S.D. Ohio Sept. 15, 2021) (granting Government's motion "to preclude the [d]efendant from introducing her own out-of-court statements offered for the truth of the matter asserted through any witness.").

But the Government's Motion will be denied without prejudice at this juncture because, depending on the context at trial, there may be circumstances under which such testimony about what Defendant said to witnesses—presumably IRS agents—*could* be admissible on other grounds, namely other hearsay exceptions. *See United States v. Bravata*, No. 11-CR-20314, 2013 WL 692955, at *2 (E.D. Mich. Feb. 26, 2013) (recognizing such hearsay statements may be admissible for "other non-hearsay purposes."). However, this Court will note that, as a general matter, any witness testimony about what Defendant said to that witness offered to bolster Defendant's theory of the case is inadmissible hearsay.

### B. The Government's Motion *in Limine* to Exclude Frank Dandron's Testimony

In February 2022, while Defendant's motion to dismiss on double-jeopardy grounds was pending before this Court, *See* ECF No. 64, the Government filed a motion *in limine* in anticipation of trial to "exclude the anticipated testimony of witness Frank Dandron," ECF No. 80 at PageID.1255, who employed Donna Henke "as an accountant in the mid-2000's," *id.* at PageID.1257. The Government expects Defendant to call Dandron as a witness to testify that Henke "did not keep up with his books and records in a proper manner" and that he terminated Henke because—although she filed his business's state sales-tax returns every month—she

"continuously failed to pay the taxes every month even though she was in charge of the payment of those taxes." *Id.*

The Government argues any such testimony should be excluded "because it presents impermissible Rule 404(b) propensity evidence and 608(b) extrinsic evidence, and its probative value is outweighed by its danger of unfair prejudice and confusion of the issues." *Id.* at PageID.1255. Defendant responds that Dandron's testimony serves two non-propensity purposes: (1) evidence of Henke's habit or routine, admissible under Rule 406, ECF No. 87 at PageID.1386–89; and (2) evidence that will impeach *Henke's* anticipated testimony that she was a generally good bookkeeper. *Id.* at PageID.1390–92. Defendant additionally argues that the probative value of Dandron's expected testimony is not outweighed by unfair prejudice or confusion of the issues. *Id.* at PageID.1392–94.

The evidence the Government seeks to exclude from trial is "what the Sixth Circuit has dubbed 'reverse 404(b) evidence.'" *United States v. Griffin*, No. 1:22-CR-10044-STA-1, 2023 WL 6544914, at *3 (W.D. Tenn. Oct. 6, 2023) (quoting *United States v. Daneshvar*, 925 F.3d 766, 779 (6th Cir. 2019)). Reverse 404(b) evidence is "evidence of a prior act by another [that] is offered as exculpatory evidence by the defendant, instead of being used by a prosecutor against a defendant." *Lucas*, 357 F.3d at 605 (citing *United States v. Hill*, 322 F.3d 301, 308 (4th Cir. 2003)).

Federal Rule of Evidence 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove *a person's* character in order to show that on a particular occasion *the person* acted in accordance with the character." Fed. R. Evid. 404(b) (emphasis added). But "other-acts evidence *can* be admitted for different purposes—such as to prove a defendant's 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *United States v. Lester*, 98 F.4th 768, 776 (6th Cir. 2024) (quoting FED. R. EVID.

404(b)(2)). Importantly, in the Sixth Circuit,[3] this prohibition on other-acts evidence applies broadly to *all* people, regardless of whether they are a party to the case. *United States v. Lucas*, 357 F.3d 599, 605 (6th Cir. 2004); *see also United States v. Daneshvar*, 925 F.3d 766, 779 (6th Cir. 2019) (recognizing that, in the Sixth Circuit, reverse 404(b) evidence is inadmissible); *United States v. Ekiyor*, 89 F. Supp. 3d 928, 933–34 (E.D. Mich. 2015) ("Under the rule adopted by the Sixth Circuit, . . . reverse 404(b) evidence of other acts by a third party is inadmissible if it is offered only to support a propensity inference—that is, to suggest that it is more likely that the third party conducted himself on another occasion in accordance with the character evidenced by the other act.").

