UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                          Case No. 1:20-cr-20365

v.                                                Honorable Thomas L. Ludington
                                                         United States District Judge

DALE VERNON THRUSH,

        Defendant.
_____/

**OPINION AND ORDER (1) DENYING DEFENDANT'S MOTION TO DISMISS COUNT 16, (2) DENYING GOVERNMENT'S MOTION FOR RECONSIDERATION, (3) DENYING AS MOOT FIVE MOTIONS *IN LIMINE*, (4) SETTING TRIAL SCHEDULE; AND (5) EXCLUDING DELAY**

        In August 2020, Defendant Dale Vernon Thrush was indicted on ten counts of willful failure to pay payroll taxes, in violation of 26 U.S.C. § 7202, and four counts of willful failure to file a personal tax return, in violation of 26 U.S.C. § 7203. The case proceeded to trial in November 2021, but was declared a mistrial after the Government's most material witness tested positive for COVID-19, and—under administrative orders in effect at that time—could not enter the building to testify for two weeks, an adjournment the jury could not accommodate.

        In July 2023, the Government filed a superseding indictment adding—in addition to the 14 tax charges—added three counts of wire fraud, in violation of 18 U.S.C. § 1343. After the Government was directed to file a bill of particulars addressing the new wire fraud charges, the Government dismissed two of those counts. Thus, only one wire-fraud count remains: Count 16, which was severed from the tax charges in February 2024.

        A jury trial on Count 16 was scheduled to begin trial in July 2024. But shortly before trial, Defendant filed a Motion to Dismiss the wire-fraud charge, arguing there is insufficient evidence

to prove the Government's theory of Defendant's scheme to defraud under the wire-fraud statute. But, as explained below, Count 16 will not be dismissed on the Government's narrower theory of Defendant's alleged scheme, and a new scheduling order will be issued.

## I.

In July 2023, the Government charged Defendant with three wire-fraud charges related to Defendant's applications for pandemic-relief loans and subsequent loan forgiveness.[1] *See* ECF No. 118 at PageID.2138–42. The Superseding Indictment alleged that Defendant "knowingly devised a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and material omissions" transmitted by wire communication. ECF No. 118 at PageID.2138. Specifically, it alleged Defendant filed an application for a Paycheck Protection Program[2] (PPP) loan in February 2021 "with materially false and fraudulent representations" and that in July 2021 and September 2021 he filed "PPP loan forgiveness applications with materially false and fraudulent representations about the use of the PPP loan funds and . . . Mission's entitlement to PPP loan forgiveness." *Id.* at 2139. Further, the

---

[1] Defendant was also indicted on ten counts of willful failure to pay payroll taxes, in violation of 26 U.S.C. § 7202, and four counts of willful failure to file a personal tax return, in violation of 26 U.S.C. § 7203. *See* ECF No. 118. However, these 14 counts were severed from the wire-fraud count in February 2024, and thus will not be addressed in this Opinion. *See* ECF No. 148. Notably, the trial for the 14 tax counts is scheduled to begin on September 24, 2024.

[2] In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act, which—among other things—authorized the "single largest element of U.S. Pandemic relief[:]" The Paycheck Protection Program (PPP). Susan C. Morse, *Emergency Money: Lessons from the Paycheck Protection Program*, 55 U. MICH. J.L. REFORM 175, 176 (2021); *see also* Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 1102(a), 134 Stat. 281, 286-93 (2020) (codified at 15 U.S.C. § 636(a)(36)) (establishing the PPP). The PPP was administered by the U.S. Small Business Administration (SBA) and entailed the following: an eligible small business could apply for a PPP loan through a bank authorized to process PPP loan applications. PPP loans were backed by the SBA and required no collateral or guarantee. *See* 15 U.S.C. § 636(a)(36)(J). If approved, PPP loan-borrowers were authorized to use PPP funds for employee compensation, payroll costs, continuing group healthcare benefits, interest payments on any mortgage obligation, rent, utilities, and interest on any debt obligations incurred before the covered period. *See* 15 U.S.C. 636(a)(36)(F)(i).

