UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                  Case No. 1:20-cr-20365

v.                                        Honorable Thomas L. Ludington
                                                United States District Judge

DALE VERNON THRUSH,

        Defendant.
_____/

**OPINION AND ORDER RESOLVING MOTIONS *IN LIMINE***

        In August 2020, Defendant Dale Vernon Thrush was charged with ten counts of willful failure to pay payroll taxes, in violation of 26 U.S.C. § 7202, and four counts of willful failure to file a personal tax return, in violation of 26 U.S.C. § 7203. The case proceeded to trial in November 2021, but a mistrial was declared after the Government's most material witness tested positive for COVID-19 and—under administrative orders in effect at that time—could not enter the building to testify for two weeks. And a two-week adjournment was not feasible for the jury.

        In July 2023, the Government filed a superseding indictment, adding three counts of wire fraud, in violation of 18 U.S.C. § 1343, to the fourteen existing tax counts. After the Government was directed to file a bill of particulars addressing the new wire fraud charges, it dismissed two of those counts. Thus, only one wire fraud count remains, Count 16, which was severed from the tax charges in February 2024.

        Against that backdrop, the trial for the wire fraud count is scheduled to begin on December 10, 2024. But there are three pending evidentiary motions related to this wire fraud trial. As explained below, two of these motions will be granted in part, and one will be denied in full as moot.

### I.

### A.

In August 2020, Defendant Dale Vernon Thrush was charged with ten counts of willful failure to pay payroll taxes, in violation of 26 U.S.C. § 7202, and four counts of willful failure to file a personal tax return, in violation of 26 U.S.C. § 7203. ECF No. 1. According to the Government, Defendant has owned several businesses in Lansing and Mt. Pleasant, Michigan, including 402 N. Mission St. LLC ("Mission"), Xtreme Enterprises, Inc. ("Xtreme"), Verno All Tune, Inc. ("Verno"), and USAuto Repair, Inc. ("U.S. Auto"). ECF No. 1 at PageID.1–2. As the sole owner of the businesses, Defendant was the "responsible person" for collecting and paying payroll taxes. *Id.* at PageID.6. He was also required to file a Form 1040 each year reporting his net profits and distributions from the businesses. *Id.* But the Government alleges that Defendant did not pay over $238,223 in quarterly payroll taxes collected at Mission between April 2014 and December 2016 and did not file a personal income tax Form 1040 for calendar years 2013 through 2016. *Id.* at PageID.6–9. The Government further alleges that Defendant spent almost $500,000 available to pay Mission's payroll taxes on ordinary business expenses and construction costs incurred between April 2014 and October 2016. *Id.* at PageID.6.

After several adjournments during the COVID-19 pandemic, a jury trial began in November 2021. ECF No. 61 at PageID.523. This court declared a mistrial four days into the trial because the Government's most material witness and the undersigned's spouse both tested positive for COVID-19, and the jury could not accommodate a two-week adjournment.[1] ECF No. 61.

---

[1] Administrative Orders at that time prohibited court staff who had close contact with a person who tested positive for COVID-19 from returning to the courthouse without waiting 10 days and presenting a negative COVID-19 test to the court administrator. And, under the circumstances, those Orders required the undersigned to wait 5 days and receive a negative COVID-19 test before returning to the Court.

Defendant later filed a motion to dismiss on double jeopardy grounds. ECF No. 64. This Court denied that motion. *United States v. Thrush*, No. 1:20-CR-20365, 2022 WL 2373351, at *4 (E.D. Mich. June 30, 2022). Defendant appealed, ECF No. 97, and the case was stayed pending that decision, ECF No. 100. On July 17, 2023, the Sixth Circuit affirmed this Court's decision, holding that, under the circumstances, "an adjournment was proper and not an abuse of discretion." *United States v. Thrush*, No. 22-1588, 2023 WL 4564769, at *6 (6th Cir. July 17, 2023).

**B.**

**1.**

After the appeal, the Government filed a superseding indictment on July 26, 2023, which alleged the same 14 tax counts as the first indictment (Counts 1–14). *Compare* ECF No. 1 *with* ECF No. 118. But the Government also added three new wire fraud charges. ECF No. 118 at PageID.2138–41. What warranted these new charges almost three years into a tax evasion case? Defendant allegedly checked a box stating that he was not "subject to an indictment" when applying for a Paycheck Protection Program[2] (PPP) loan during this case (Count 16) and allegedly falsely stated that he complied with PPP regulations when applying for PPP loan forgiveness (Counts 15 and 17). *Id.*

Indeed, the Government alleged that Defendant "knowingly devised a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and material omissions" transmitted by wire communication. ECF No. 118 at PageID.2138. Specifically, it alleged that Defendant applied for a PPP loan in February 2021 "with materially false and fraudulent representations" and that in July 2021 and September 2021, he filed "PPP loan forgiveness applications with materially false and fraudulent

---

[2] A detailed explanation of the PPP can be found in this Court's November 22, 2024 Opinion and Order. *See* ECF No. 241 at PageID.4021, n.7.

representations about the use of the PPP loan funds and . . . Mission's entitlement to PPP loan forgiveness." *Id.* at 2139. The Government also alleged that Defendant engaged in a "scheme to defraud" and "unjustly enrich himself" by using "PPP loan proceeds and subsequent loan forgiveness" impermissibly for "personal investment account expenses, capital expansion projects, and payment of part of [his] delinquent payroll tax liability underlying Counts [1–10]." *Id.*

**2.**

On September 5, 2023, Defendant filed a motion to dismiss the new wire fraud counts, ECF No. 123, and a motion to sever the wire fraud counts from the original tax counts, ECF No. 122. This Court denied the motion to dismiss but directed the Government to file a bill of particulars for Counts 15 and 17—the allegations that Defendant falsely stated his PPP loan-proceed-use complied with the PPP regulations in loan-forgiveness applications. ECF No. 134. The Government promptly filed its bill of particulars. ECF No. 135. But then the Government did an about-face: it filed an unopposed motion to dismiss Counts 15 and 17 with prejudice because the Government conceded they were "no longer readily provable using evidence admissible at trial," ECF No. 142 at PageID.2488. This Court granted the Government's unopposed motion. ECF No. 146. Thus, only Count 16—the allegation that Defendant misrepresented he was *not* subject to an indictment in a PPP loan application—remained. *See* ECF No. 118 at PageID.2141. This Court then severed the remaining wire fraud count from the original tax counts, reasoning that the tax and wire fraud counts are too unrelated and should be tried separately. See ECF No. 148 at PageID.2592–95.

**3.**

On March 18, 2024, the Government filed a bill of particulars outlining the "[a]cts [r]elated to Count 16." ECF No. 154 at PageID.2664. The Government asserted that "transactions relevant to Counts 15 and 17"—the counts the Government voluntarily dismissed—were "also relevant to

show the wire fraud scheme charged in Count 16." *Id.* at PageID.2663–64. According to the Government, proofs relating to whether Defendant used the PPP loan proceeds according to PPP regulations were relevant to prove the second part of the alleged two-part scheme: that Defendant submitted "two PPP loan forgiveness applications with materially false and fraudulent representations about the use of the PPP loan funds and . . . Mission's entitlement to PPP loan forgiveness." *Id.* at PageID.2664; *see also* ECF No. 118.

Responding to this bill of particulars on Count 16, both Parties indicated they would call expert witnesses to interpret PPP loan regulations and assess Defendant's compliance. *See* ECF Nos. 169; 171. Importantly, the Government's expert asserted she would testify that money received from PPP loans was not "fungible," ECF No. 170 at PageID.2853, and had to be used exclusively for allowable expenses as specified by program guideline, *id.* at PageID.2855. But Defendant's expert asserted he would testify that PPP loan proceeds could be comingled with the borrower's other accounts, even though it was prudent not to comingle the proceeds. *See* ECF No. 171 at PageID.2878–80. In this way, the *specific loan proceeds* were not required to be used for PPP-approved expenses, and a borrower complied with PPP regulations so long as any of its business funds were, in fact, used to pay for PPP-approved expenses. *See id.* After reviewing each expert's anticipated testimony, it was "clear that the Parties [were] attempting to advance two very different—and incompatible—interpretations of the CARES Act and relevant PPP loan regulations." ECF No. 172 at PageID.2884. And although any such expert testimony featuring legal conclusions would be excluded at trial, this Court directed supplemental briefing to resolve the legal dispute to "accurately instruct the jury about *what the law is*" regarding permissible uses of PPP loan proceeds. *Id.* (emphasis in original).

The Parties submitted supplemental briefs, but neither "contain[ed] *any* legal authority

- 5 -

supporting the Government's contention" that "loan proceeds were *not* fungible and that funds could not be commingled with other funds of the borrower." ECF No. 186 at PageID.3089 (emphasis in original). Accordingly, on June 21, 2024, this Court determined that the jury instructions would be modified to reflect that legal conclusion. *Id.* So the following instruction was added:

> There was no PPP Rule or other law prohibiting the comingling of PPP loan proceeds with other borrower funds. To that end, PPP loan proceeds were fungible, meaning they were interchangeable with other funds of the borrower.

*Id.* Additionally, this Court determined that "[i]n accordance with the instructions[,] . . . evidence of [Mission's] payments for PPP-approved expenses during the covered periods up to $231,060.00 will be admissible at trial. *Id.* Conversely, evidence of payments or expenditures for *non-PPP-approved expenses will be excluded at trial* because such evidence is irrelevant." *Id.* (citing FED. R. EVID. 402) (emphasis added). Indeed, to demonstrate that Defendant misrepresented his entitlement to PPP loan forgiveness at trial, the Government must necessarily prove that "Defendant *did not* pay $231,060.00 in PPP-approved expenses during the covered periods like he represented he did in his PPP loan-forgiveness applications." *Id.* at PageID.3090 (emphasis in original).

Four days later, the Parties appeared for a final pretrial conference. *See* ECF No. 185. Importantly, at this conference, the Government acknowledged that the accounting reflected that Defendant paid $231,060.00 worth of PPP-approved expenses during the relevant covered periods. *See* ECF No. 214 at PageID.3559.

The next day, Defendant filed a motion to dismiss Count 16. ECF No. 192. The Government responded that Count 16 should not be dismissed but elected to narrow its theory of the case. ECF No. 196. The Government's narrower theory is "that Defendant's scheme to defraud

involved obtaining a PPP loan that he was not eligible to receive, then seeking and securing forgiveness for that loan." ECF No. 196 at PageID.3288. On August 19, 2024, this Court denied Defendant's motion to dismiss Count 16. *See* ECF No. 214. And this Court reiterated that "any evidence of [Mission's] payments for non-PPP approved expenses will be excluded at trial." *Id.* at PageID.3565 (citing ECF No. 186 at PageID.3090).

### C.

The trial for this wire fraud charge (Count 16) is scheduled to start on December 10, 2024. *See* ECF No. 214 at PageID.3569. Leading up to trial, there are three motions *in limine* pending. *See* ECF Nos. 233; 238; 249. Each is addressed below.

### II.

"A 'motion *in limine*' is any motion to exclude or admit "evidence before the evidence is actually offered" at trial. *See Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013)). Motions *in limine* are designed "to narrow the issues remaining" and "minimize disruptions," *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir.1999), and help ensure "evenhanded and expeditious management of trials," *United States v. Phillips*, 146 F. Supp. 3d 837, 841 (E.D. Mich. 2015), *aff'd in part*, 677 F. App'x 294 (6th Cir. 2017) (internal citations omitted). Indeed, "the Supreme Court has authorized district courts to rule on motions *in limine*" under "the district court's inherent authority to manage the course of trials.'" *Id.* (cleaned up).

A district court should grant a motion *in limine* "only when [that] evidence is clearly inadmissible" or admissible "on all potential grounds." *Id.* (quoting *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844 (N.D. Ohio 2004)). "In cases where that high standard is not met, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Id.* (internal citations omitted); *see also Good v. BioLife Plasma Servs., L.P.*, 605 F. Supp. 3d 947, 955 (E.D. Mich.), *recons. denied*, 647

F. Supp. 3d 555 (E.D. Mich. 2022); *Figgins v. Advance Am. Cash Advance Centers of Michigan, Inc.*, 482 F. Supp. 2d 861, 865 (E.D. Mich. 2007) ("It may be desirable in many cases to defer ruling . . . until trial[.]").

The denial of a motion *in limine* "does not necessarily mean that the court will admit" or exclude "the evidence at trial." *Phillips*, 146 F. Supp. 3d 837 at 841. Rather, "[d]enial merely means that without the context of trial, the court" cannot "determine whether the evidence in question should be excluded" or admitted. *Indiana Ins. Co.*, 326 F. Supp. at 846.

### III.

Defendant filed two motions *in limine* to exclude certain evidence at trial and one to "allow" certain evidence at trial. *See* ECF Nos. 233; 238; 249. First, Defendant seeks to exclude the testimony of the Government's expert witness, Terri Billups. ECF No. 233. Second, Defendant seeks to exclude the admission of myriad exhibits that the Government may—or may not—offer at trial. ECF No. 238. Third, Defendant seeks an order "allow[ing] evidence regarding the actual, proper use of PPP Loan funds." ECF No. 249 at PageID.4111. Each motion will be addressed in turn.

### A.

Starting with Defendant's Motion to Exclude Terri Billups's Testimony, ECF No. 233, for context, the Government submitted a notice of potential expert witness testimony from Billups—a Small Business Administration ("SBA") employee—on October 21, 2024, ECF No. 231. The Government prefaced its notice by stating that it "does not believe anything below qualifies as expert testimony, however, out of an abundance of caution, the Government will treat it as expert opinion testimony." *Id.* at PageID.3785–86. Following this preface, the notice details three topics Billups is expected to testify about. *Id.* at PageID.3786–97. First, Billups is expected to testify that if Defendant informed the SBA of his indictment on Mission's PPP Loan application, Mission

would not have received the loan. *Id.* at PageID.3786. Second, Billups is expected to testify about the typical PPP loan process. *Id.* at PageID.3787. Third, Billups anticipated testimony includes general background information on PPP loans, including "(1) the purpose of the PPP loan program, (2) its intended objective, and (3) how the loan amount is calculated." *Id.* at PageID.3791.

Defendant argues that such testimony is irrelevant and could confuse the jury. *See* ECF No. 233 at PageID.3824–31. To that end, Defendant claims that the only remaining disputed issue is whether Defendant believed "that he was not 'subject to indictment'" when he allegedly completed the PPP loan application. *Id.* at PageID.3820. As a result, Defendant argues, the three topics have nothing to do with Defendant's intent when he completed the application, so Billups's testimony provides no "probative value that would help the jury decide a matter of consequence that is in dispute." *Id.* at PageID.3827. And Defendant argues that testimony about how PPP loan recipients were required to use loan proceeds is irrelevant and could confuse the jury, given this Court's July 21, 2024 Order barring evidence of non-authorized uses of PPP loan proceeds. *See id.* at PageID.3829 (citing ECF No. 184).

The Government responds that Billups's anticipated testimony is relevant. *See generally* ECF No. 242. Specifically, the Government argues that her testimony is necessary to help establish elements of wire fraud under 18 U.S.C. § 1343 that are unstipulated and thus still at issue.[3] *Id.* at

---

[3] For example, the Government notes that Billups's testimony about the PPP loan process helps show that (1) Defendant "caused an interstate wire transmission"; (2) Defendant's relevant PPP Loan was forgiven, which could suggest that his alleged scheme was executed "in order to deprive" the SBA and banks of money—rather than to, say, borrow the money, *see United States v. Sadler*, 750 F.3d 585, 590–92 (6th Cir. 2014); and (3) Defendant's alleged misrepresentation was material such that he would not have obtained the loan absent the alleged misrepresentation. *See* ECF No. 242 at PageID.4049–50, 4053–55. True, Defendant has effectively conceded that "[a]t no point has there been any dispute that if an applicant checked 'yes' to the question in dispute on the PPP loan, that the loan would be denied." ECF No. 233 at PageID.3827. But without an actual stipulation, materiality is still at issue, and the Government must prove that the alleged misrepresentation could influence the decision to grant his loan. *See Neder v. United States*, 527 U.S. 1, 16 (1999) (cleaned up) ("[A] a false statement is material if it has a natural tendency to

PageID.4049–50, 4053–55. And the Government argues that information about the PPP loan process will help the jury understand and contextualize the evidence. *Id.* at PageID.4053–55.

Federal Rule of Evidence 702 governs expert testimony. FED. R. EVID. 702. Expert testimony is presumptively admissible if it satisfies three conditions: (1) the witness is qualified with knowledge, skill, experience, training, or education; (2) the testimony is relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue"; and (3) the testimony is reliable. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528 (6th Cir. 2008). Relevance is the only contested condition here. *Compare* ECF No. 233 *with* ECF No. 242.

Here, much of Billups's testimony could be relevant—that is, helpful to the jury— especially when used to prove unstipulated elements of the wire fraud and contextualize the evidence, as the Government has argued. And, importantly, most of the testimony Defendant challenges is not "clearly inadmissible" on all grounds. *See Phillips*, 146 F. Supp. 3d at 841 (cleaned up). But any testimony regarding how borrowers needed to spend PPP loan proceeds or any legal conclusions about PPP loans are irrelevant.[4] Such testimony will not help the jury understand the evidence or determine a fact in issue. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d at 528. Indeed, this Court has already stated, restated, and now states again that evidence about how borrowers must spend PPP proceeds, non-authorized uses of PPP funds, and legal conclusions about PPP loans are irrelevant. *See* ECF Nos. 186 at PageID.3089–90; 214 at

---

influence, or [is] capable of influencing, the decision of the decision-making body to which it was addressed."); *see also* ECF No. 160 at PageID.2784–85 (noting that materiality was at issue and that the Government must prove materiality at trial by showing that the alleged misrepresentation "was something the SBA considered in reviewing loan applications," which would thus influence the decision-making process).

[4] Notably, the Government has conceded this point numerous times and has done so as recently as the December 3, 2024, Final Pretrial Conference, aside from a question about whether Defendant could "open the door" to non-authorized PPP proceed uses, which this Court already resolved. *See infra*, Section III, C (citing ECF No. 186 at PageID.3089).

PageID.3566–67 (noting similar Government expert testimony was irrelevant).

In sum, this Court will not categorically deem Billups's testimony irrelevant. But any testimony regarding how borrowers must spend PPP funds or legal conclusions about PPP loans are irrelevant. So Defendant's Motion to Exclude Billups's Testimony, ECF No. 233, will be denied without prejudice in part, leaving open the Defendant's ability to object to particular testimony at trial, and granted in part to the extent it seeks to exclude testimony about how borrowers needed to spend PPP funds and legal conclusions.

B.

Moving to Defendant's Motion *in Limine* to Exclude certain exhibits, Defendant seeks to exclude *over seventy* exhibits featured in a proposed exhibit list that the Government sent to Defendant, arguing the exhibits are irrelevant or lack sufficient probative value relative to their potential prejudice. *See generally* ECF Nos. 238; 238-1. Since then, the Government has indicated it does not intend to use most of the proposed exhibits but rather has them on "standby," *see* ECF No. 240 at PageID.3901, and submitted two separate exhibit lists to reflect as much: (1) a standby list (seventy-two exhibits); and (2) its actual exhibit list (fifteen exhibits).[5] This Court will not rule on the admissibility of heaps of "standby" exhibits that the Government does not intend to introduce. And without the context of trial, this Court cannot assess the admissibility of *most* of the Government's "actual" exhibits—which the Government intends to offer to help prove essential elements of wire fraud under 18 U.S.C. § 1343. *See Phillips*, 146 F. Supp. 3d at 841.[6]

---

[5] The Government submitted these lists to Defendant and this Court via email, which are on file with this Court.

[6] In addition to the four exhibits this Court is expressly finding inadmissible, this Court notes that one exhibit, Exhibit 2006, which appears to be Mission's PNC bank statements from 2021 to May 2023, may violate this Court's prohibition on evidence of non-authorized PPP loan expenditures. *See* ECF Nos. 240 at PageID.3904; 244 at PageID.4088–89. But this Court does not have a copy of Exhibit 2006, and thus cannot analyze the exhibit and make an affirmative ruling on it at this juncture.

But four exhibits are inadmissible: Government Exhibits 3001, 3002, 3003, and 3004. These exhibits relate to Defendant's tax-charge indictment that the Government intends to offer as proof that Defendant was under indictment when he allegedly completed Mission's PPP loan application. *See* ECF Nos. 238 at PageID.3855–56; 240 at PageID.3908. Defendant argued that these documents should be excluded under Federal Rule of Evidence 403 because they pose an undue danger of prejudice relative to their probative value. *See* ECF Nos. 238 at PageID.3855–56. In response, the Government offered to stipulate that Defendant was under indictment, which would "remove the need for this evidence." ECF No. 240 at PageID.3908. The Parties have since stipulated that Defendant was under indictment when he allegedly completed the PPP loan application[7], so these four exhibits will be excluded under Federal Rule of Evidence 403. *See Old Chief v. United States*, 519 U.S. 172, 190–192 (1997).

At bottom, Defendant's Motion *in Limine* to Exclude exhibits, ECF No. 238, will be denied without prejudice in part, leaving open the Defendant's ability to object to particular exhibits at trial, and granted in part to the extent it seeks to exclude Government Exhibits 3001, 3002, 3003, 3004.

## C.

Finally, at the eleventh hour, Defendant filed a motion to "allow evidence regarding the actual, proper use of PPP Loan funds while continuing to exclude any evidence or reference to funds spent on non-qualifying expenses," based on the Government's statements in a December 3, 2024, final pretrial conference. ECF No. 249 at PageID.4111–13. Specifically, Defendant takes issue with the Government's contention that if Defendant introduces evidence about his authorized uses of PPP loan funds, it "open[s] the door" for the Government to introduce evidence of non-

---

[7] The Parties' Stipulation is attached to this Opinion and Order as an exhibit.

authorized uses. *Id.* at PageID.4113. But this Court already resolved this issue in its June 21, 2024 Order stating the following:

> [E]vidence of 402's payments for PPP-approved expenses during the covered periods up to $231,060.00 will be admissible at trial. Conversely, any evidence of payments or expenditures for *non* PPP-approved expenses will be excluded at trial, because such evidence is irrelevant.

ECF No. 186 at PageID.3089 (emphasis in original). So Defendant's Motion *in Limine* seeking to allow evidence related to "qualified" PPP loan proceed expenses, ECF No. 249, will be denied as moot.

### IV.

Accordingly, it is **ORDERED** that Defendant's Motion *in Limine* to Exclude Terri Billups's Testimony, ECF No. 233, is **GRANTED IN PART**, to the extent it seeks to exclude testimony about how PPP loan recipients needed to spend PPP loan proceeds.

Further, it is **ORDERED** that Defendant's Motion *in Limine* to Exclude Terri Billups's Testimony, ECF No. 233, is **DENIED IN PART, WITHOUT PREJUDICE,** in all other respects.

Further, it is **ORDERED** that the Defendant's Motion *in Limine* to Exclude Certain Exhibits, ECF No. 238, is **GRANTED IN PART** to the extent it seeks to exclude Government exhibits 3001, 3002, 3003, and 3004.

Further, it is **ORDERED** that the Defendant's Motion *in Limine* to Exclude Certain Exhibits, ECF No. 238, is **DENIED IN PART, WITHOUT PREJUDICE,** in all other respects.

Further, it is **ORDERED** that the Defendant's Motion *in Limine* to Allow Evidence Regarding the Payment of PPP Qualified Expenses, ECF No. 249, is **DENIED AS MOOT**.

**This is not a final order and does not close the above-captioned case.**

Dated: December 6, 2024                  s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge