UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                              Case No. 1:20-cr-20365

v.                                         Honorable Thomas L. Ludington
                                                     United States District Judge

DALE VERNON THRUSH,

                Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND DENYING AS MOOT DEFENDANT'S EVIDENTIARY MOTION**

In August 2020, Defendant Dale Vernon Thrush was charged with ten felony counts of willful failure to pay payroll taxes, in violation of 26 U.S.C. § 7202, and four misdemeanor counts of willful failure to file a personal tax return, in violation of 26 U.S.C. § 7203. On September 2, 2020, Defendant appeared before Magistrate Judge David R. Grand for an arraignment hearing. Defendant was represented by retained counsel for the hearing. During the hearing, Defendant acknowledged the charges in the Indictment, received bond, and reviewed the conditions of his bond—which included agreeing not to enter a loan or other credit transaction without written permission from pretrial services. The case proceeded to trial in November 2021, but a mistrial was declared after the Government's most material witness tested positive for COVID-19 and, under administrative orders in effect at that time.

After the Government indicted Defendant for felony tax counts, Defendant completed a Paycheck Protection Program (PPP) loan application for his wholly owned business. In the application, Defendant indicated that he was not subject to a felony indictment. So in July 2023, the Government filed a superseding indictment, adding three counts of wire fraud under 18 U.S.C. § 1343 to the fourteen tax counts. The Government later dismissed two wire fraud counts. The

remaining wire fraud count was then severed from the tax charges in February 2024.

Against that backdrop, Defendant filed an evidentiary motion seeking to exclude specific PPP-loan-document evidence the night before trial. The wire fraud trial then began on December 10, 2024. At the end of the Government's case, Defendant moved for a judgment of acquittal, and this Court reserved its decision on the Motion. After Defendant presented his defense, the jury convicted Defendant of wire fraud. Because Defendant was convicted, Defendant's Motion for Judgment of Acquittal must be resolved. As explained below, Defendant's Motion for Judgment of Acquittal will be denied, and his evidentiary Motion will be denied as moot.

**I.**

**A.**

In August 2020, Defendant Dale Vernon Thrush was charged with ten counts of willful failure to pay payroll taxes, in violation of 26 U.S.C. § 7202, and four counts of willful failure to file a personal tax return, in violation of 26 U.S.C. § 7203. ECF No. 1. According to the Government, Defendant has owned several businesses in Lansing and Mt. Pleasant, Michigan, including 402 N. Mission St. LLC (Mission). ECF No. 1 at PageID.1–2. As the sole owner of the companies, Defendant was the "responsible person" for collecting and paying payroll taxes. *Id.* at PageID.6. He was also required to file a Form 1040 each year reporting his net profits and distributions from the businesses. *Id.* But the Government alleges that Defendant did not pay over $238,223 in quarterly payroll taxes collected at Mission between April 2014 and December 2016 and did not file a personal income tax Form 1040 for calendar years 2013 through 2016. *Id.* at PageID.6–9.

After several adjournments during the COVID-19 pandemic, a jury trial began in November 2021. ECF No. 61 at PageID.523. This court declared a mistrial four days into the trial because the Government's most material witness and the undersigned's spouse both tested positive

- 2 -

for COVID-19, and the jury could not accommodate a two-week adjournment.[1] ECF No. 61.

Defendant later filed a motion to dismiss on double jeopardy grounds. ECF No. 64. This Court

denied that motion. *United States v. Thrush*, No. 1:20-CR-20365, 2022 WL 2373351, at *4 (E.D.

Mich. June 30, 2022). Defendant appealed, ECF No. 97, and the case was stayed pending that

appeal, ECF No. 100. On July 17, 2023, the Sixth Circuit affirmed this Court's decision, holding

that, under the circumstances, "an adjournment was proper and not an abuse of discretion." *United

States v. Thrush*, No. 22-1588, 2023 WL 4564769, at *6 (6th Cir. July 17, 2023).

**B.**

**1.**

After the appeal, the Government filed a superseding indictment on July 26, 2023, which

alleged the same 14 tax counts as the first indictment (Counts 1–14). *Compare* ECF No. 1 *with*

ECF No. 118. But the Government added three new wire fraud charges. ECF No. 118 at

PageID.2138–41. What warranted these new charges almost three years into a tax case? Defendant

represented that he was not "presently subject to an indictment" when applying for a Paycheck

Protection Program[2] (PPP) loan in February of 2021 (Count 16) and stated that he complied with

PPP regulations when applying for PPP loan forgiveness when he allegedly did not (Counts 15

and 17). *Id.*

Indeed, the Government alleged that Defendant "knowingly devised a scheme and artifice

---

[1] Administrative Orders at that time prohibited court staff who had close contact with a person who tested positive for COVID-19 from returning to the courthouse without waiting 10 days and presenting a negative COVID-19 test to the court administrator. And, under the circumstances, those Orders required the undersigned to wait 5 days and receive a negative COVID-19 test before returning to the Court.

[2] A detailed explanation of the PPP can be found in this Court's November 22, 2024 Opinion and Order. *See* ECF No. 241 at PageID.4021, n.7; *see also United States v. Ho*, No. 22-1968, 2024 WL 914976, at *1 (6th Cir. Mar. 4, 2024), *cert. denied*, 145 S. Ct. 318 (2024) (providing an overview of the PPP loan program); *United States v. Fatani*, 125 F.4th 755, 756 (5th Cir. 2025) (same).

to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and material omissions" transmitted by wire communication. ECF No. 118 at PageID.2138. Specifically, it alleged that Defendant applied for a PPP loan in February 2021 "with materially false and fraudulent representations"—namely, that he was not subject to a felony indictment when his tax counts were pending—and that in July 2021 and September 2021, he filed "PPP loan forgiveness applications with materially false and fraudulent representations about the use of the PPP loan funds and . . . Mission's entitlement to PPP loan forgiveness." *Id.* at 2139. The Government also alleged that Defendant engaged in a "scheme to defraud" and "unjustly enrich himself" by using "PPP loan proceeds and subsequent loan forgiveness" impermissibly for "personal investment account expenses, capital expansion projects, and payment of part of [his] delinquent payroll tax liability underlying Counts [1–10]." *Id.*

**2.**

On September 5, 2023, Defendant filed a motion to dismiss the new wire fraud counts (Counts 15, 16, and 17), ECF No. 123, and a motion to sever them from the original tax counts, ECF No. 122. This Court denied the motion to dismiss but directed the Government to file a bill of particulars for Counts 15 and 17. ECF No. 134. The Government filed its bill of particulars. ECF No. 135. But then the Government did an about-face: it filed an unopposed motion to dismiss Counts 15 and 17 with prejudice because the Government conceded they were "no longer readily provable using evidence admissible at trial." ECF No. 142 at PageID.2488. The Government's unopposed motion was thus granted. ECF No. 146. Accordingly, only Count 16—the allegation that Defendant misrepresented he was not subject to an indictment when applying for a PPP loan—remained. *See* ECF No. 118 at PageID.2141. The wire fraud count was severed from the original tax counts because the tax and wire fraud counts were too unrelated and should be tried separately. *See* ECF No. 148.

**3.**

On March 18, 2024, the Government filed a bill of particulars outlining the "[a]cts [r]elated to Count 16." ECF No. 154 at PageID.2664. The Government asserted that "transactions relevant to Counts 15 and 17"—the counts the Government voluntarily dismissed—were "also relevant to show the wire fraud scheme charged in Count 16." *Id.* at PageID.2663–64. In the Government's view, proofs about whether Defendant used the PPP loan proceeds according to PPP regulations were relevant to prove the second part of the alleged two-part scheme: that Defendant submitted "two PPP loan forgiveness applications with materially false and fraudulent representations about the use of the PPP loan funds and . . . Mission's entitlement to PPP loan forgiveness." *Id.* at PageID.2664; *see also* ECF No. 118.

Responding to this bill of particulars on Count 16, both Parties indicated they would call expert witnesses to interpret PPP loan regulations and assess Defendant's compliance. *See* ECF Nos. 169; 171. Importantly, the Government's expert asserted she would testify that money received from PPP loans was not "fungible," ECF No. 170 at PageID.2853, and needed to be segregated into an account used only to pay expenses permitted by program guidelines, *id.* at PageID.2855. But Defendant's expert asserted he would testify that PPP loan proceeds could, under the relevant law and regulations, be comingled with the borrower's other cash accounts, even though it may not have been prudent to do so. *See* ECF No. 171 at PageID.2878–80. In this way, the *specific loan proceeds* were not required to be used for PPP-approved expenses, and a borrower complied with PPP regulations so long as any of its business funds were, in fact, used to pay for PPP-approved expenses. *See id.* Ultimately, it was "clear that the Parties [were] attempting to advance two very different—and incompatible—interpretations of the CARES Act and relevant PPP loan regulations." ECF No. 172 at PageID.2884. And although any expert testimony presenting legal conclusions would be excluded at trial, this Court directed supplemental briefing

to resolve the legal dispute to "accurately instruct the jury about *what the law is*" regarding permissible uses of PPP loan proceeds. *Id.* (emphasis in original).

The Parties submitted supplemental briefs, but neither "contain[ed] *any* legal authority supporting the Government's contention" that "loan proceeds were *not* fungible and that funds could not be commingled with other funds of the borrower." ECF No. 186 at PageID.3089 (emphasis in original). So on June 21, 2024, this Court determined that "evidence of [Mission's] payments for PPP-approved expenses during the covered periods up to $231,060.00 will be admissible at trial. *Id.* Conversely, evidence of payments or expenditures for non-*PPP*-approved expenses will be excluded at trial because such evidence is irrelevant." *Id.* (citing FED. R. EVID. 402) (emphasis added).

Defendant then filed a motion to dismiss Count 16. ECF No. 192. The Government responded that Count 16 should not be dismissed, electing to narrow its theory of the case. ECF No. 196. The Government's narrower theory was that Defendant devised a scheme to deprive another of money by "obtaining a PPP loan that he was not eligible to receive, then seeking and securing forgiveness for that loan." ECF No. 196 at PageID.3288. On August 19, 2024, this Court denied Defendant's motion to dismiss Count 16. *See* ECF No. 214.

Leading up to trial Defendant filed several evidentiary motions that this Court resolved. *See* ECF No. 251. But on the night before trial, Defendant filed an additional motion *in limine* to exclude evidence. ECF No. 252. This pending motion will be denied as moot.

### C.

Trial for the wire fraud charge began on December 10, 2024. *See* ECF No. 264 at PageID.4585. On December 11, 2024, to launch its case-in-chief, the Government read into the record Defendant's Stipulation, which stated he knew that he was a named defendant in a felony

indictment at least as early as September 2, 2020:

> Beginning on August 31, 2020, and continuing through the present, Defendant was aware he was a named defendant in a federal indictment in the Eastern District of Michigan and was formally charged with at least one felony in that indictment. On September 2, 2020, Defendant Dale Vernon Thrush appeared in federal court and acknowledged verbally and in writing that he knew and understood that he was charged with at least one felony in the relevant indictment.

ECF No. 262 at PageID.4430 (sealed) (cleaned up); *see also* ECF No. 258 at PageID.4415.

> The Government then called five witnesses:

> (1) Terri Billups, a deputy director at the Small Business Administration (SBA) familiar with the PPP loan application process, ECF No. 262 at PageID.4431–94 (sealed);

> (2) Marsha Winters, a PNC bank employee—the bank Mission used for its PPP loans—familiar with the PPP lending process, *Id.* at PageID.4495–527;

> (3) Sue Hastings, Defendant's bookkeeper for Mission, who helped him complete PPP loan applications, *Id.* at PageID.4530–61;

> (4) Aaron Santarelli, a PNC bank employee who worked with Mission post-PPP loan approval and exchanged interstate communications with Mission, *Id.* at PageID.4563–69; and

> (5) Sarah Neff-Paisley, a PNC branch manager who worked with Mission and Defendant on PPP loans, *Id.* at PageID.4570–76.

In addition to the Stipulation and the witnesses' testimony, the Government offered several exhibits, including Mission's February 3, 2021 PPP loan application and subsequent loan forgiveness documents. *See id.* at PageID.4440–41, 4467–70, 4519–22, 4532–39. The loan application featured Defendant answering no to the question that, in effect, asked whether he was "presently subject to indictment." *See id.* at PageID.4440–41, 4519–22, 4532–39.

After the Government's case, Defendant orally sought a judgment of acquittal under Criminal Rule 29. *See* ECF No. 257 at PageID.4394–95; *see also* ECF No. 262 at PageID.4579 (sealed). This Court entertained oral arguments on the Motion before trial resumed on December 12, 2024. *See* ECF No. 262 at PageID.4579 (sealed). After oral argument on the morning of

December 12, 2024, this Court reserved its decision on the Motion under Criminal Rule 29(b) and later directed briefing on the Motion. ECF Nos. 264; 269 at PageID.4613–19 (sealed). After Defendant presented his defense, the jury convicted Defendant of wire fraud under 18 U.S.C. § 1343. ECF No. 260. Because Defendant was convicted, this Court must resolve his Motion for Judgment of Acquittal.

## II.

A defendant may move for a judgment of acquittal following the government's case-in-chief. FED. R. CRIM. P. 29(a). When the defendant files such a motion, the court must enter a judgment in the defendant's favor if the government's "evidence is insufficient to sustain a conviction" for the charges the defendant challenges. *Id.* The court may "reserve decision on the motion, proceed with the trial," and "submit the case to the jury." FED. R. CRIM. P. 29(b). But if the jury returns a guilty verdict, the court must decide the defendant's motion, considering only the "evidence at the time the ruling was reserved." *Id.*

Criminal Rule 29 imposes a hefty burden on the defendant. *United States v. Robinson*, 99 F.4th 344, 354 (6th Cir. 2024). Indeed, defendants must show that "no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Brooks*, 987 F.3d 593, 601 (6th Cir. 2021). And when deciding a Rule 29 motion, the court "do[es] not weigh the evidence presented" or "substitute [its] judgment for that of the jury." *Robinson*, 99 F.4th at 353 (cleaned up). Rather, it "must draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *Id.* (cleaned up).

## III.

### A.

Here, the Government needed to prove wire fraud. The federal wire fraud statute's text

mimics an 1872 mail fraud statute,[3] criminalizing deceptive schemes aimed at money or property:

> Whoever, having devised . . . any scheme . . . to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . transmits or causes to be transmitted by means of wire . . . in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343. Hacking through that textual thicket, the government must prove three things to convict a defendant of wire fraud: the defendant (1) devised a scheme to defraud—one that features a material misrepresentation or omission; (2) intended to defraud—that is, knowingly misrepresented or omitted a material fact intending to deprive a victim of money or property; and (3) used an interstate wire communication to further the scheme.[4] *United States v. Maddux*, 917

---

[3] Because the wire fraud statute mirrors the mail fraud statute, courts must interpret them *in pari materia*, meaning where their text overlaps, courts interpret the two statutes as one. *Pasquantino v. United States*, 544 U.S. 349, 355 n.2 (2005); *see also United States v. Kennedy*, 714 F.3d 951, 958 (6th Cir. 2013) ("This court has interpreted the mail-fraud and wire-fraud statutes as having essentially the same elements, except for the use of the mails versus the wires."). So this Opinion and Order incorporates cases that focused on applying portions of the mail fraud statute that the wire fraud statute replicates.

[4] Some Sixth Circuit cases treat the intent to defraud element as a subcomponent of the "scheme to defraud" element. *See, e.g., United States v. Bolos*, 104 F.4th 562, 569–73 (6th Cir. 2024) ("[T]he the statute only criminalizes one kind of scheme: schemes intended to deprive people of their money or property," using "known [material] misrepresentation[s].") (cleaned up); *United States v. Sadler*, 750 F.3d 585, 590–92 (6th Cir. 2014). In this way, analyzing it as a "three-part test[]" can "distract more than inform," *United States v. Bertram*, 900 F.3d 743, 748 (6th Cir. 2018), and can create redundancy. And the Supreme Court sometimes treats the intent to deprive element as a subcomponent of the "scheme to defraud" requirement. *See Ciminelli v. United States*, 598 U.S. 306, 312 (2023) ("Although the statute is phrased in the disjunctive, we have consistently understood the money or property requirement to limit the "scheme . . . to defraud" element because the common understanding of the words "to defraud" when the statute was enacted referred to wronging one in his property rights.") (cleaned up); *see also Cleveland v. United States*, 531 U.S. 12, 19 (2000); *Kelly v. United States*, 590 U.S. 391, 398–404 (2020); *McNally v. United States*, 483 U.S. 350, 358 (1987); *Schmuck v. United States*, 489 U.S. 705, 721 (1989) ("There are two elements in mail [and wire] fraud: (1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use of the mail [or an interstate wire] for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)."); *but see Pasquantino*, 544 U.S. at 356–57 (2005) (discussing the elements separately); *Carpenter v. United States*, 484 U.S. 19, 27–28 (1987) (same). But regardless of how one organizes the elements, the statute's core principles remain the same: wire fraud requires a scheme that features

F.3d 437, 443 (6th Cir. 2019). Defendant's Motion challenges only the intent element, which is

addressed below. *See generally* ECF Nos. 257; 269 at PageID.4613–19 (sealed); 272.

**B.**

Defendant argues that the Government failed to sufficiently prove he intended to defraud

the SBA when he stated on his February 2021 PPP loan application that he was not "presently

subject to an indictment," despite having been indicted in August 2020 and arraigned on the

charges on September 2, 2020. ECF Nos. 257 at PageID.4400–03; 272 at PageID.4879–84. He

argues that he misunderstood the phrase, believing "subject to indictment" referred to the

possibility of a future indictment rather than an existing one. ECF No. 272 at PageID.4879–84. So

in Defendant's view, his misrepresentation was inadvertent, and the Government failed to present

evidence from which a jury could conclude that it was not. *Id.* Not so.

The wire fraud statute is a specific intent statute. *United States v. Daniel*, 329 F.3d 480,

487 (6th Cir. 2003). So mistaken misrepresentations do not suffice. *See id.* at 488; *see also*

*Kennedy*, 714 F.3d at 958. Rather, to satisfy the intent element, the government must prove that

the defendant knowingly misrepresented a material fact[5] aiming to deprive someone of money or

a traditional property interest. *Daniel*, 329 F.3d at 488; *see also Ciminelli*, 598 U.S. at 309. And

the Government need not present direct evidence of intent: circumstantial evidence will do. *See*

---

knowing and material deception aimed at depriving another of money or property. *Maddux*, 917
F.3d at 443; ECF No. 258 at PageID.4414.

[5] Defendant does not dispute that the Government sufficiently showed that representing that he
was not subject to an indictment was a material misrepresentation. *See generally* ECF Nos. 257;
272. Nor could he. A material misrepresentation is one that "has a natural tendency to influence,
or [is] capable of influencing, the decision of the decision-making body to which it was addressed."
*Neder v. United States*, 527 U.S. 1, 16 (1999) (cleaned up). At trial, Billups—the SBA Director
familiar with the PPP loan program—testified that Defendant's loan would not have been approved
if he answered the indictment question correctly. ECF No. 262 at PageID.4441, 4461–62 (sealed).
And the Government entered into evidence the PPP loan application, which indicated the same.
*See id.* at PageID.4440. So the misrepresentation influenced the loan decision, making it material.

*United States v. Paulus*, 894 F.3d 267, 277 (6th Cir. 2018).

Defendant asserts that a misrepresentation alone is insufficient to infer an intent to defraud rather than a mistaken misrepresentation. ECF No. 272 at PageID.4879–84. And he argues that the Government's sole evidence of intent was Defendant's misrepresentation that he was not "presently subject to indictment" when applying for the loan. *Id.* To his point, Sixth Circuit cases often emphasize that the government provided more than the misrepresentation itself to prove fraudulent intent when tackling sufficiency of evidence issues. *See, e.g.*, *Robinson*, 99 F.4th at 357; *Maddux*, 917 F.3d at 444. But Defendant's argument falters on the facts: the Government provided more than just the misrepresentation here.

Start with Defendant's Stipulation. Recall that the Government read into the record Defendant's Stipulation before calling its witnesses. ECF No. 262 at PageID.4430 (sealed). And remember that the Stipulation reflected not only that Defendant was named in an indictment but that "[o]n September 2, 2020, Defendant . . . appeared in federal court and acknowledged verbally and in writing that he knew and understood that he was charged with at least one felony in the relevant indictment." *Id.*; *see also* ECF No. 258 at PageID.4415.

Then consider Sue Hastings's testimony. Hastings testified that she and Defendant completed the February 2021 PPP loan application together when she knew Defendant was under indictment. *See* ECF No. 262 at PageID.4532–39 (sealed). Yet she stated she was not sure Defendant was "subject to" indictment at the time. *Id.* at PageID.4535–36. Hastings also testified Defendant had to submit the PPP loan application three times over two weeks before it was approved because she made clerical errors on the application. *See id.* at 4544–46. She stated that each time, she would complete the "top" part of the application—which sought Mission's administrative information—and Defendant would complete the bottom portion, which included

- 11 -

the misrepresentation about his indictment status. *Id.* But each time Defendant completed the bottom portion, she would leave the room. *Id.* Yet she could not remember why, only suggesting that she may have gone to the bathroom. *Id.* at PageID.4538.

Now tie all this together. The jury heard a stipulation in which Defendant conceded that he knew he was indicted for a felony offense months before completing his PPP loan application. *Id.* at PageID.4430. It heard testimony that Defendant misrepresented that he was not "presently subject to indictment" three times—all after appearing in court and acknowledging he was under indictment—and never sought clarification. *See id.* at PageID.4544–46. And it heard Hastings curiously state she left the room each time Defendant answered the question that would have prevented his company from securing a loan if he answered it correctly. *See id.* PageID.4532–39, 4544–46. Collectively, this evidence is enough for a jury to conclude that Defendant's claim, echoed by Hastings, that he did not understand that "presently subject to indictment" meant "under indictment" is just crafty wordplay. At the very least, this evidence is sufficient for a jury to conclude Defendant recklessly disregarded "the truth of his statements," which satisfies the Government's burden to prove Defendant's intent to defraud. *Kennedy*, 714 F.3d at 958 (citing *United States v. DeSantis*, 134 F.3d 760, 764 (6th Cir.1998)). Either way, a rational jury could infer from this evidence that Defendant knowingly misrepresented he was not subject to indictment to obtain the PPP loan proceeds.

In sum, Defendant has not met his "heavy burden" to show that *no* rational trier of fact could conclude that the Government failed to show that Defendant intended to defraud when he completed Mission's PPP loan application. *Daniel*, 329 F.3d at 485. So Defendant's Motion for Judgment of Acquittal, ECF No. 257, will be denied.

**IV.**

Accordingly, it is **ORDERED** that Defendant's Motion *in Limine* to Exclude Evidence, ECF No. 252, is **DENIED AS MOOT**.

Further, it is **ORDERED** that Defendant's Motion for Judgment of Acquittal, ECF No. 257, is **DENIED**.

**This is not a final order and does not close the above-captioned case.**

Dated: February 19, 2025                    s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge