UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,                              Case No. 1:20-cr-20365

v.                                                          Honorable Thomas L. Ludington
                                                            United States District Judge
DALE VERNON THRUSH,

                    Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL**

In August 2020, Defendant Dale Vernon Thrush was indicted for ten felony counts of willful failure to pay payroll taxes, in violation of 26 U.S.C. § 7202, and four misdemeanor counts of willful failure to file a personal tax return, in violation of 26 U.S.C. § 7203. On September 2, 2020, Defendant appeared with retained counsel and was arraigned. During arraignment, Defendant acknowledged the charges in the Indictment and was released subject to bond and a set of conditions—which included agreeing not to enter a loan or other credit transaction without written permission from pretrial services. The case proceeded to trial in November 2021, but a mistrial was declared after the Government's most material witness tested positive for COVID-19.

After the Government indicted Defendant for felony tax counts, Defendant completed a Paycheck Protection Program (PPP) loan application for his wholly owned business. In this application, Defendant represented that he was not "subject to" a felony indictment. So in July 2023, the Government filed a superseding indictment, adding three counts of wire fraud under 18 U.S.C. § 1343 to the existing 14 tax counts. The Government later dismissed two wire fraud counts. The remaining wire fraud count was then severed from the tax charges in February 2024.

The wire fraud trial then began on December 10, 2024. The jury found Defendant guilty.

Following that, Defendant filed a motion for a new trial under Criminal Rule 33. As explained below, a new trial is not warranted.

## I.

## A.

In August 2020, Defendant Dale Vernon Thrush was charged with ten counts of willful failure to pay payroll taxes, in violation of 26 U.S.C. § 7202, and four counts of willful failure to file a personal tax return, in violation of 26 U.S.C. § 7203. ECF No. 1. According to the Government, Defendant has owned several businesses in Lansing and Mt. Pleasant, Michigan, including 402 N. Mission St. LLC (Mission). ECF No. 1 at PageID.1–2. As the sole owner of the companies, Defendant was the "responsible person" for collecting and paying payroll taxes. *Id.* at PageID.6. He was also required to file a Form 1040 each year that reported his net profits and distributions from the businesses. *Id.* But the Government alleged that Defendant did not pay over $238,223 in quarterly payroll taxes collected at Mission between April 2014 and December 2016 and did not file a personal income tax Form 1040 for calendar years 2013 through 2016. *Id.* at PageID.6–9.

After several adjournments during the COVID-19 pandemic, a jury trial began in November 2021. ECF No. 61 at PageID.523. But this court declared a mistrial four days into the trial because the Government's most material witness and the undersigned's spouse both tested positive for COVID-19, and the jury could not accommodate a two-week adjournment.[1] ECF No. 61. Defendant later filed a motion to dismiss on double jeopardy grounds. ECF No. 64. This Court

---

[1] Administrative Orders at that time prohibited court staff who had close contact with a person who tested positive for COVID-19 from returning to the courthouse without waiting 10 days and presenting a negative COVID-19 test to the court administrator. And, under the circumstances, those Orders required the undersigned to wait 5 days and receive a negative COVID-19 test before returning to the Court.

denied that motion. *United States v. Thrush*, No. 1:20-CR-20365, 2022 WL 2373351, at *4 (E.D. Mich. June 30, 2022). And the Sixth Circuit affirmed on appeal, holding that the "adjournment was proper and not an abuse of discretion." *United States v. Thrush*, No. 22-1588, 2023 WL 4564769, at *6 (6th Cir. July 17, 2023).

## B.

### 1.

After the appeal, the Government filed a superseding indictment on July 26, 2023, which alleged the same 14 tax counts as the first indictment (Counts 1–14). *Compare* ECF No. 1 *with* ECF No. 118. But the Government added three new wire fraud charges. ECF No. 118 at PageID.2138–41. What warranted these new charges almost three years into a tax case? Defendant represented that he was not "presently subject to an indictment" when applying for a Paycheck Protection Program(PPP) loan in February of 2021 (Count 16) and stated that he complied with PPP regulations when applying for PPP loan forgiveness, when he allegedly did not (Counts 15 and 17).[2] *Id.*

Indeed, the Government alleged that Defendant "knowingly devised a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and material omissions" transmitted by wire communication. ECF No. 118 at PageID.2138. Specifically, it alleged that Defendant applied for a PPP loan in February 2021 "with materially false and fraudulent representations"—namely, that he was not subject to a felony indictment when his tax counts were pending—and that in July 2021 and September 2021, he filed "PPP loan forgiveness applications with materially false and fraudulent representations

---

[2] For details about the PPP, *see* ECF No. 241 at PageID.4021, n.7; *United States v. Ho*, No. 22-1968, 2024 WL 914976, at *1 (6th Cir. Mar. 4, 2024), *cert. denied*, 145 S. Ct. 318 (2024); *United States v. Fatani*, 125 F.4th 755, 756 (5th Cir. 2025).

about the use of the PPP loan funds and . . . Mission's entitlement to PPP loan forgiveness." *Id.* at 2139. The Government also alleged that Defendant engaged in a "scheme to defraud" and "unjustly enrich himself" by using "PPP loan proceeds and subsequent loan forgiveness" impermissibly for "personal investment account expenses, capital expansion projects, and payment of part of [his] delinquent payroll tax liability underlying Counts [1–10]." *Id.*

## 2.

On September 5, 2023, Defendant filed a motion to dismiss the new wire fraud counts (Counts 15, 16, and 17), ECF No. 123, and a motion to sever them from the original tax counts, ECF No. 122. This Court denied the motion to dismiss but directed the Government to file a bill of particulars for Counts 15 and 17. ECF No. 134. The Government filed its bill of particulars. ECF No. 135. But then the Government did an about-face: it filed an unopposed motion to dismiss Counts 15 and 17 with prejudice because the Government conceded they were "no longer readily provable using evidence admissible at trial." ECF No. 142 at PageID.2488. The Government's unopposed motion was granted. ECF No. 146. Accordingly, only Count 16—alleging Defendant misrepresented that he was not subject to an indictment when applying for a PPP loan—remained. *See* ECF No. 118 at PageID.2141. This wire fraud count was severed from the original tax counts due to their subject-matter differences. *See* ECF No. 148.

## 3.

On March 18, 2024, the Government filed a bill of particulars outlining the "[a]cts [r]elated to Count 16." ECF No. 154 at PageID.2664. The Government asserted that "transactions relevant to Counts 15 and 17"—the counts the Government voluntarily dismissed—were "also relevant to show the wire fraud scheme charged in Count 16." *Id.* at PageID.2663–64. In the Government's view, proofs about whether Defendant used the PPP loan proceeds according to PPP regulations were relevant to prove the second part of the alleged two-part scheme: that Defendant submitted

"two PPP loan forgiveness applications with materially false and fraudulent representations about the use of the PPP loan funds and . . . Mission's entitlement to PPP loan forgiveness." *Id.* at PageID.2664; *see also* ECF No. 118.

Responding to this bill of particulars on Count 16, both Parties indicated they would call expert witnesses to interpret PPP loan regulations and assess Defendant's compliance. *See* ECF Nos. 169; 171. Importantly, the Government's expert asserted she would testify that money received from PPP loans was not "fungible," ECF No. 170 at PageID.2853, and needed to be segregated into an account used only to pay expenses permitted by program guidelines, *id.* at PageID.2855. But Defendant's expert asserted he would testify that PPP loan proceeds could, under the relevant law and regulations, be comingled with the borrower's other cash accounts, even though it may not have been prudent to do so. *See* ECF No. 171 at PageID.2878–80. In this way, the *specific loan proceeds* were not required to be used for PPP-approved expenses, and a borrower complied with PPP regulations so long as any of its business funds were, in fact, used to pay for PPP-approved expenses. *See id.* Ultimately, it was "clear that the Parties [were] attempting to advance two very different—and incompatible—interpretations of the CARES Act and relevant PPP loan regulations." ECF No. 172 at PageID.2884. And although any expert testimony presenting legal conclusions would be excluded at trial, this Court directed supplemental briefing to resolve the legal dispute to "accurately instruct the jury about *what the law is*" regarding permissible uses of PPP loan proceeds. *Id.* (emphasis in original).

The Parties submitted supplemental briefs, but neither "contain[ed] *any* legal authority supporting the Government's contention" that "loan proceeds were *not* fungible and that funds could not be comingled with other funds of the borrower." ECF No. 186 at PageID.3089 (emphasis in original). So on June 21, 2024, this Court determined that "evidence of [Mission's] payments

for PPP-approved expenses during the covered periods up to $231,060.00 will be admissible at trial. *Id.* Conversely, evidence of payments or expenditures for non-*PPP*-approved expenses will be excluded at trial because such evidence is irrelevant." *Id.* (citing FED. R. EVID. 402) (emphasis added).

Defendant then filed a motion to dismiss Count 16. ECF No. 192. The Government responded that Count 16 should not be dismissed, electing to narrow its theory of the case. ECF No. 196. The Government's narrower theory was that Defendant devised a scheme to deprive another of money by "obtaining a PPP loan that he was not eligible to receive, then seeking and securing forgiveness for that loan." ECF No. 196 at PageID.3288. On August 19, 2024, this Court denied Defendant's motion to dismiss Count 16. *See* ECF No. 214.

## C.

Trial for the wire fraud charge began on December 10, 2024. *See* ECF No. 264 at PageID.4585. On December 11, 2024, to launch its case-in-chief, the Government read into the record Defendant's Stipulation, which stated he knew that he was a named defendant in a felony indictment at least as early as September 2, 2020:

> Beginning on August 31, 2020, and continuing through the present, Defendant was aware he was a named defendant in a federal indictment in the Eastern District of Michigan and was formally charged with at least one felony in that indictment. On September 2, 2020, Defendant Dale Vernon Thrush appeared in federal court and acknowledged verbally and in writing that he knew and understood that he was charged with at least one felony in the relevant indictment.

ECF No. 262 at PageID.4430 (cleaned up); *see also* ECF No. 258 at PageID.4415.

The Government then called five witnesses:

(1) Terri Billups, a deputy director at the Small Business Administration (SBA) familiar with the PPP loan application process, ECF No. 262 at PageID.4431–94;

(2) Marsha Winters, a PNC bank employee—the bank Mission used for its PPP loans—familiar with the PPP lending process, *Id.* at PageID.4495–527;

- 6 -

(3) Sue Hastings, Defendant's bookkeeper for Mission, who helped him complete PPP loan applications, *Id.* at PageID.4530–62;

(4) Aaron Santarelli, a PNC bank employee who worked with Mission post-PPP loan approval and exchanged interstate communications with Mission, *Id.* at PageID.4563–69; and

(5) Sarah Neff-Paisley, a PNC branch manager who worked with Mission and Defendant on PPP loans, *Id.* at PageID.4570–76.

In addition to the Stipulation and the witnesses' testimony, the Government offered several exhibits, including Mission's February 3, 2021 PPP loan application and subsequent loan forgiveness documents. *See id.* at PageID.4440–41, 4467–70, 4519–22, 4532–39. The loan application featured Defendant answering no to a question that asked whether he was "presently subject to an indictment." *See id.* at PageID.4440–41, 4519–22, 4532–39.

After the Government's case, Defendant sought a judgment of acquittal under Criminal Rule 29. *See* ECF No. 257 at PageID.4394–95; *see also* ECF No. 262 at PageID.4579. This Court entertained oral arguments on the Motion before trial resumed on December 12, 2024. *See* ECF No. 262 at PageID.4579. After oral argument on the morning of December 12, 2024, this Court reserved its decision on the Motion under Criminal Rule 29(b). ECF Nos. 264; 269 at PageID.4613–19. Following that, Defendant presented his defense, which consisted solely of Defendant's own testimony. *See* ECF No. 269.

Ultimately, the jury convicted Defendant of wire fraud under 18 U.S.C. § 1343. ECF No. 260. This Court then denied Defendant's Motion for acquittal. ECF No. 279. And on December 26, 2024, Defendant filed a motion for a new trial under Criminal Rule 33, contending that the jury's verdict was against the great weight of evidence. ECF No. 267.

## II.

Criminal Rule 33 permits courts to "vacate any judgment and grant a new trial if the interests of justice so require." FED. R. CRIM. P. 33(a). But where, as here, a defendant bases a

Criminal Rule 33 motion on the weight of the evidence, he faces a high bar: A court may only grant a new trial if the evidence weighs "heavily against the verdict." *United States v. Bowens*, 938 F.3d 790, 796 (6th Cir. 2019); *see also United States v. Burks*, 974 F.3d 622, 627–28 (6th Cir. 2020) (collecting cases). Indeed, a new trial is warranted only in "extraordinary circumstances," when "the verdict exceeds the bounds of reasonableness[.]" *Burks*, 974 F.3d at 625 (citation modified). "'The verdict is not unreasonable simply because different inferences could have been drawn or because other results are more reasonable.'" *Id.* (quoting *United States v. Lyimo*, 574 F. App'x 667, 672 (6th Cir. 2014)). And the court must "respect the role of the jury and ensure that evidence-supported convictions are upheld" when considering a motion under Criminal Rule 33. *Burks*, 974 F.3d at 625.

### III.

### A.

Here, the Government needed to prove wire fraud. The federal wire fraud statute's text mimics an 1872 mail fraud statute,[3] criminalizing deceptive schemes aimed at money or property:

> Whoever, having devised . . . any scheme . . . to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . . transmits or causes to be transmitted by means of wire . . . in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343. Hacking through that textual thicket, the government must prove three things to convict a defendant of wire fraud: the defendant (1) devised a scheme to defraud—one that features

---

[3] Because the wire fraud statute mirrors the mail fraud statute, courts must interpret them *in pari materia*, meaning where their text overlaps, courts interpret the two statutes as one. *Kousisis v. United States*, 145 S. Ct. 1382, 1390, n.2 (2025); *Pasquantino v. United States*, 544 U.S. 349, 355 n.2 (2005); *United States v. Kennedy*, 714 F.3d 951, 958 (6th Cir. 2013) ("This court has interpreted the mail-fraud and wire-fraud statutes as having essentially the same elements, except for the use of the mails versus the wires."). So this Opinion and Order incorporates cases that focused on applying portions of the mail fraud statute that the wire fraud statute replicates.

a material misrepresentation or omission; (2) intended to defraud—that is, knowingly misrepresented or omitted a material fact intending to deprive another of a traditional money or property interest; and (3) used an interstate wire communication to further the scheme. *United States v. Maddux*, 917 F.3d 437, 443 (6th Cir. 2019); *see also Kousisis*, 145 S. Ct. at 1390–91. Defendant's Motion challenges only the intent element, which is addressed below. *See generally* ECF No. 267.

## B.

Defendant contends the jury's verdict was against the great weight of the evidence, arguing there was insufficient proof he intended to defraud the SBA by stating on his February 2021 PPP loan application that he was not "presently subject to an indictment," despite having been indicted in August 2020. ECF Nos. 267 at PageID.4600–06; 273 at PageID.4887–91. He argues that he misinterpreted the phrase, believing "subject to indictment" referred to the possibility of a future indictment rather than an existing one. *See, e.g.*, ECF No. 267 at PageID.4600; *see also* ECF No. 269 at PageID.4627 (describing the phrase as a "futuristic thing"). So in Defendant's view, his misrepresentation was simply an inadvertent, good-faith misunderstanding, and there was no evidence presented that demonstrated otherwise. ECF No. 267 at PageID.4600–06. He also argues that this alleged lack of evidence "resulted in an unfair trial." *Id.* at PageID.4607. Not so.

The wire fraud statute is a specific intent statute. *United States v. Daniel*, 329 F.3d 480, 487 (6th Cir. 2003). So mistaken misrepresentations do not suffice. *See id.* at 488; *see also Kennedy*, 714 F.3d at 958. Rather, to satisfy the intent element, the government must prove that the defendant knowingly misrepresented a material fact,[4] aiming to deprive someone of money or

---

[4] Defendant does not dispute that the Government sufficiently showed that representing that he was not subject to an indictment was a material misrepresentation. *See generally* ECF Nos. 257; 272. Nor could he. A material misrepresentation is one that "has a natural tendency to influence, or [is] capable of influencing, the decision of the decision-making body to which it was addressed."

a traditional property interest. *Daniel*, 329 F.3d at 488; *see also Kousisis*, 145 S. Ct. at 1390–91. And the Government need not present direct evidence of intent; circumstantial evidence will do. *See United States v. Paulus*, 894 F.3d 267, 277 (6th Cir. 2018).

Defendant asserts that "the only evidence of intent that was adverse to Defendant in the record" was the misrepresentation itself: "that Defendant had been indicted" when he answered that he was not presently subject to an indictment. ECF No. 267 at PageID.4600. He argues that the misrepresentation alone is an "inadequate basis for a jury to find" Defendant's "intent to defraud." *See id.* at PageID.4601–02; *see also id.* at PageID.4605 ("No juror could conclude beyond a reasonable doubt that the mere fact Defendant answered the question 'wrong' meant that he knew it was wrong."). And Defendant argues that the only evidence in the record addressing whether he knew that his statement was false was a misrepresentation "was his own testimony that he believed he answered the question correctly." *Id.* at PageID.4602. In this way, according to Defendant, the great weight of evidence showed that he lacked the requisite intent to defraud. *See* ECF Nos. 267 at PageID.4602–06; 273 at PageID.4887–90. But Defendant's argument falters on the facts because the record features far more than just the misrepresentation.

Start with Defendant's Stipulation. Recall that the Government read into the record Defendant's Stipulation before calling its witnesses. ECF No. 262 at PageID.4430. And remember that the Stipulation reflected not only that Defendant was named in an indictment but that "[o]n September 2, 2020, Defendant . . . appeared in federal court and acknowledged verbally and in writing that he knew and understood that he was charged with at least one felony in the relevant

---

*Neder v. United States*, 527 U.S. 1, 16 (1999) (cleaned up). At trial, Billups—the SBA Director familiar with the PPP loan program—testified that Defendant's loan would not have been approved if he answered the indictment question correctly. ECF No. 262 at PageID.4441, 4461–62 (sealed). And the Government entered into evidence the PPP loan application, which indicated the same. *See id.* at PageID.4440. So the misrepresentation influenced the loan decision, making it material.

indictment." *Id.*; *see also* ECF No. 258 at PageID.4415.

Next consider Sue Hastings's testimony. Hastings testified that she and Defendant completed the February 2021 PPP loan application together when she knew Defendant was under indictment. *See* ECF No. 262 at PageID.4532–39. Yet she stated she was not sure Defendant was "subject to" an indictment at the time. *Id.* at PageID.4535–36. Hastings also testified that Defendant had to submit the PPP loan application three times over two weeks before it was approved because she made clerical errors on the application. *See id.* at 4544–46. She stated that each time, she would complete the "top" part of the application, which sought Mission's administrative information, and Defendant would complete the bottom portion, which included the misrepresentation about his indictment status. *Id.* But each time Defendant completed the bottom portion, she would leave the room. *Id.* Yet she could not remember why, only suggesting that she may have gone to the bathroom. *Id.* at PageID.4538.

Then take Defendant's own testimony. True, Defendant maintained that he did not understand that "presently subject to an indictment" meant under indictment. *See, e.g.*, ECF No. 269 at PageID.4627–35. But the jury could have (1) disbelieved this claim, and (2) concluded that Defendant thought the opposite was true, using the disbelieved statement as substantive evidence of his intent to defraud. *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) ("[A] statement by a defendant if disbelieved by the jury, may be considered as *substantive evidence* of the defendant's guilt. . . . [W]hen a defendant chooses to testify, he runs the risk that if disbelieved[,] the jury might conclude the opposite of his testimony is true." (emphasis in original) (citation modified)); *United States v. Xiang*, 12 F.4th 1176, 1185 (10th Cir. 2021). Further, Defendant reiterated that Hastings left the room each time he completed the portion of the PPP loan that included his misrepresentation. *See* ECF No. 269 at PageID.4652. Defendant further testified that

he knew the loans could be forgiven when he completed the loan application. *Id.* at PageID.4677. And after Defendant resisted some of the facts in the Parties' Stipulation, which, without objection, opened the door to evidence relating to his tax charges, Defendant testified that one of the conditions of pretrial release conditions restricted him from obtaining a loan without permission from pretrial services.[5] *See id.* at PageID.4652–64. Yet he did not seek permission or clarification about whether he could obtain Mission's February 2021 PPP loan. *See id.* at PageID.4658–62. Nor did he seek clarification about the meaning of "presently subject to an indictment," despite testifying that he had retained counsel when he completed the PPP loan application. *See id.*

Now consider this evidence collectively like the jury did, rather than in isolation. The jury heard a stipulation in which Defendant conceded that he had appeared in court and was indicted for a felony offense months before completing his February 2021 PPP loan application. ECF No. 262 at PageID.4430. It heard that one Defendant could not obtain loans without permission under his bond conditions following the indictment, but he never sought permission or clarification. *See* ECF No. 269 at PageID.4652–64. It heard testimony that after Defendant acknowledged he was under indictment, Defendant misrepresented that he was not "presently subject to an indictment" three times without seeking clarification from his retained counsel. *See id.* at PageID.4544–46; *see also* ECF No. 269 at PageID.4658–62. It heard Hastings and Defendant curiously state that Hastings left the room when Defendant answered the question that would have prevented his company from securing a loan if he answered it correctly—not once, not twice, but three times. *See* ECF No. 262 at PageID.4532–39, 4544–46. And it heard that Defendant knew he could obtain forgiveness for the loan when he applied for it. ECF No. 269 at PageID.4677. Putting these pieces

---

[5] Importantly, Defense Counsel acknowledged in a sidebar conversation and a colloquy outside the presence of the jury that Defendant resisted facts in the Stipulation on cross-examination, presumably declining to object to the tax-count evidence to avoid highlighting these issues. *See* ECF No. 269 at PageID.4655, 4668.

together, the jury could have concluded that Defendant's claim that he did not understand he was "presently subject to an indictment" was merely crafty wordplay, and he intended to misrepresent his legal status on his application to obtain Mission's February 2021 PPP loan and later have it forgiven all along.

In sum, the evidence did not weigh heavily against the jury's verdict. *See Burks*, 974 F.3d at 625. In other words, the jury's verdict did not exceed "the bounds of reasonableness." *Id.* Thus, Defendant is not entitled to a new trial under Criminal Rule 33. As a result, Defendant's Motion for a New Trial, ECF No. 267, will be denied.

## IV.

Accordingly, it is **ORDERED** that Defendant's Motion for a New Trial, ECF No. 267, is **DENIED**.

**This is not a final order and does not close the above-captioned case.**

Dated: July 10, 2025            s/Thomas L. Ludington
                                           THOMAS L. LUDINGTON
                                           United States District Judge