UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                                      Case No. 1:20-cr-20365

v.                                                              Honorable Thomas L. Ludington
                                                                United States District Judge
DALE VERNON THRUSH,

                Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF
ACQUITTAL OR NEW TRIAL**

In August 2020, Defendant Dale Vernon Thrush was charged with ten counts of willful

failure to pay payroll taxes, in violation of 26 U.S.C. § 7202, and four counts of willful failure to

file a personal tax return, in violation of 26 U.S.C. § 7203. The case proceeded to trial in

November 2021, but a mistrial was declared after the Government's most material witness tested

positive for COVID-19. Under applicable administrative orders, the witness could not enter the

building to testify for two weeks, and a two-week adjournment was not feasible for the jury.

In July 2023, the Government filed a superseding indictment, adding three counts of wire

fraud, in violation of 18 U.S.C. § 1343, to the fourteen existing tax counts. After the Government

was directed to file a bill of particulars detailing the new wire fraud charges, it dismissed two of

them. The remaining wire fraud count was severed and tried separately from the tax counts.

Trial of Counts 1–14, the tax charges, began on February 26, 2025. Ultimately, the jury

acquitted Defendant of seven charges and convicted Defendant of seven charges. Defendant now

moves for a judgment of acquittal or a new trial on the seven charges for which he was

convicted. For the reasons explained below, Defendant's Motion will be denied.

# I.

## A. Background

Defendant has owned several businesses in Lansing, Farwell, and Mt. Pleasant, Michigan, including 402 N. Mission St. LLC ("Mission")—a payroll company for his businesses—Xtreme Enterprises, Inc. ("Xtreme"), Verno All Tune, Inc. ("Verno"), and USAuto Repair, Inc. ("U.S. Auto"). ECF Nos. 1 at PageID.1–2; 291 at PageID.5283. As the sole owner of the businesses, Defendant was the "responsible person" for collecting and paying payroll taxes. ECF No. 1 at PageID.6; *see also* ECF No. 290 at PageID.5248. He was also required to file a Form 1040—an individual tax return—with the Internal Revenue Service (IRS) each year, reporting, among other things, his net profit distributions from the businesses. ECF No. 1 at PageID.6; *see also* ECF No. 290 at PageID.5249.

But despite withholding payroll taxes from his employees' paychecks, *see* ECF Nos. 291 at PageID.5311, 5321–22, 5400, 5417; 293 at PageID.5697, Defendant did not timely pay Mission's quarterly payroll taxes in full between April 2014 and December 2016, except for Q2 2016. ECF No. 1 at PageID.6–9; *see also* ECF Nos. 290 at PageID.5248; 293 at PageID.5622. Nor did Defendant timely file a Form 1040 for calendar years 2013 through 2016.[1] ECF No. 1 at PageID.6–9; *see also* ECF No. 292 at PageID.5584–88. Yet during those periods, Defendant spent thousands of dollars on ordinary business expenses, acquisition costs for a newly purchased gas station, construction costs for that gas station, and personal expenses. ECF No. 1 at PageID.6; *see also* ECF Nos. 291 at PageID.5331–43, 5357–62, 5365–68, 5409, 5437–38; 292

---

[1] At a Final Pretrial Conference on February 12, 2025, *see* ECF No. 274, Defendant stipulated that although he was responsible for and required to, he did not timely pay the payroll taxes or file his individual tax returns for the pertinent periods. *Accord* ECF No. 293 at PageID.5686. He also did not object to the Draft Jury Instructions reflecting that stipulation, *see* ECF Nos. 277; 302 at PageID.5920, and affirmatively agreed to the Final Jury Instructions incorporating that stipulation, *see* ECF No. 302 at PageID.5920.

at PageID.5600.

As a general defense, Defendant claimed that he delegated the bookkeeping at Mission to an employee, Donna Henke, and she handled the payroll taxes during the relevant period. ECF No. 23 at PageID.104–05. Defendant also maintained that he believed Henke was acting as his personal tax preparer. *Id.* Defendant claimed that he often asked Henke about the status of his business and personal taxes. *Id.* at PageID.105. According to Defendant, in response, Henke "always" told him "everything was being taken care of." *See id.* And Defendant maintained that despite Henke's assurances, Mission's books were in disarray during that period and, as a result, Henke did not file his individual returns or pay Mission's payroll taxes. *See, e.g.*, *id.*; *see also* ECF No. 292 at PageID.5463, 5547.

Against that backdrop, on June 22, 2017, attempting to collect Defendant's unpaid taxes, an IRS Revenue Officer (RO) interviewed Defendant. ECF No. 20 at PageID.69. The RO told Defendant to file his Form 1040s for 2013, 2014, and 2015 within six weeks and offered to "work with [Defendant] to piece together his individual income taxes." *Id.* Defendant's taxes went unpaid during those six weeks. ECF No. 20-1 at PageID.79. And Defendant allegedly told the RO that he could not file the Form 1040s until his business accounting was completed because all his businesses were pass-through entities. *Id.* Thus, his personal returns depended on the business's "income and expenses first being determined." *Id.*

About nine months later, on March 2, 2018, IRS Special Agents interviewed Defendant. *See* ECF No. 20 at PageID.69. These agents informed him that they were "investigating potential criminal violations" flowing from his unpaid taxes. *Id.* According to IRS account transcripts, Defendant began making payments on his tax liability in October 2018. *Id.* Records also show that the IRS received Defendant's Form 1040s for 2013, 2014, and 2015 on January 9, 2020. *Id.*

at PageID.70. Defendant claimed that business finances were not corrected until November 2019. ECF No. 23 at PageID.106–07. He also claimed to have sent a Form 1040 for 2016, but states that it must have been lost or unprocessed, so he sent another Form 1040 for 2016. *Id.* at PageID.104.

Months later, the Government charged Defendant in a fourteen-count indictment on August 19, 2020. ECF No. 1. Counts 1 through 10 alleged that Defendant willfully failed to pay quarterly payroll taxes for ten quarters from 2014 to 2016, in violation of 26 U.S.C. § 7202. *Id.* at PageID.5–7. Counts 11 through 14 alleged that Defendant willfully failed to file personal tax returns from 2013 to 2016, in violation of 26 U.S.C. § 7203. *Id.* at PageID.8–9.

### B. Mistrial and Appeal

After several adjournments during the COVID-19 pandemic, a jury trial began in November 2021. ECF No. 61 at PageID.523. At trial, the Government asserted that "the evidence [would] show that for 10 quarters between April 2014 to December 2016, [Defendant], through his company 402 North Mission Street, took out six figures worth of payroll taxes from his employees' paychecks but failed to pay them over to the IRS." ECF No. 102 at PageID.1533. The Government further asserted that the evidence at trial would show that "[Defendant] invested large sums of money into [a development project] right around the time that he refused to pay over payroll taxes." *Id.* at PageID.1534.

Defendant, on the other hand, asserted that he did not "know anything about bookkeeping or taxes, and [] never did his own taxes" but hired "a good family friend" to be his bookkeeper. *Id.* at PageID.1537–38. And that bookkeeper, according to Defendant, had "control" over the financial part of his business and was responsible for paying the business's payroll taxes and Defendant's personal income tax returns. *Id.*

This court declared a mistrial four days into the trial. That is because the Government's

most material witness and the undersigned's spouse both tested positive for COVID-19, and the

jury could not accommodate a two-week adjournment.[2] ECF No. 61.

Defendant later filed a motion to dismiss on double-jeopardy grounds.[3] ECF No. 64. This

Court denied that motion. *United States v. Thrush*, No. 1:20-CR-20365, 2022 WL 2373351, at *4

(E.D. Mich. June 30, 2022). And the Sixth Circuit affirmed on appeal, holding that the

"adjournment was proper and not an abuse of discretion." *United States v. Thrush*, No. 22-1588,

2023 WL 4564769, at *6 (6th Cir. July 17, 2023).

### C. Superseding Indictment and Severance of Charges

After the appeal, the Government filed a superseding indictment on July 26, 2023, which

alleged the same 14 tax counts as the first indictment (Counts 1–14). *Compare* ECF No. 1 *with*

ECF No. 118. But the Government augmented its allegations: the Superseding Indictment added

three new wire fraud charges. ECF No. 118 at PageID.2138–41. What warranted these new

charges almost three years into a tax evasion case? Defendant allegedly checked a box that he

was not "presently subject to an indictment" when applying for a Paycheck Protection Program

(PPP) loan during this case (Count 16) and allegedly falsely stated that he complied with PPP

regulations when applying for PPP loan forgiveness (Counts 15 and 17). *Id.*

On September 5, 2023, Defendant filed a motion to dismiss the new wire fraud counts

(Counts 15, 16, and 17), ECF No. 123, and a motion to sever them from the original tax counts,

---

[2] Administrative Orders at that time prohibited court staff who had close contact with a person who tested positive for COVID-19 from returning to the courthouse without waiting 10 days and presenting a negative COVID-19 test to the court administrator. And, under the circumstances, those Orders required the undersigned to wait 5 days and receive a negative COVID-19 test before returning to the Court.

[3] Part of the reason Defendant moved to dismiss on double-jeopardy grounds was that the Government allegedly knew that its material witness tested positive for COVID-19 with a rapid test before the jury was empaneled and did not inform the Court. *See* ECF No. 96 at PageID.1503.

ECF No. 122. This Court denied the motion to dismiss but directed the Government to file a bill of particulars for Counts 15 and 17. ECF No. 134. The Government filed its bill of particulars. ECF No. 135. But then the Government did an about-face: it filed an unopposed motion to dismiss Counts 15 and 17 with prejudice because the Government conceded they were "no longer readily provable using evidence admissible at trial." ECF No. 142 at PageID.2488. The Government's unopposed motion was granted. ECF No. 146. Accordingly, only Count 16—alleging Defendant misrepresented that he was not subject to an indictment when applying for a PPP loan—remained. *See* ECF No. 118 at PageID.2141. This wire fraud count was severed from the original tax counts due to their subject-matter differences. *See* ECF No. 148.

### D. New Trial, Verdict, and Pending Motion

After several adjournments, the new trial for the tax charges (Counts 1–14) began on February 26, 2025. *See* ECF No. 305 at PageID.6012 (sealed). At trial, the Government called fourteen witnesses:

(1) Donna Henke, Defendants' bookkeeper for Mission from approximately 2007 to August 2016, ECF No. 291 at PageID.5270–5395;

(2) Scott Tyler, a former employee who worked for Defendant during relevant filing periods, *id.* at PageID.5396–5405;

(3) Gary Reed, an owner of a concrete-services company that performed work for Defendant during the relevant filing periods, *id.* at PageID.5406–13;

(4) Mark Soeltner, another former employee who worked for Defendant during the relevant filing periods, *id.* at PageID.5415–19;

(5) Tim Wilson, a bank employee who serviced Defendant's home equity loan during the relevant filing periods, *id.* at PageID.5419–27;

(6) Becky Yarger, an owner of an electrical company that performed work for Defendant during the relevant filing periods, ECF No. 292 at PageID.5434–42;

(7) Kathy Jankowski, an employee for a construction company that performed work for Defendant during the relevant filing periods, *id.* at PageID.5443–51;

(8) Brandilyn Pawlick, an RO for the IRS who was assigned Defendant's case and

responsible for attempting to collect his unpaid and delinquent taxes, *id.* at PageID.5452–5557;

(9) Joseph Wehner, a commercial lender who serviced one of Defendant's loans during the relevant period, *id.* at PageID.5558–66;

(10) Aaron Kenyon, an attorney and business owner who purchased two facilities from Defendant during the relevant time period, *id.* at PageID.5566–73;

(11) Renee McLean, a records custodian for the IRS, *id.* at PageID.5574–92;

(12) Steve Gustin, an employee for a petroleum company that worked with Defendant, *id.* at PageID.5593–95;

(13) Chad Bauer, the owner of an excavating company that performed work for Defendant in the relevant filing periods, *id.* at PageID.5596–5602; and

(14) Erin Demaagd, an IRS Revenue Agent assigned to assist with Defendant's trial, ECF No. 293 at PageID.5612–5684.

And the Government presented over 140 exhibits, including various IRS records and transcripts. *See* ECF No. 299.

For his case, Defendant called four witnesses:

(1) Jason Alkamano, a Certified Public Accountant (CPA) testifying as an expert witness, ECF No. 293 at PageID.5690–5718;

(2) Frank Ross, a CPA retained by Defendant, *id.* at PageID.5720–32;

(3) Jody Thrush, Defendant's spouse, *id.* at PageID.5733–54; and

(4) Sue Hastings, Defendant's bookkeeper for Mission, who replaced Donna Henke in 2016, ECF No. 302 at PageID.5833–98.

Defendant also presented several exhibits. *See* ECF Nos. 293 at PageID.5610; 302 at PageID.5831.

In the end, on March 5, 2025, the jury returned a split verdict. *See* ECF No. 296. The jury convicted Defendant of seven counts, Counts 5, 9, 10, 11, 12, 13, and 14. *Id.* at PageID.5773–75. And the jury acquitted Defendant of seven counts, Counts 1, 2, 3, 4, 6, 7, and 8. *Id.* at PageID.5772–73. A summary of the jury's verdict is as follows:

| Count | Charge | Offense Period | Verdict |
|-------|--------|----------------|---------|
| 1 | 26 U.S.C. § 7202 – Failure to Pay Over Tax on Behalf of Mission | Q2 2014 | Not Guilty |
| 2 | 26 U.S.C. § 7202 – Failure to Pay Over Tax on Behalf of Mission | Q3 2014 | Not Guilty |
| 3 | 26 U.S.C. § 7202 – Failure to Pay Over Tax on Behalf of Mission | Q4 2014 | Not Guilty |
| 4 | 26 U.S.C. § 7202 – Failure to Pay Over Tax on Behalf of Mission | Q1 2015 | Not Guilty |
| 5 | 26 U.S.C. § 7202 – Failure to Pay Over Tax on Behalf of Mission | Q2 2015 | Guilty |
| 6 | 26 U.S.C. § 7202 – Failure to Pay Over Tax on Behalf of Mission | Q3 2015 | Not Guilty |
| 7 | 26 U.S.C. § 7202 – Failure to Pay Over Tax on Behalf of Mission | Q4 2015 | Not Guilty |
| 8 | 26 U.S.C. § 7202 – Failure to Pay Over Tax on Behalf of Mission | Q1 2016 | Not Guilty |
| 9 | 26 U.S.C. § 7202 – Failure to Pay Over Tax on Behalf of Mission | Q3 2016 | Guilty |
| 10 | 26 U.S.C. § 7202 – Failure to Pay Over Tax on Behalf of Mission | Q4 2016 | Guilty |
| 11 | 26 U.S.C. § 7203 – Failure to File Individual Tax Return | 2013 | Guilty |
| 12 | 26 U.S.C. § 7203 – Failure to File Individual Tax Return | 2014 | Guilty |
| 13 | 26 U.S.C. § 7203 – Failure to File Individual Tax Return | 2015 | Guilty |
| 14 | 26 U.S.C. § 7203 – Failure to File Individual Tax Return | 2016 | Guilty |

*Id.* at PageID.5772–75.

Two weeks later, Defendant moved for "an order of acquittal . . . on each charge" for which the jury convicted him. ECF No. 301 at PageID.5810. Alternatively, he seeks a new trial for those charges. *See id.*

## II.

### A. Criminal Rule 29 Standard

When a jury finds a defendant guilty, the defendant may move for a judgment of acquittal. FED. R. CRIM. P. 29(c). If the defendant files such a motion, the court must enter a

judgment in the defendant's favor if the government's "evidence is insufficient to sustain a conviction" for the charges the defendant challenges. *Id.* But Criminal Rule 29 imposes a hefty burden on the defendant. *United States v. Robinson*, 99 F.4th 344, 354 (6th Cir. 2024). Indeed, defendants must show that "no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Brooks*, 987 F.3d 593, 601 (6th Cir. 2021). And when deciding a Rule 29 motion, the court "do[es] not weigh the evidence presented" or "substitute [its] judgment for that of the jury." *Robinson*, 99 F.4th at 353 (citation modified). Rather, it "must draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *Id.* (citation modified).

### B. Criminal Rule 33 Standard

Criminal Rule 33 permits courts to "vacate any judgment and grant a new trial if the interests of justice so require." FED. R. CRIM. P. 33(a). "The rule 'does not define 'interest[ ] of justice' and the courts have had little success in trying to generalize its meaning.'" *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (quoting *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989)). Still, a few "themes have emerged from [Criminal] Rule 33's case law." *Robinson*, 99 F.4th at 367.

For example, the primary "use of a Rule 33 motion is to seek a new trial on the ground that 'the [jury's] verdict was against the manifest weight of the evidence.'" *Munoz*, 605 F.3d at 373 (quoting *United States v. Crumb*, 187 F. App'x 532, 536 (6th Cir. 2006)). Where a defendant bases a Criminal Rule 33 motion on the weight of the evidence, he faces a high bar: A court may only grant a new trial if the evidence weighs "heavily against the verdict." *United States v. Bowens*, 938 F.3d 790, 796 (6th Cir. 2019); *see also United States v. Burks*, 974 F.3d 622, 627–28 (6th Cir. 2020) (collecting cases). Indeed, a new trial is warranted only in "extraordinary

- 9 -

circumstances," when "the verdict exceeds the bounds of reasonableness[.]" *Burks*, 974 F.3d at 625 (citation modified). "'The verdict is not unreasonable simply because different inferences could have been drawn or because other results are more reasonable.'" *Id.* (quoting *United States v. Lyimo*, 574 F. App'x 667, 672 (6th Cir. 2014)). And the court must "respect the role of the jury and ensure that evidence-supported convictions are upheld" when considering a motion under Criminal Rule 33. *Burks*, 974 F.3d at 625.

Courts also "widely agreed that Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred." *Munoz*, 605 F.3d at 373 (*citing United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004)). "Less clear is whether a district court may grant [Criminal] Rule 33 relief where the verdict is not against the substantial weight of the evidence, and where no reversible error or violation of the defendant's substantial rights has occurred, but where the district court nonetheless believes that 'the interest of justice' requires a new trial." *Id.* at 374. Yet the "generic 'interest of justice' language in [Criminal] Rule 33's text, at least at first glance, would appear to permit the grant of a new trial on the basis of perceived unfairness of less than reversible magnitude." *Id.*

### III.

Although it is difficult to pin down the particulars of Defendant's arguments, they generally pertain to two categories. First, he challenges his payroll tax convictions under 26 U.S.C. § 7202, Counts 5, 9, and 10. *See* ECF No. 301 at PageID.5810, 5815–19. Second, he challenges his convictions under 26 U.S.C. § 7203 for failing to file his individual tax returns, Counts 11–14. These categories will be addressed in turn below.

### A. Failure to Pay Over Payroll Taxes (Counts 5, 9, and 10)

For Counts 5, 9, and 10—counts charging Defendant with failing to submit Form 941s and pay payroll taxes under 26 U.S.C. § 7202—the Government needed to prove three elements.

*See United States v. Blanchard*, 618 F.3d 562, 571 (6th Cir. 2010). Indeed, the Government needed to prove that Defendant "(1) had a duty to truthfully account for and pay over federal income tax withheld from employees' wages, (2) failed to account for truthfully and to pay over these taxes, [and] (3) acted willfully." *Id.* at 571; *accord* ECF No. 290 at PageID.5248. Defendant disputes only the willfulness element. *See* ECF Nos. 301 at PageID.5818; 306 at PageID.6126; *accord* ECF No. 290 at PageID.5248.

The willfulness element creates an exception to the general rule that ignorance or misunderstanding of the law is not a defense. *See Cheek v. United States*, 498 U.S. 192, 199–200 (1991). Indeed, this element requires the Government to prove that the defendant voluntarily and intentionally violated a "known legal duty." *Id.* at 201. So defendants do not act willfully when they are ignorant of the law—after all, under those circumstances, they do not violate a *known* legal duty. *See id.* at 201–02. Nor do defendants act willfully when they violate the law based on a good-faith misunderstanding of what the law requires. *Id.*; *see also United States v. Leonard*, 802 F.2d 460 (6th Cir. 1986). And that good-faith misunderstanding need not be objectively reasonable. *See United States v. Pensyl*, 387 F.3d 456, 459–60 (6th Cir. 2004). But "although a defendant's inability to pay taxes when due bears on the willfulness of his act, it is not an element of the offense" and does not preclude a conviction for failing to pay payroll taxes. *Blanchard*, 618 F.3d at 572.

Defendant advances a specific argument for Count 5. *See* ECF No. 301 at PageID.5815– 19. And although Defendant does not advance a clear argument for why he should be acquitted of or granted a new trial for Counts 9 and 10, he seemingly includes them in the charges for which he seeks relief. *See id.* at PageID.5810 (requesting this Court to "set aside the conviction and enter an order of acquittal or new trial on *each* charge" for which the jury returned a guilty

verdict) (emphasis added)). So this Court will address his specific argument for Count 5 first. Then it will address the propriety of acquittal or a new trial for Counts 9 and 10.

### 1. Count 5

Recognizing that he is pushing against the grain of "ninety-plus years of precedent," *id.* at PageID.5815, Defendant argues that he should be acquitted of Count 5 or granted a new trial because the guilty verdict is inconsistent with his acquittals on Counts 1–4 and 6–8, *see id.* at PageID.5815–19. He asserts that Count 5 "is found amid identical counts . . . , with identical elements, without a single shred of evidence on the record that could possibly differentiate the verdict on [Count 5] from the seven identical counts for which [Defendant] was acquitted." *Id.* at PageID.5816–17. More specifically, Defendant contends that the jury could not have found that he willfully failed to pay payroll taxes for Q2 2015 (Count 5) while also finding that he lacked willfulness for the acquitted quarters. *See id.* In this way, Defendant argues, the jury's verdicts on these counts are "arbitrary and irrational." *Id.* at PageID.5819. Not so.

Juries are "free to render inconsistent verdicts or to employ relevant evidence in convicting on one count that it may seem to have rejected in acquitting on other counts." *United States v. Rowan*, 518 F.2d 685, 689 (6th Cir. 1975) (citing *Dunn v. United States*, 284 U.S. 390, 393 (1932)); *see also United States v. Powell*, 469 U.S. 57, 62–63 (1984); *Bravo-Fernandez v. United States*, 580 U.S. 5, 12–13 (2016). Verdicts are inconsistent when a guilty verdict on one count and an acquittal on another count "cannot rationally be reconciled." *Powell*, 469 U.S. at 69. For example, if—based on the same conduct—a jury acquits the defendant of a conspiracy offense but finds him guilty of a separate offense incorporating conspiracy as an element, those verdicts would be irreconcilably inconsistent. *See United States v. Ruiz*, 386 F. App'x 530, 533 (6th Cir. 2010) (illustrating *Powell*, 469 U.S. at 59–60).

- 12 -

Generally, courts may not review or overturn an inconsistent verdict under Criminal Rule 33 or otherwise, and thus "a criminal defendant may not attack a jury's finding of guilt on one count as inconsistent with the jury's verdict of acquittal on another count." *Bravo-Fernandez*, 580 U.S. at 12. Rather, "a defendant's protection against" juror irrationality "lies in" a challenge to the "sufficiency of evidence." *Ruiz*, 386 F. App'x at 533 (citing *Powell*, 469 U.S. at 67); *see also United States v. Ashraf*, 628 F.3d 813, 823 (6th Cir. 2011). This non-reviewability rule makes sense: when a jury renders inconsistent verdicts, "[i]t is unclear whose ox has been gored." *United States v. Lawrence*, 555 F.3d 254, 261 (6th Cir. 2009). Indeed, "it is just as likely that 'the jury, convinced of guilt, properly reached its conclusion on [one count], and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the [related] offense.'" *Bravo-Fernandez*, 580 at 13 (quoting *Powell,* 469 U.S., at 65). And the Supreme Court has recognized "no exceptions to this rule." *Id.* at 12.

Even so, the Sixth Circuit has crafted two exceptions to the rule that irreconcilably inconsistent verdicts are not reviewable. First, when jury verdicts "are marked by such inconsistency as to indicate arbitrariness or irrationality," "relief may be warranted." *Lawrence*, 555 F.3d at 263. Second, "in a situation where a guilty verdict on one count necessarily excludes a finding of guilt on another, i.e. a mutually exclusive verdict, . . . court[s] can review the defendant's challenge to the verdict." *United States v. Randolph*, 794 F.3d 602, 610–11 (6th Cir. 2015) (citation modified); *see also Ruiz*, 386 F. App'x at 533 (providing as an example of a mutually exclusive verdict, a jury convicting "a defendant of both larceny and embezzlement based on the same underlying conduct"). Still, defendants tread "on shaky footing" when they attempt to invoke these exceptions. *Lawrence*, 555 F.3d at 262.

Flowing from these principles is a two-step analysis for courts to employ when faced

with an inconsistent-verdicts challenge. First, as a threshold matter, a court must determine whether the verdict actually is irreconcilably inconsistent. *See United States v. Stetler*, 526 F. App'x 631, 634 (6th Cir. 2013) (determining, in the first instance, whether a verdict was irreconcilably inconsistent); *see also Lawrence*, 555 F.3d at 265–66. Second, if the verdicts are irreconcilably inconsistent, a court must determine whether one of the Sixth Circuit's exceptions to non-reviewability applies. *Lawrence*, 555 F.3d at 263. Here, Defendant's guilty verdict for Count 5 is not irreconcilably inconsistent with his acquittals on Counts 1–4 and 6–8, so his argument fails at step one.

Indeed, if the jury carefully considered several factors bearing on willfulness—including Defendant's ability to pay his payroll taxes, *see Blanchard*, 618 F.3d at 572—the verdicts are reconcilable. Specifically, the jury could have found that Defendant knew of his obligation to pay his payroll taxes and willfully chose not to do so in Q2 2015 (Count 5), but not in other charged quarters. To that end, Donna Henke, Defendant's bookkeeper until August 2016, testified that Mission had timely paid its quarterly payroll taxes until the charged quarters, and that she repeatedly told Defendant that Mission's payroll taxes were unpaid, warning him of the potential consequences of failing to pay them. *See, e.g.*, ECF No. 291 at PageID.5273, 5276, 5300–01, 5304–08, 5374. If credited, the jury could have concluded that Defendant was aware that Mission's payroll taxes were not timely paid.[4] The jury also heard testimony that Defendant's companies lost money during the relevant years, *see, e.g.,* ECF No. 293 at PageID.5693, and at times lacked sufficient funds to pay all of Mission's expenses, *see* ECF No.

---

[4] Defendant argues that it is impossible to credit Henke's testimony that she told Defendant about the unpaid taxes and find willfulness on Counts 5 but not on Counts 1–4 and 6–8. *See, e.g.*, ECF No. 306 at PageID.6127. But as explained below, if the jury believed Henke that she told Defendant about the unpaid payroll taxes and emphasized—perhaps even mistakenly overemphasized—Mission's perceived cashflow issues due to mismanaged books in the acquitted quarters and lack thereof in Q2 2015, it is more than possible.

291 at PageID.5277. And the jury heard recurring testimony—from, for example, Sue Hastings, the bookkeeper who replaced Henke—that Defendant could not timely pay the taxes during the relevant quarters due to Henke's mismanagement and disorganization of Mission's books. *See, e.g.*, ECF Nos. 292 at PageID.5464, 5499, 5501–02, 5504; 302 at PageID.5838–46. Accepting both that Mission lost money and had cash flow issues, and that its books were mismanaged and incomplete, the jury could have concluded that he did not *voluntarily* refuse to timely pay the taxes for the quarters charged in Counts 1–4 and 6–8.

But the jury could have reasonably distinguished Q2 2015. In April 2015, during Q2 2015, Defendant sold two facilities to Aaron Kenyon and received $500,000 in available funds—a point both Parties emphasized numerous times in closing statements. *See* ECF No. 302 at PageID.5938, 5944, 5949, 5962, 5967; *see also* ECF No. 292 at PageID.5569–70. As a result, in the jury's mind, with that amount of money, Defendant knew he could have timely paid the payroll taxes that he withheld from employees' paychecks and intentionally did not, regardless of whether Mission's books were mismanaged.

And in any event, even if the jury's verdicts were irreconcilably inconsistent, Defendant has not shown that either exception to the non-reviewability rule applies. First, Defendant has not shown that the jury's verdicts "are marked by *such* inconsistency as to indicate arbitrariness or irrationality." *Lawrence*, 555 F.3d at 263 (emphasis added). At most, Defendant has identified that the jury may have mistakenly overemphasized Defendant's perceived ability when rendering its verdict, especially when, as Defendant notes, the Government presented "undisputed evidence that" Defendant "spent large sums of money on unnecessary expenses" during the relevant periods. *See* ECF No. 306 at PageID.6129–30. But this raises the very question underlying the non-reviewability rule: whose ox has been gored? After all, if the jury overemphasized

Defendant's perceived inability to pay, the jury "is as likely to have erred in acquitting" Defendant on Counts 1–4 and 6–8 "as in convicting" Defendant of Count 5. *Lawrence*, 555 F.3d at 262 (citation modified). Second, Defendant does not argue that the verdicts are mutually exclusive, like when a jury convicts "a defendant of both larceny and embezzlement based on the same underlying conduct." *Ruiz*, 386 F. App'x at 533. So Defendant's inconsistency argument does not warrant upending the jury's guilty verdict for Count 5.

Finally, to the extent Defendant seeks a judgment of acquittal for Count 5 under Criminal Rule 29 for insufficient evidence, Defendant's argument lacks merit. Viewing the evidence in the light most favorable to the jury's verdict, there was sufficient evidence that Defendant willfully failed to pay his payroll taxes in Q2 2015. As explained, the jury heard Henke's testimony that she repeatedly notified Defendant that Mission's payroll taxes were unpaid during the relevant quarters, including Q2 2015, and that he told her not to pay them. *See, e.g.*, ECF No. 291 at PageID.5273, 5276, 5300–01, 5304–08, 5374. And again, the jury learned that Defendant could pay those taxes because he received approximately $500,000 in available funds in April 2015, *see, e.g.*, ECF Nos. 302 at PageID.5938, 5944, 5949, 5962, 5967; 292 at PageID.5569–70, to the extent that bears on willfulness under *Blanchard*. Accordingly, "a rational trier of fact could have found that" Defendant intentionally and voluntarily failed to pay Mission's payroll taxes "beyond a reasonable doubt." *Brooks*, 987 F.3d at 601.

In sum, Defendant is not entitled to a new trial or judgment of acquittal for Count 5. Defendant has not demonstrated that Count 5's guilty verdict is inconsistent with Counts 1–4 and 6–8's acquittals. Even if it were, Defendant has not shown that either exception to the non-reviewability rule applies. And viewing the evidence in the light most favorable to the jury's verdict, there was sufficient evidence for a rational juror to find that Defendant willfully failed to

timely pay Mission's payroll taxes.

## 2. Counts 9 and 10

Turning to Counts 9 and 10, which charged Defendant with failing to timely pay Mission's payroll taxes for Q3 and Q4 2016. *See* ECF No. 296 at PageID.5772–73. As with Count 5, Defendant is not entitled to a judgment of acquittal or a new trial.

Beginning with the judgment of acquittal analysis under Criminal Rule 29, the Government provided sufficient evidence to convict Defendant of Counts 9 and 10. Sue Hastings testified that shortly after starting in July 2016, she informed Defendant that Mission had unpaid payroll taxes. ECF No. 302 at PageID.5840–41. She further testified that Mission failed to pay its payroll taxes on time for Q3 and Q4 2016. *Id.* at PageID.5845–46, 5851–52. And Hastings confirmed that Defendant directed her not to pay the taxes timely, believing they could later claim tax credits.[5] *Id.* at PageID.5861. Based on this testimony, "a rational trier of fact could have found that" Defendant willfully failed to pay Mission's payroll taxes for these quarters. *Brooks*, 987 F.3d at 601.

Nor has Defendant shown that a new trial is warranted under Criminal Rule 33. Defendant does not address whether, let alone demonstrate that, "the interests of justice so require," FED. R. CRIM. P. 33(a), a new trial for these counts. And he has not established that the jury's verdicts for Counts 9 and 10 "exceed[] the bounds of reasonableness[.]" *Burks*, 974 F.3d at

---

[5] Like Count 5, to the extent ability to pay bears on willfulness for § 7202 offenses under *Blanchard* and the jury considered that for Count 9 and 10, Hastings's explanation of why Defendant directed her not to pay the payroll taxes suggests cash flow and Mission's books in Q2 and Q3 2016 were less decisive than in the acquitted quarters. After all, Hastings also testified that Mission received tax credits and requested refunds through retroactive amendments to prior tax filings. *See, e.g.*, ECF No. 302 at PageID.5850. In this way, the jury could have concluded that Defendant should have paid the payroll taxes on time and requested a refund if Mission later received credits. And the jury could have reinforced the inference that the state of Mission's books and cash flow did not meaningfully influence the decision not to timely pay Q3 and Q4 2016 payroll taxes based on Mission's timely payment of Q2 2016 payroll taxes when Henke completed them. *See* ECF No. 291 at PageID.5310–14.

625.

In short, Defendant is not entitled to a judgment of acquittal or new trial for Counts 9 and 10. There was sufficient evidence to convict Defendant of these counts. And Defendant has not demonstrated that the interests of justice warrant a new trial.

### B. Failure to File Individual Tax Returns (Counts 11–14)

Similarly, the Government needed to prove three elements for Counts 11 through 14—the counts charging Defendant with failing to file his individual tax returns under 26 U.S.C. § 7203 from 2013–2016. Specifically, the Government needed to prove the following for each year's charges: that Defendant (1) "was required to file a return"; (2) knew of this requirement and "failed to file a return" timely; and (3) acted willfully. *United States v. Fusero*, 106 F. Supp. 2d 921, 927 (E.D. Mich. 2000); *accord* ECF No. 290 at PageID.5249. Defendant disputes only the second and third elements. *See* ECF Nos. 290 at PageID.5249; 301 at PageID.5820–21; 306 at PageID.6126. For the reasons explained below, Defendant is not entitled to relief under Criminal Rule 29 or 33 for his convictions for Counts 11 through 14.

Begin with Criminal Rule 29: Defendant has not demonstrated that there was insufficient evidence to convict him of Counts 11 through 14. For starters, Joseph Wehner, a commercial lender who serviced one of Mission's loans, testified that he requested Defendant's individual tax returns and a personal financial statement as early as 2014 and testified that he did so each year—including through a letter in August of 2015—for the life of the loan. ECF No. 292 at PageID.5561–63. Wehner further testified that when he made such requests, Defendant told him that these personal returns were incomplete because he "just didn't have all his information together" due to a bookkeeper issue. *Id.* at 5563–64. Based on this testimony alone, the jury had a rational basis for concluding that Defendant was aware of his obligation to file tax returns during the relevant period and that he had not timely filed them.

Wehner's testimony, combined with other evidence, also supports the jury's finding of willfulness.[6] In addition to Wehner's testimony, Brandi Pawlick—the RO responsible for attempting to collect Defendant's unpaid and delinquent taxes—testified that she met with Defendant in June 2017 and discussed, among other things, his delinquent individual returns for 2013, 2014, and 2015. *See* ECF No. 292 at PageID.5470–71, 5527, 5532. She also testified that she demanded full payment of these delinquent taxes by August 1, 2017. *Id.* at PageID.5470–71. Yet the jury also learned that, despite engaging professional assistance, Defendant did not file his returns until 2020. *See id.* at PageID.5581–90. As a result, Wehner's testimony and Pawlick's additional demands for Defendant's tax filings in 2017, coupled with Defendant's multi-year delay in actually filing his returns, provided more than a rational basis for the jury to conclude Defendant's failure to timely file his returns was not a mistake—it was willful. So because "a rational trier of fact could have found that" Defendant willfully failed to timely file his individual tax returns for 2013 through 2016, Defendant is not entitled to a judgment of acquittal for Counts 11 through 14. *Brooks*, 987 F.3d at 601.

Turn to Criminal Rule 33: Defendant has not shown that the interests of justice require a new trial for Counts 11 through 14. Defendant argues that upholding Defendant's convictions on Counts 11–14 would be a "manifest injustice." ECF No. 301 at PageID.5820–29. To that end, Defendant seemingly argues that in opening statements the Government represented that Defendant's *mens rea* arose in 2017 after he failed to meet Pawlick's demand to pay his

---

[6] Unlike the rule announced in *Blanchard*, which states that inability to pay payroll taxes bears on willfulness for § 7202 offenses, inability to timely pay is not a defense to failure-to-file personal returns under 26 U.S.C. § 7203. *See United States v. Ausmus*, 774 F.2d 722, 724–25 (6th Cir. 1985); *see also Blanchard*, 618 F.3d at 572 (concluding that *Ausmus*'s rule for § 7203 is distinguishable from § 7202 offenses but finding that it supports not announcing an affirmative rule that § 7202 requires proof of ability to pay, rather than "a defendant's inability to pay" merely bearing on willfulness for § 7202 offenses). After all, individual taxpayers are "obligated to conduct [their] financial affairs in such a way that [they] [have] cash available to satisfy [their] tax obligations on time." *Ausmus*, 774 F.2d at 724.

delinquent taxes by August 1, 2017, improperly suggesting that Defendant's *mens rea* need not be concurrent with his failure to timely file his tax returns, some of which needed to be filed well before 2017. *See id.* He further supports this argument by noting that Pawlick testified that Defendant's delinquency was a civil matter until he failed to meet her deadline, after which point it became a criminal case. *Id.* at PageID.5825. This argument misses the mark.

Neither the Government nor Pawlick claimed that Defendant's *mens rea* need not coincide with his failure to timely file. Nor did they suggest his criminal intent arose from missing Pawlick's August 1, 2017 deadline. Rather, Pawlick merely testified that at some point after Defendant missed that demand deadline, the IRS began *treating the case as a criminal matter* and investigating it as such, a decision in which she played no role. *See, e.g.*, ECF No. 292 at PageID.5484–85, 5535–37, 5557. And, in context, the Government's opening statement represented the same. *See* ECF No. 294 at PageID.5765.

Finally, Defendant argues that it was financially impossible to meet Pawlick's short deadline, so it would be manifestly unjust to uphold his conviction because only "the wealthiest Americans" could avoid criminal liability in these circumstances. ECF No. 301 at PageID.5827–29. This argument is unpersuasive. First, August 1, 2017, was not the legal deadline for filing his individual tax returns; it was the deadline for paying *delinquent* taxes. So anyone—not just "the wealthiest Americans"—can avoid criminal liability by filing individual tax returns before their actual legal deadline. Second, and relatedly, this argument assumes that his criminal liability arose from missing Pawlick's August 1, 2017 deadline. As explained, that is a mistaken assumption. Third, even if his criminal intent arose from missing that deadline rather than the legal deadline, unlike for § 7202 offenses, Defendant's financial inability does not bear on willfulness and is in no way a defense to § 7203 charges. *See supra* n.6. And granting Defendant

a new trial based on financial impossibility would effectively render it a viable defense to § 7203 charges. As a result, none of Defendant's "manifest injustice" arguments for a new trial warrant a new trial under Criminal Rule 33.

In sum, Defendant is not entitled to a new trial or judgment of acquittal for Counts 11 through 14. Accordingly, Defendant is not entitled to a new trial or judgment of acquittal on any of the counts for which he was convicted. So Defendant's Motion for Judgment of Acquittal or New Trial, ECF No. 301, will be denied.

## IV.

Accordingly, it is **ORDERED** that Defendant's Motion for Judgment of Acquittal or New Trial, ECF No. 301, is **DENIED**.

**This is not a final order and does not close the above-captioned case.**

Dated: July 29, 2025                          s/Thomas L. Ludington
                                              THOMAS L. LUDINGTON
                                              United States District Judge