At issue here is evidence that Henke, in a previous bookkeeping role, told her employer she had paid taxes when she had not. *See* ECF No. 80. Defendant argues this is admissible evidence of habit under Rule 406. Not so. Under Rule 406, "[e]vidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." FED. R. EVID. 406. But "before a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." *Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 549 (6th Cir. 2003) (quoting *Simplex, Inc. v. Diversified Energy Systems*, 847

---

[3] Notably, "[o]ther circuits have adopted a more lenient standard for determining whether a defendant should be permitted to introduce reverse 404(b) evidence, noting that 'the principal policy consideration underlying Rule 404(b)'s exclusionary rule is to protect the parties in an action, and in particular, criminal defendants, from the danger of unfair prejudice,' and reasoning that this danger 'does not exist' where 'the *defendant* offers evidence of other crimes or bad acts of a third party exculpatorily.'" *United States v. Ekiyor*, 89 F. Supp. 3d 928, 933–34 (E.D. Mich. 2015) (quoting *United States v. Lucas,* 357 F.3d 599, 612–14 (Rosen, D.J., concurring) (6th Cir. 2004) (surveying the standards applied by other circuits in determining the admissibility of reverse 404(b) evidence, and advocating that the more lenient standard should be adopted in this Circuit (emphasis in original).

F.2d 1293 (7th Cir. 1988)). Defendant has not met that burden. Indeed, Dandron's testimony touches on only *one instance* of Henke's earlier behavior, which does not suggest the kind of semi-automatic behavior Rule 406 contemplates. At bottom, this Court cannot identify *any* admissible non-propensity purpose behind Dandron's expected testimony, which ultimately suggests that—*because* Henke lied to an employer before about paying taxes—*then* she probably lied to Defendant about paying taxes.

However, Defendants non-propensity impeachment argument is well-taken. Although the Government asserts "no statement [Henke] is expected to make about her employment under defendant is susceptible to impeachment by contradiction through Dandron," the exact testimony of Henke is not yet known, so this Court cannot assess whether Dandron's testimony would serve an admissible, non-propensity, impeachment purpose. Accordingly, although Dandron's testimony is squarely *not* evidence of habit under Rule 406, the Government's Motion *in Limine* will be denied without prejudice. The Government is free to object at trial to the extent it feels Dandron's testimony is being used for inadmissible propensity purposes rather than admissible impeachment purposes.

### C. Parties' Motions *in Limine* Seeking to Admit Records

On July 16, 2024, the Government filed a motion in *limine* seeking pretrial permission to admit certain certified business records and domestic public records. ECF No. 198. These proposed exhibits are split into two lists by the Government: Attachment A, ECF No. 198-1, and Attachment B, ECF No. 198-2.

### 1. PPP Loan Records

Attachment A appears to contain financial records—including PPP loan transactions—relating to Defendant and his businesses from 2020 and 2021 but unrelated to the underlying

charges in Counts 1–14. *See* ECF No. 198-1. Indeed, after Defendant pointed this out, *see* ECF No. 200 at PageID.3318–21, the Government responded by clarifying that it "does not intend to introduce [those records] during its case-in-chief, unless cross-examination by Defendant makes them relevant." ECF No. 203 at PageID.3377 (internal citations omitted). The next day, Defendant field a separate motion *in limine*, seeking to exclude as irrelevant any evidence relating to the PPP loans he received in 2021. ECF No. 204.

Evidence relating to the PPP loans Defendant received—and the Government forgave—in 2021 is irrelevant to Defendant's alleged criminal at trial, which relates specifically to payroll and income taxes between 2014 and 2018. As this Court noted when it severed Count 16 from Counts 1–14, there is no relationship between the underlying activities. *See* ECF No. 148 at PageID.2595 (finding severance appropriate because "Defendant's alleged wire fraud count did *not* occur during the same time period that the alleged tax evasion occurred[,] [a]nd no overlapping financial evidence is necessary[.]"). Accordingly, Defendant's Motion *in Limine* to exclude any evidence of Defendant's PPP loans will granted, and any such evidence will be excluded at trial as irrelevant. To that end, the Government's Motion seeking to admit Defendant's financial records from 2020 and 2021 related to the PPP loans, *see* ECF No. 198-1, will be denied *with prejudice*.

### 2. IRS Records

Attachment B appears to contain IRS records relating to Defendant's taxes for years 2015 through 2018. *See* ECF No. 198-2. As Defendant notes, many of these proposed exhibits are the same exhibits the Parties previously agreed were admissible at the initial trial in November 2021. ECF No. 200 at PageID.3322; *see also* ECF No. 48 (stipulating to the admissibility of domestic public records). However, the Government's Attachment B includes eleven proposed exhibits that were not subject to the November 2021 stipulation. *See* ECF No. 198-2. Defendant objects to these

new exhibits "for authenticity reasons" because "there are no certifications." ECF No. 200 at

PageID.3323. The Government responds that it will only attempt to introduce these exhibits at trial

if "an IRS witness [first] certifie[s] them as authentic and place[s] a sealed cover letter on them."

ECF No. 203 at PageID.3378. With proper certification, it appears these exhibits would be relevant

and admissible. But issues of authentication and foundation are best left for trial, especially where,

as here, authenticity will likely depend on live testimony. *See Roche Diagnostics Corp. v. Shaya*,

No. 19-10264, 2023 WL 4198866, at *4 (E.D. Mich. June 27, 2023) (finding motions *in limine*

regarding proposed trial exhibits premature before trial). Accordingly, the Government's Motion,

ECF No. 198, will be denied *without prejudice* to the extent it seeks a pretrial ruling on the

admissibility of certain evidence that requires authentication at trial.

In sum, the Government's Motion in *Limine*, ECF No. 198, will be denied *with prejudice*

to the extent it seeks to admit Defendant's business and financial records from 2020 and 2021

which relate to PPP loans. And it will be denied *without prejudice* to the extent it seeks a pretrial

ruling regarding the admissibility of the IRS records detailed in Attachment B. However, this Court

notes that the Parties have already stipulated to the admissibility of all but 11 of these documents,

and it appears the 11 new documents will likely be admissible provided the Government lays the

foundation and authenticates them at trial.

## IV.

Accordingly, it is **ORDERED** that the Government's Motion *in Limine* to Exclude

Defendant Hearsay Statements Elicited by Defense Counsel, ECF No. 53, is **DENIED**

**WITHOUT PREJUDICE**.

Further, it is **ORDERED** that the Government's Second Motion *in Limine* to Exclude

Testimony of Frank Dandron in Defendant's Case-in-Chief, ECF No. 80, is **DENIED WITHOUT**

PREJUDICE.

Further, it is **ORDERED** that the Defendant's Motion *in Limine* Regarding PPP Loans, ECF No. 204, is **GRANTED** to the extent any evidence regarding PPP loans and loan forgiveness transactions related to Count 16 will be **EXCLUDED** from evidence.

Further, it is **ORDERED** that the Government's Motion *in Limine* to Admit Certified Business Records and Domestic Public Records Under Seal, ECF No. 198, is **DENIED WITH PREJUDICE IN PART** to the extent it seeks to establish the admissibility of Exhibit A, ECF No. 198-1.

Further it is **ORDERED** that the Government's Motion *in Limine* to Admit Certified Business Records and Domestic Public Records Under Seal, ECF No. 198, is **DENIED WITHOUT PREJUDICE IN PART** to the extent it seeks to establish the admissibility of Exhibit B, ECF No. 198-2.

**This is not a final order and does not close the above-captioned case.**

Dated: July 31, 2024

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

- 13 -