Indictment alleged Defendant engaged in a "scheme to defraud" and "unjustly enrich himself," by using "PPP loan proceeds and subsequent loan forgiveness" impermissibly for "personal investment account expenses, capital expansion projects, and payment of part of [his] delinquent payroll tax liability underlying Counts [1–10]." *Id.* Notably, the PPP loan application warned that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" and cited three federal statutes under which the Government could pursue charges: (1) § 18 U.S.C. 1001 and 3571 (contemplating imprisonment of not more than *five* years and/or a fine of up to $250,000); (2) 15 U.S.C. § 645 (contemplating imprisonment of not more than *two* years and/or a fine of not more than $5,000); and (3) 18 U.S.C. § 1014 (contemplating imprisonment of not more than *30* years and/or a fine of not more than $1,000,000.00 for false statements made "for the purpose of influencing in any way the action of the . . . Small Business Administration in connection with any provision of that Act"). ECF No. 124-4 at PageID.2214. Yet the Government here decided to charge Defendant for violating another law, alleging his violation of the wire fraud statue, 18 U.S.C. § 1343 (contemplating imprisonment of not more than 20 years). *See* ECF No. 118.

In November 2023, the Government was directed to file a bill of particulars regarding Counts 15 and 17, which alleged that Defendant falsely stated that he used the PPP loan proceeds in accordance with the PPP regulations in loan-forgiveness applications in July and September 2021. ECF No. 134. The Government filed its bill of particulars, ECF No. 135, but then filed a motion to dismiss Counts 15 and 17 four weeks later, ECF No. 142, which this Court granted, ECF No. 146. Thus, only Count 16—which alleged Defendant falsely represented he was *not* subject to an indictment in a February 2021 application for a PPP loan—remained. *See* ECF No. 118 at PageID.2141.

On March 18, 2024, the Government filed a bill of particulars outlining the "[a]cts [r]elated to Count 16." ECF No. 154 at PageID.2664. The Government asserted that "transactions relevant to Counts 15 and 17"—counts the Government itself had voluntarily dismissed—were "also relevant to show the wire fraud scheme charged in Count 16." *Id.* at PageID.2663–64. According to the Government, proofs relating to whether Defendant used the PPP loan proceeds according to PPP regulations were relevant to prove the second part of the alleged two-part scheme: that Defendant submitted "two PPP loan forgiveness applications with materially false and fraudulent representations about the use of the PPP loan funds and 402 N[.] Mission's entitlement to PPP loan forgiveness." *Id.* at PageID.2664; *see also* ECF No. 118.

In the weeks before trial, both Parties indicated they would be calling expert witnesses to testify about the relevant PPP loan regulations, and whether Defendant's alleged conduct complied with these regulations. *See* ECF Nos. 169; 171. Importantly, the Government's expert asserted she would testify that money received from PPP loans was not "fungible," ECF No. 170 at PageID.2853, and that "the PPP program criteria required that the loan recipient must spend the *specific proceeds* on the allowable uses an enumerated under the program guidelines," *id.* at PageID.2855 (emphasis added). But Defendant's expert asserted he would testify that PPP loan proceeds could be comingled with the borrower's other accounts, so that the *specific loan proceeds* were not required to be used to PPP-approved expenses, and that a borrower complied with PPP regulations so long as *any* of its funds from the borrower's business were in fact used to pay for PPP-approved expenses. *See* ECF No. 171 at PageID.2878–80. After reviewing each expert's anticipated testimony, it was "clear that the Parties [were] attempting to advance two very different—and incompatible—interpretations of the CARES Act and relevant PPP loan regulations." ECF No. 172 at PageID.2884. And although any such expert testimony about what

the law is would be excluded at trial, this Court directed supplemental briefing to resolve the legal dispute in order to "accurately instruct the jury about *what the law is*" regarding permissible uses of PPP loan proceeds. *Id.*

The Parties submitted supplemental briefs on the issue, and—importantly—neither brief "contain[ed] *any* legal authority supporting the Government's contention" that "loan proceeds were *not* fungible and that funds could not be comingled with other funds of the borrower." ECF No. 186 at PageID.3089 (emphasis in original). Accordingly, on June 21, 2024, this Court determined the jury instructions would be modified to reflect that legal conclusion. *Id.* So, the following instruction was added:

> There was no PPP Rule or other law prohibiting the comingling of PPP loan proceeds with other borrower funds. To that end, PPP loan proceeds were fungible, meaning they were interchangeable with other funds of the borrower.

*Id.* Additionally, this Court determined that "[i]n accordance with the instructions . . . evidence of 402's payments for PPP-approved expenses during the covered periods up to $231,060.00 will be admissible at trial. Conversely, any evidence of payments or expenditures for *non* PPP-approved expenses will be excluded at trial, because such evidence is irrelevant." *Id.* (citing FED. R. EVID. 402). Indeed, what the Government would be required to prove at trial to prove Defendant misrepresented his entitlement to PPP loan forgiveness is that "Defendant *did not* pay $231,060.00 in PPP-approved expenses during the covered periods like he represented he did in his PPP loan-forgiveness applications." *Id.* at PageID.3090.

Four days later, the Parties appeared for a final pretrial conference. *See* ECF No. 185. Importantly, at this conference, the Government acknowledged that the accounting reflected that Defendant paid $231,060.00 worth of PPP-approved expenses during the relevant covered periods, and Defendant stated he would be filing a motion to dismiss Count 16, so the trial was adjourned.

The next day, Defendant filed a motion to dismiss Count 16. ECF No. 192. The Government responded that Count 16 should not be dismissed because it was electing to narrow its theory of the case in light of this Court's June 21, 2024 order and that it would exclude any allegations of misuse of PPP-loan proceeds from its case. ECF No. 196. As explained below, Count 16 will not be dismissed under the Government's narrower theory of the case, and the remaining evidentiary motions related to Count 16 will be addressed.

## II. Defendant's Motion to Dismiss Count 16

### A.

A motion to dismiss an indictment for failure to state an offense may only be granted if the conduct alleged in the indictment does not address every element of the charged offense. FED. R. CRIM. P. 12(b)(3)(B)(v); *United States v. Maddux*, 917 F.3d 437, 443 (6th Cir. 2019). Conversely, an indictment is sufficient if it lays out the elements of the charged offense and "fairly informs a defendant of the charge against which he must defend." *Hamling v. United States*, 418 U.S. 87, 117 (1974). When reviewing the indictment, the court must accept factual allegations as true and must "determine only whether the indictment is valid on its face." *United States v. Reed*, 77 F.3d 139, 140 n.1 (6th Cir. 1996); *United States v. Hann*, 574 F. Supp. 2d 827, 830 (M.D. Tenn. 2008) (internal quotations omitted). Thus, a Rule 12(b)(3)(B)(v) motion must only raise questions of law. *United States v. Ali*, 557 F.3d 715, 719 (6th Cir. 2009).

### B.

Count 16 charges Defendant with wire fraud in violation of 18 U.S.C. § 1343. ECF No. 118. The wire fraud statute states, in relevant part, that:

> Whoever, having devised . . . any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, [or] representations . . . transmits or causes to be transmitted by means of wire . . . in interstate or foreign commerce, any writings . . . for the purpose of executing such scheme or artifice,

shall be . . . imprisoned not more than 20 years.

18 U.S.C. § 1343. "Breaking this language down to its central components, [in order to convict someone of wire fraud,] the [G]overnment must prove: '(1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property.'" *United States v. Robinson*, 99 F.4th 344, 354 (6th Cir. 2024) (quoting *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003)). "[A]s an element of the 'scheme or artifice to defraud' requirement, the Government must prove that the defendant said something materially false." *Daniel*, 329 F.3d at 486 (emphasis omitted) (citing *Neder v. United States*, 527 U.S. 1, 24–25 (1999)).

Defendant argues Count 16 should be dismissed because "the alleged facts do not amount to a crime." ECF No. 192 at PageID.3255. Specifically, Defendant argues that "because the Government admits that Defendant *did* spen[d] the required amount of money on the eligible expenses, there is insufficient evidence to prove that Defendant made materially false and fraudulent representations about payment of eligible expenses." *Id.* at PageID.3256 (emphasis added). In a vacuum—as it relates to the allegations regarding the alleged materially false representations Defendant made in his July and September 2021 loan forgiveness applications— this Court agrees. But, as the Government points out, Defendant says nothing about the alleged materially false statement in Defendant's initial February 2021 PPP loan application. ECF No. 196 at PageID.3286–87; *see also* ECF No. 192.

And—importantly—the Government now states that it will only pursue the first half of the scheme alleged in the Superseding Indictment: "that Defendant's scheme to defraud involved obtaining a PPP loan that he was not eligible to receive, then seeking and securing forgiveness for that loan." ECF No. 196 at PageID.3288. Thus, the question, now narrowed, is whether the

Government has sufficiently stated a wire-fraud offense against Defendant *absent* the allegations that he misrepresented that he used the PPP loan funds in compliance with PPP regulations.³ That is, under the remaining facts alleged by the Government, whether the Government has sufficiently alleged that Defendant devised a scheme or artifice to defraud through interstate wire communications with the intent to obtain money or property. 18 U.S.C. § 1343. Neither Party disputes that interstate wire communications were used when Defendant submitted his PPP loan application, so the only questions are whether the Government has sufficiently alleged Defendant devised a scheme to defraud with the intent to obtain money or property.

### 1. Scheme to Defraud

"A scheme to defraud includes any plan or course of action by which someone intends to deprive another . . . by deception of money or property by means of false or fraudulent pretenses, representations, or promises." *Daniel*, 329 F.3d at 485–86 (quoting *United States v. Gold Unlimited, Inc.*, 117 F.3d 472, 479 (6th Cir. 1999)). "[A]s an element of the 'scheme or artifice to defraud' requirement, the government must prove that the defendant said something materially false."⁴ *Id.* at 486. Importantly, the existence of "a scheme to defraud is not dependent on what

---

³ On this point, Defendant argues that the Government abandoning its earlier theory of the scheme to defraud involving the improper uses of the PPP loan proceeds turns "a three-part scheme" into "something else," ECF No. 197 at PageID.3302, and raises Fifth Amendment concerns that the narrower scheme is "not the same scheme as presented to the grand jury and charged[,]" *id.* at PageID.3301 (emphasis in original). But "[a]s long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime." *United States v. Miller*, 471 U.S. 130, 136 (1985). Indeed, the Sixth Circuit has held that "only when the proof at trial *broadens* the scope of an alleged conspiracy or scheme beyond that charged in the indictment—unmitigated by jury instructions—does a[n impermissible] constructive amendment [to the indictment] result." *United States v. Sosa-Baladron*, 800 F. App'x 313, 320 (6th Cir. 2020) (citing *United States v. Mize*, 814 F.3d 401, 410–11 (6th Cir. 2016).
⁴ The Parties seemingly do not dispute the materiality of Defendant's alleged misrepresentation. Indeed, the PPP loan application stated that if Question 4—which asked whether the applicant was "presently subject to an indictment"—was "answered 'Yes,' the loan will not be approved." ECF

someone intends to do or has done with the money . . . acquired through the scheme. Instead, it is *the scheme itself*—the act of acquiring or attempting to acquire the funds through fraudulent means—that the [wire fraud] statute punishes." *Robinson*, 99 F.4th 344, 355 (6th Cir. 2024) (emphasis added) (citing *McNally v. United States*, 483 U.S. 350, 356 (1987)).

Here, removing all allegations by the Government that Defendant made materially false representations in loan-forgiveness applications about his use of the loan proceeds and entitlement to loan forgiveness, *see* ECF No. 196 at PageID.3288 (noting the Government will "proceed on the narrower theory" that Defendant's scheme was obtaining a PPP loan he was not eligible to receive, then seeking and securing forgiveness for that loan"), the Superseding Indictment sufficiently states a wire-fraud charge against Defendant. Indeed, the Superseding Indictment alleges that "on or about February 3, 2021," Defendant "made the materially false representation to BANK A that he, as the owner of 402 N. Mission, was not presently subject to an indictment." ECF No. 118 at PageID.2140. And the Superseding indictment alleges that Defendant carried out a scheme "to obtain moneys and funds by means of materially false and fraudulent pretenses, representations, promises, and omissions[.]" *Id.*

Through these allegations, the Government has provided Defendant sufficient notice of the "act" he allegedly engaged in "to acquire funds through fraudulent means:" a misrepresentation on a February 2021 PPP loan application to obtain money as a result of that misrepresentation. *United States v. Robinson*, 99 F.4th 344, 355 (6th Cir. 2024). That is sufficient to allege a scheme or artifice to defraud. *See United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003) (noting "a scheme to defraud" "includes any plan or course of action by which someone intends to deprive another . . . by deception[,] of money or property by means of false or fraudulent pretenses,

---

No. 124-4 at PageID.2212.

representations, or promises."). Whether a scheme *existed in fact* is a question for the jury. *United States v. Andrews*, 803 F.3d 823, 824 (6th Cir. 2015). At this juncture, the indictment sufficiently notifies Defendant as to what the specific, alleged illegal scheme was, such that he may prepare an adequate defense.

### 2. Intent to Obtain Money or Property

The next element of wire fraud involves specific intent. "To convict a defendant of wire fraud the government must prove specific intent, which means not only that a defendant must knowingly make a material misrepresentation or knowingly omit a material fact, but also that the misrepresentation or omission must have the purpose of inducing the victim of the fraud to part with property or undertake some action that he would not otherwise do absent the misrepresentation or omission." *Daniel*, 329 F.3d at 487 (quoting *United States v. DeSantis*, 134 F.3d 760, 764 (6th Cir. 1998)). Generally, "the question of intent is . . . considered to be one of fact to be resolved by the trier of the facts." *Id.* (citing *United States v. Hopkins*, 357 F.2d 14, 18 (6th Cir. 1966)).

Here, the Government adequately alleges that Defendant *knowingly* misrepresented that he was *not* subject to an indictment in February 2021. Indeed, the Government alleges that on or about February 3, 2021, Defendant "*knowingly devised* a scheme and artifice to defraud, and to obtain money or property, by means of materially false and fraudulent pretenses, representations, and material omissions, caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, and sounds for the purpose of executing such scheme and artifice to defraud." ECF No. 118 at PageID.2138. In this way, Defendant is on adequate notice that the Government is alleging he falsely represented he was not subject to an indictment *with the intent* to defraud the Government of money, such that he may prepare an adequate defense.

In sum, the Government has sufficiently alleged all the required elements of a wire fraud charge under 18 U.S.C. § 1343. Accordingly, Count 16 will not be dismissed.

### III. Evidentiary Motions

Turning to unresolved evidentiary issues related to Count 16, six evidentiary motions must be addressed: The Government's Motion for Reconsideration, ECF No. 188, four motions *in limine* filed by the Government, ECF Nos. 174; 175; 176; 178, and one motion *in limine* filed by Defendant, ECF No. 184. Each will be addressed in turn.

#### A. The Government's Motion for Reconsideration

First, the Government seeks reconsideration regarding this Court's June 21, 2024 Opinion and Order which determined that "any evidence of 402 {N. Mission's] payments for non PPP-approved expenses will be excluded at trial." ECF No. 186 at PageID.3090; *see also* ECF No. 188 (seeking reconsideration). Subsequently, the Government represented in its pleadings that it would *not* offer evidence relating to how Defendant used the PPP loans nor whether his use complied with the relevant PPP regulations. *See* ECF No. 196 at PageID.3288 ("[T]he [G]overnment understands it cannot prove Defendant's statements on his loan forgiveness applications about his use of the loan proceeds were materially false. The [G]overnment will thus proceed on the narrower theory that Defendant's scheme to defraud involved obtaining a PPP loan that he was not eligible to receive, then seeking and securing forgiveness for that loan."). In this way, it appears the Government's Motion for Reconsideration, ECF No. 188, is moot. Even if the Motion was not moot, it would still be denied on the merits.

**1.**

The Federal Rules of Criminal Procedure do not explicitly authorize motions for reconsideration, but such motions may be filed in criminal cases. *See United States v. Ibarra*, 502

U.S. 1, 6–7 (1991) (per curiam); *see also United States v. Mack*, 831 F. App'x 787, 787 (6th Cir. 2020) (unpublished); *United States v. Estrada*, No. 5:14-CR-20425-8, 2022 WL 17682630, at *1 (E.D. Mich. Dec. 14, 2022) ("Motions for reconsideration in criminal cases are generally treated like motions for reconsideration in civil cases.").

Reconsideration is only warranted by: (1) a mistake that changes the outcome of the prior decision, (2) an intervening change in controlling law that warrants a different outcome, or (3) new facts that warrant a different outcome. E.D. Mich. LR 7.1(h)(2).

**2.**

The Government alleges this Court made two mistakes that would change the outcome of this Court's June 21, 2024 decision. ECF No. 188.

First, the Government argues "this Court overlooked statutes cited by the [G]overnment . . . which provide that PPP loan proceeds are not fungible and cannot be spent on non-approved PPP loan expenditures." ECF No. 188 at PageID.3186 (citing ECF No. 173; 15 U.S.C. §§ 636(a)(36) and (37)). But this argument merely doubles down on the argument the Government already made and this Court already rejected—that the statute which outlines permissible uses of PPP loans and uses the word "proceeds" means that "PPP loan proceeds must be spent on PPP-specified expenditures." ECF No. 188 at PageID.3193. No mistake has been made. This statutory authority does not reasonably suggest that "proceeds" means the *exact, specific* dollars. Undeterred, the Government again points to *United States v. ManPow, LLC*, a Central District of California case which determined there was "a triable issue of fact as to the falsity of [the d]efendant's certifications regarding its timely use of PPP funds for eligible purposes" when the defendant used other funds to cover eligible purposes in the context of a *qui tam* case under the False Claims Act, 31 U.S.C. §§ 3729–33. *See ManPow*, No. 221CV05418VAPADSX, 2024 WL 305699, at *11

(C.D. Cal. Jan. 3, 2024). But *ManPow* is nonbinding precedent which interprets the PPP and CARES Act *in the context of* a *qui tam* provision of the False Claims Act, 31 U.S.C., §§ 3729–33. Quite simply, *ManPow* is not persuasive precedent which would change the outcome in this criminal case, filed in the Eastern District of Michigan.

Second, the Government argues "this Court made a mistake in describing the government's theory of the case as prohibiting 'use[] of other cash funds for PPP-approved expenses.'" ECF No. 188 at PageID.3186 (quoting ECF No. 186 at 3088). But that characterization takes language out of context. This Court represented that the Government's position was "that 'PPP loan regulations and specific loan agreement terms signed by Defendant required the PPP loan proceeds Defendant received to be spent 'only on the expenses enumerated in his specific PPP loan agreement.'" ECF No. 186 at PageID.3088 (quoting ECF No. 173 at PageID.2906–07). This Court went on to note that the Government's theory was "that the use of the *specific, particular* loan proceeds deposited into 402's bank account [was] the only relevant inquiry" and that "under PPP Loan Rules, Defendant *could not* have used other cash funds for PPP-approved expenses and still be in compliance with PPP Loan Rules." *Id.* To the Government's point, a borrower could use "other cash funds" for whatever purpose they please. *Id.*; *see also* ECF No. 188 at PageID.3191. But, in the context of the disputed issue *in this case*, that language was not a mistake that warrants a different outcome. Indeed, the Government maintains that regardless of whether Defendant used $231,060.00 of his business's other cash funds for PPP-approved expenses, if he did not use the specific $231,060.00 he received from the PPP loan for those expenses, he did not properly use the loan proceeds. Yet, as this Court has repeatedly concluded, no law supports that contention.

In sum, the outcome remains the same, so the Government's Motion for Reconsideration, ECF No. 188, will be denied.

B. Motions *in Limine*

The remaining five evidentiary motions related to Count 16 all concern evidence related to Defendant's subsequent use of the PPP loan funds. The Government filed motions *in limine* to (1) exclude testimony from Defendant's expert Matthew Abbo about SBA guidance regarding the use of PPP loan funds, ECF No. 174; (2) exclude any reference to Defendant's expert Dante Tosetti during Defendant's cross-examination of Government witnesses, ECF No. 175; (3) exclude from evidence emails between Defendant and a PNC Bank representative, ECF No. 178; and (4) admit summary witness testimony regarding "the expenditure of relevant PPP loan proceeds," ECF No. 176 at PageID.2951. Defendant filed one motion *in limine* to exclude the Government's expert, Mary Cvengros, from testifying about legal conclusions. ECF No. 184. Because all five of these motions concern matters that are no longer relevant to the Government's theory of the case, *see* ECF Nos. 174; 175; 176; 178; 184. So, each motion *in limine* will be denied as moot.

IV.

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss Count 16, ECF No. 192, is **DENIED**.

Further, it is **ORDERED** that the Government's Motion for Reconsideration, ECF No. 188, is **DENIED**.

Further, it is **ORDERED** that the following five evidentiary motions related to Count 16 are **DENIED AS MOOT**:

| ECF No. | MOTION TITLE |
|---|---|
| ECF No. 174 | Government's Motion *in Limine* Regarding Expert Testimony [by Abbo] |
| ECF No. 175 | Government's Motion *in Limine* Regarding Defendant's Expert [Tosetti] |

| ECF No. 176 | Government's Motion *in Limine* Seeking Ruling on [Summary] Witness Testimony |
|---|---|
| ECF No. 178 | Government's Motion *in Limine* to Exclude [Email] Evidence |
| ECF No. 184 | Defendant's Motion *in Limine* to Exclude Government Expert Testimony [by Cvengros] |

Further, it is **ORDERED** that Count 16 shall proceed according to the following schedule:

| Motion Cutoff: | October 15 2024 |
|---|---|
| Plea Cutoff: | November 12, 2024 |
| Final Pretrial Conference: | November 19, 2024, at 4:00 PM EST |
| Firm Jury Trial: | December 10, 2024, at 8:30 AM EST |

Further, it is **ORDERED** that, under 18 U.S.C. § 3161(h)(7)(A), the time from September 24–December 10, 2024, subject to further order of this Court, is **EXCLUDED** as delay under the Speedy Trial Act.

**This is not a final order and does not close the above-captioned case.**

Dated: August 19, 2024                               s/Thomas L. Ludington
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge